**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re Jeffery Cates and Christine Cici-Cates | Case No. 21-40882 WJF |
| Debtor(s). | Chapter 11, Sub. V |

**NOTICE OF MOTION AND**
**MOTION TO DEEM ACCEPTANCE OF MODIFIED PLAN**

TO: The debtor(s) and other entities specified in Local Rule 9013-3.

1.  Debtors Jeffery Cates and Christine Cici-Cates move the Court for the relief requested below and give notice of hearing.

2.  **The Court will hold a hearing on this motion at 10:00 a.m. on Thursday, February 9, 2023.** The hearing will be conducted telephonically. Please dial 1-888-684-8852 to call in for the hearing. When prompted, enter access code: 5988550. When prompted, enter security code: 0428. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

3.  **Any response to this motion must be filed and served not later than Friday, February 3, 2023**, which is the first business day at least five days before the time set for the hearing. Bankr. R. 9006(a); Local Rule 9006-1. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157 and 1334, Bankr. R. 5005, and Local Rule 1070-1. This proceeding is a core proceeding. The petition comencing this chapter 11, subchapter V, case was filed on May 17, 2021. The case is now pending in this Court.

5.  This motion arises under 11 U.S.C. § 1193 and Bankr. R. 3019(a). The motion is filed under Bankr. R. 9014 and Local Rules 3019-1, 3020-1. Movant requests relief with respect to deeming that the Fourth Modified Plan of Reorganization does not adversely change the treatment of any creditor or interest of any equity security holder who has not accepted the modification in writing and that the modification be accepted by all creditors and equity security holders who have previously accepted the original Plan, as explained in more detail below.

**GROUNDS**

6.  Debtors propose to modify the Plan by changing the Plan in the following manner:

    a.  Certain typographical and stylistic errors have been corrected.

    b.  Concerns of the U.S. Trustee, Subchapter V Trustee, secured creditor CorTrust Bank, and others have been addressed with regard to the contingent structured liquidation of Debtor's real estate and non-exempt personal property if the closing of the sale of the real property described as CRP No. 2 is delayed past August 1, 2023. *See* Exhibit A, Art. VIII, Sec. B.

    c.  Certain background information has been updated to reflect changes occuring since the filing of the Third Modified Plan of Reorganization, dated July 21, 2022 [ECF 190].

A copy of the changes made in the Plan is attached hereto as Exhibit A in red-line format for easy review. The Fourth Modified Plan of Reorganization was also filed as ECF 259.

7.  Because the substantive changes merely provide more clarity regarding the contingent structured liquidation already provided for in the Third Modified Plan of Reorganization [ECF 190, Art. VIII, Sec. B], the modifications do not adversely change any party's treatment.

8.  This motion is further supported by the memorandum of law and other documents included herewith.

9.  Pursuant to Local Rule 9013-2, should an evidentiary hearing be required, the movant provides notice that it may offer oral testimony from Debtors Jeffrey Cates or Christine Cici-Cates, of Medina, Minnesota, as to the relevant facts or to support this motion and the modification of Debtors' Plan.

### RELIEF REQUESTED

Accordingly, Debtors move the Court for an order in the form of the attached proposed order that

  A.  Determines that the proposed modifications of the Third Modified Plan of Reorganization do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification in writing;

  B.  Holds that the Fourth Modified Plan of Reorganization is deemed accepted by all creditors and equity security holders who have previously accepted the Plan; and

  C.  Such other relief as may be just and equitable.

Dated: January 26, 2023

                                 /s/ *Alexander J. Beeby*
                                 Kenneth C. Edstrom (148696)
                                 Alexander J. Beeby (398286)
                                 Sapientia Law Group
                                 120 South Sixth Street, Suite 100
                                 Minneapolis, MN  55402
                                 612-756-7100
                                 kene@sapientialaw.com
                                 alexb@sapientialaw.com

                                 Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re Jeffrey Cates and Christine Cici-Cates       Case No. 21-40882 WJF

Debtor(s).       Chapter 11, Sub. V

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DEEM ACCEPTANCE OF MODIFIED PLAN

The proposed modifications to Debtors' Third Modified Plan of Reorganization, dated July 21, 2022 [ECF 190] (the "Prior Plan"), proposed in Debtors' Fourth Modified Plan of Reorganization, dated January 26, 2023 (Ex. A) [ECF 259] (the "Plan"), merely provide more clarity regarding a contingent liquidation of estate property should a planned sale of the property be delayed past a set deadline, which was already provided for in the Prior Plan, as well as other non-substantive changes and updates.

Accordingly, Jeffrey Cates and Christine Cici-Cates, debtors in this Case, respectfully request that the Court (1) determine that the Plan does not adversely change the treatment of the claim of any creditors or interest of any equity security holder who has not accepted the modifications in writing pursuant to Bankruptcy Rule 3019 and Local Rule 3019-1 and (1) deem the Plan accepted by all creditors and equity security holders who previously accepted the Prior Plan.

## BACKGROUND

Debtor's filed their Third Modified Plan of Reorganization on July 21, 2022. [ECF 190.] This Prior Plan is a 100% payment plan that relevantly provides for and is financed by the sale of certain real estate owned by Debtors and referred to as CRP No. 2 to Oppidan Holdings, LLC. [*See* ECF 190, Art. I at 4, Art. VIII, Sec. A.] The Prior Plan also provides a contingency plan in

case the sale to Oppidan does not close by the later of August 1, 2023, or one year after the

Effective Date of a confirmed plan. [ECF 190, Art. VIII, Sec. B.] This contingency plan provides

for a systematic liquidation by auction of Debtors' real estate and non-exempt assets in a series

of groups. [*Id.*]

Debtor submitted ballots for voting on the Prior Plan, and reported over 90% of ballots

from Class III unsecured creditors as accepting the Prior Plan. [ECF 257.][1] Only secured creditor

CorTrust Bank voted against and objected to the Prior Plan. [*Id.*] However, CorTrust has also

withdrawn any objections to the various sale and easement motions implementing the Prior Plan,

which have been approved by the Court [ECF 184, 216, 248, 249]. The most recent sale order

approves an amended sale agreement that extends the contingency timelines for the sale to

Oppidan to July of 2023 [*See* ECF 233, ¶ 12] while also also providing adequate protection to

CorTrust through this period. [ECF 249, ¶ 12.] Debtor believes the proposed modifications

resolves CorTrust's concerns and that CorTrust will now support the Plan.

This Court held a hearing on confirmation of the Prior Plan on December 15, 2023, in

conjunction with the hearing on the motion to approve the amended sale agreement. [*See*

ECF 250 (providing an audio recordng of the December 15, 2023, hearing).] The Court

continued the confirmation hearing to February 9, 2023, to permit the parties to confer regarding

the Prior Plan's contingency plan in an effort to resolve CorTrust's objection. The proposed

Fourth Modified Plan of Reorganization fleshes out the contingency plan to address these

concerns. [*See* Ex. A, Art. VII, Sec. B.] The Plan sets the contingency deadline to trigger the

liquidation if for the sale to Oppidan is not closed—removing the extended deadline of one year

---

[1] The Amended Report of Ballot Tabulation corrects an error in the report filed as ECF 243.

from the Effective Date of the Plan. [*Id.*] The Plan also provides for a liquidation auction of the

Debtor's property to occur within 90 days of the contingency deadline in a series of rolling

auctions of additional real property or non-exempt assets as is necessary to accomplish full

payment of all Allowed Claims or until all such assets are sold. [*Id.*] The Plan also includes non-

substantive modifications to the Prior Plan to correct proofreading and formatting issues and to

update background information to account for events that transpired between the two plans. [*See

generally*, Ex. A.]

Accordingly, while the Plan provides more clarity regarding the contingency provision, it

does not adversely change the treatment of any party's claim or interest or affect the feasibility of

the Plan.

## DISCUSSION

Section 1193(a) of the Bankruptcy Code provides that the proponent of a subchapter V

plan may modify the plan at any point prior to confirmation. 11 U.S.C. § 1193(a). Furthermore,

Bankruptcy Rule 3019 provides, in pertinent part:

> [A]fter a plan has been accepted and before its confirmation, the
> proponent may file a modification of the plan. If the court finds after
> hearing on notice . . . that the proposed modification does not
> adversely change the treatment of the claim of any creditor or the
> interest of any equity security holder who has not accepted in writing
> the modification, it shall be deemed accepted by all creditors and
> equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019(a).

The Court must determine whether the modifications proposed adversely change the

treatment of the claim. *See, e.g. In re Mt. Vernon Plaza Community Urban Dev. Corp. I*, 79

B.R. 305, 306 (Bankr. S.D. Ohio 1987) (finding that the proposed modifications did not

"negatively affect the repayment of creditors, the length of the plan, or the protected property rights of the parties in interest."); *see also In re Am. Solar King Corp.*, 90 B.R. 808 (Bky. W.D. Tex. 1988); *In re Concrete Designers, Inc.*, 173 B.R. 354, 356 (Bankr. S.D. Ohio 1994) (modifying debtor's plan where the "the impact, while adverse, is not material, but is de minimis, and will not cause the Class 3 claimants [the affected creditor class] to reconsider their vote").

The only substantive modifications to the Plan here merely provide more clarity regarding a contingency provision already provided for in the Prior Plan. Accordingly, Debtors' proposed changes do not adversely change the treatment of the claim of any creditors or interest of any equity security holder who has not accepted in writing the modifications to the Plan. If anything, they provide more clarity and predictability to all parties involved.

## CONCLUSION

The proposed modifications do not affect the substance of the Plan or the treatment of any other creditor or interest holder who has not accepted in writing the modifications to the Plan. The plan payments do not increase under the Plan and the confirmation of the Plan benefits the estate and all creditors. Additionally, it is clear that the modification and confirmation of the Plan is in the best interest of the estate and all of the creditors of the estate. Finally, in the interest of judicial economy, Debtors requests that this motion be heard at the same time as the confirmation hearing.

Dated: January 26, 2023                    _/s/  Alexander J. Beeby_____
                                           Kenneth C. Edstrom (148696)
                                           Alexander J. Beeby (398286)
                                           Sapientia Law Group
                                           120 South Sixth Street, Suite 100
                                           Minneapolis, MN  55402
                                           612-756-7100
                                           kene@sapientialaw.com
                                           alexb@sapientialaw.com

                                           Attorneys for Debtors

## VERIFICATION

I, Jeffrey Cates, one of the Debtors in this Case and named in the foregoing notice of hearing and motion and memorandum, declare under penalty of perjury that I have read these documents and that they are true and correct according to the best of my knowledge, information, and belief.

Executed on:

Jeffrey Cates
Medina, Minnesota

**EXHIBIT A**
**FOURTH MODIFIED PLAN OF REORGANIZATION**
**WITH**
**REDLINES FROM THIRD MODIFIED PLAN OF REORGANIZATION**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: Jeffery Cates and Christine Cici-Cates     Bky File No. 21- 40882 WJF

(Chapter 11, Sub. V)

_____Debtors

~~THIRD~~FOURTH MODIFIED PLAN OF REORGANIZATION

OF

**Jeffery Cates and Christine Cici-Cates**

~~July 21, 2022~~
January 26, 2023

Kenneth C. Edstrom (148696)
Sapientia Law Group, PLLC
Minneapolis, Minnesota 55402
~~kene@sapientialaw.com~~kene@sapientialaw.com
612 756-1008

Attorneys for Debtors

TABLE OF CONTENTS

**Formatted:** Underline

**Formatted:** Normal

Contents

**Error! Hyperlink reference not valid.**TABLE OF CONTENTS .............................i

**Error! Hyperlink reference not valid.**ARTICLE I. INTRODUCTION......................1

**Error! Hyperlink reference not valid.**ARTICLE II. DEFINITIONS...........................7

**Error! Hyperlink reference not valid.**ARTICLE III. ESTIMATED CLAIMS, VALUES, AMOUNTS AND OBJECTIONS.......................................10

**Error! Hyperlink reference not valid.**ARTICLE IV : UNCLASSIFIED CLAIMS..10

**Error! Hyperlink reference not valid.**ARTICLE V. CLASSIFIED CLAIMS .........13

**Error! Hyperlink reference not valid.**A. .............Class I: Claim of CorTrust Bank (Impaired).....................................................................................13

**Error! Hyperlink reference not valid.**B.......Class II: Vehicle Loan: Claims of Ally Bank (Unimpaired).............................................................16

**Error! Hyperlink reference not valid.**C.........Class III: General Unsecured Claims (Impaired)......................................................................................16

**Error! Hyperlink reference not valid.**ARTICLE VI. IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN.............................................18

**Error! Hyperlink reference not valid.**ARTICLE VII. GENERAL PROVISIONS...19

**Error! Hyperlink reference not valid.**ARTICLE VIII. MEANS OF EXECUTION OF PLAN AND FEASIBILITY ................................................21

    **Error! Hyperlink reference not valid.**A. ....... Sale of Real Estate and Non-Exempt Personal Property ...............................................21

    **Error! Hyperlink reference not valid.**B..Payments to Creditors If Sale of the Real Estate is Delayed ..............................................22

    **Error! Hyperlink reference not valid.**C...........................Claims of Granite Re, Inc. ......25

    **Error! Hyperlink reference not valid.**D. ...................................Avoidance Actions ......27

    **Error! Hyperlink reference not valid.**E................................Plan Implementation. ......28

**Error! Hyperlink reference not valid.**ARTICLE IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND ADMINISTRATIVE CLAIMS ........................29

**Error! Hyperlink reference not valid.**ARTICLE X. MODIFICATION OF THE PLAN ................................................30

**Error! Hyperlink reference not valid.**ARTICLE XI. CONTINUING JURISDICTION OF THE BANKRUPTCY COURT ..................................30

**Error! Hyperlink reference not valid.**ARTICLE XII. RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS ..................................31

ii

Error! Hyperlink reference not valid.ARTICLE XIII. DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION ......................................................... 31

Error! Hyperlink reference not valid.ARTICLE XIV. MISCELLANEOUS PROVISIONS ......................................................................................... 33

Error! Hyperlink reference not valid.EXHIBIT A .................................................................. 1

Error! Hyperlink reference not valid.EXHIBIT B .................................................................. 2

Error! Hyperlink reference not valid.EXHIBIT C .................................................................. 3

Error! Hyperlink reference not valid.EXHIBIT D .................................................................. 9

ARTICLE I. INTRODUCTION ............................................................... 1

ARTICLE II. DEFINITIONS ............................................................... 7

ARTICLE III. ESTIMATED CLAIMS, VALUES, AMOUNTS AND OBJECTIONS ................................................................................................. 10

ARTICLE IV: UNCLASSIFIED CLAIMS ............................................. 10

ARTICLE V. CLASSIFIED CLAIMS .................................................... 13

    A.    Class I: Claim of CorTrust Bank (Impaired) ................................ 13

    B.    Class II: Vehicle Loan: Claims of Ally Bank (Unimpaired)............. 16

    C.    Class III: General Unsecured Claims (Impaired). ......................... 16

ARTICLE VI. IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN ............................................................................. 18

ARTICLE VII. GENERAL PROVISIONS ............................................. 19

ARTICLE VIII. MEANS OF EXECUTION OF PLAN AND FEASIBILITY ............ 21

iii

A.    Sale of Real Estate and Non-Exempt Personal Property ............................... 21

B.    Payments to Creditors If Sale of the Real Estate is Delayed......................... 22

C.    Claims of Granite Re, Inc. ........................................................................ 25

D.    Avoidance Actions .................................................................................... 27

E.    Plan Implementation.................................................................................. 28

ARTICLE IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
ADMINISTRATIVE CLAIMS.......................................................................... 29

ARTICLE X. MODIFICATION OF THE PLAN ................................................. 30

ARTICLE XI. CONTINUING JURISDICTION OF THE BANKRUPTCY COURT 30

ARTICLE XII. RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS ............... 31

ARTICLE XIII. DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION .. 31

ARTICLE XIV. MISCELLANEOUS PROVISIONS ............................................. 33

EXHIBIT A ....................................................................................................... 1

EXHIBIT B ....................................................................................................... 2

EXHIBIT C ....................................................................................................... 3

EXHIBIT D ....................................................................................................... 9

**Formatted:** Space Before: Auto, After: 6 pt

iv

## ARTICLE I. INTRODUCTION

Debtor Jeffrey Cates is the 100% owner of J.S. Cates Construction, Inc. ("Cates Construction") which, provided commercial and residential construction services, including design and building, general contracting, and construction management services. Cates Construction, for the reasons detailed below, filed a companion Chapter 11 case on May 17, 2021, (Bky File (Bankr. No. 21-40881)), which is the same date that Jeffrey Cates and Christine Cici-Cates filed this Chapter 11, subchapter V, case. (the "Petition Date"). Prior to the filing of the Cates Construction Chapter 11, that company merged with its affiliate J.S. Cates Companies, which held certain real property and shared the most significant obligations of Cates Construction. In June of 2022, JS Cates Construction voluntarily converted their case to a Chapter 7 liquidation.  That case is still pending, and there will eventually be a distribution of funds from that estate to those creditors who hold claims against the corporation.

The original reason for the dual Chapter 11 filings revolves primarily around cash flow issues experienced by Cates Construction.  Cates Construction iswas owed significant sums from project owners and corresponding subcontractors. An inability to collect receivables led to performance bond defaults and litigation regarding those defaults.  All of these issues were exacerbated by the COVID-19 pandemic. The Debtors have personally guaranteed much of the Cates Construction debt.

The Debtors own real estate consisting of approximately 93.55 contiguous acres in the city of Medina, Minnesota (the "Cates Properties"). The city of Medina is

1

expanding its commercial development and there is commercial development literally across the street from the Cates Properties.  For over two years, Debtors Jeffrey Cates and Christine Cici-Cates had a purchase agreement in place to sell the 30.18 acres known as 2575 Cates Ranch Drive A/K/Aor CRP No. 2 to Atkinson Development, LLC (or successors in interest to Atkinson Development).  Various amendments to that initial purchase agreement were made in the interim. Additional negotiations were undertaken to sell all of the Cates Properties to Atkinson Development; however, no final deal was ever reached.  The agreement with Atkinson Development was rejected by the Debtors through an order of the Court dated October 13, 2021 [ECF 79].

Despite the efforts of the Debtors'Debtors and of Cates Construction at holding off their creditors until funds to pay all of the debts of the corporation could be paid in full through either collections from business operations or through sale of the Cates Properties, no deal could be made with the creditors, and the dual Chapter 11s became necessary.  The Debtors believe that the lack of diligence by Atkinson Development in closing the initial deal with the Debtors directly led to the Chapter 11 filing.

On September 1, 2021, the Debtors entered into a purchase agreement with Oppidan Holdings, LLC ("Oppidan Purchase Agreement"), subject to the approval of the Bankruptcy Court, for sale of two parcels of their andthe Cates Properties, totaling approximately 67 acres, for $10,230,000.00.

The property to be sold under the Oppidan Purchase Agreement was described as follows:

That certain real property containing approximately 30.18 acres of land having an address of 2575 Cates Ranch Drive A/K/A CRP No. 2, Parcel NosNo. 04-118-23-14-0004, and legally Describeddescribed as: LOT 1, BLOCK 1, CATES RANCH SECOND ADDITION, HENNEPIN

2

COUNTY, MINNESOTA ("CRP No. 2");

And

and

That certain real property containing approximately 36.92 acres of land having an address 2590 Cates Ranch Drive, A/K/A CRP No. 3, Parcel No. 04-118-23-11-0002, and legally described as Lot 3, Block 1, CATES RANCH, Hennepin County, Minnesota located in the City of Medina, County of Hennepin, State of Minnesota ("CRP No. 3").

The Debtors sought approval of the Oppidan Purchase Agreement through a

motion brought on November 8, 2021, and there was no opposition to the Motion.  The

Court entered an order approving the sale to Oppidan on November 9, 2021 [ECF 103].

An amendment to the purchase agreement pushing back the dates of approval was

approved by the Court on April 5, 2022 [ECF Docket No. 167].Debtors and Oppidan

entered into a First Amended Purchase and Sales Agreement on February 15, 2022.  The

First Amended Purchase and Sale Agreement was subject to approval by the Bankruptcy

Court, but the Debtors never sought approval of said agreement.

BecauseDebtors and Oppidan entered into a Second Amended Purchase and Sale

Agreement on March 10, 2022, that extended certain terms under the contract by 90 days

but otherwise ratified the terms of the Oppidan Agreement. The Second Amended

Purchase and Sale Agreement was approved by the judge in the Bankruptcy Case

pursuant to an order entered on April 5, 2022, as ECF No. 167.

Oppidan terminated the Oppidan Sales Agreement (as amended) on May 4, 2022 and

entered into a new agreement with the Debtors on May 4, 2022 (the "New Purchase and

3

Sales Agreement"). The Oppidan Sales Agreement was terminated by Oppidan because

certain conditions expected by Oppidan ~~were~~by that time did not ~~met~~occur, specifically,

on April ~~5~~, 2022, the Medina, Minnesota City Council did not approve the request of

Oppidan to amend the Medina Comprehensive Plan to include the 67.1 Acres included in

the September 1, 2021 Oppidan Sales Agreement~~, (~~. At that time, the City ~~council~~Council

also encouraged Oppidan to come back with a proposal for amendment of the

Comprehensive Plan for the city of Medina with regard to the smaller 30.18 acre parcel

(2575 Cates Ranch Rd a/k/a CRP No. ~~2) the Buyers terminated the Original Sales~~

~~Agreement on May 4, 2022 and entered into a New Agreement on May 4, 2022. The~~

~~terms of the New Agreement, which are subject to bankruptcy court approval, are:~~2),

~~1.~~   ~~In consequence of the delay in the completion of the sale, and as an inducement for~~
~~the Debtor's to enter into this New Agreement, Oppidan will pay the Debtors the~~
~~sum of $100,000 on approval by Medina City Council of the Amendment of their~~
~~Comprehensive Plan to include the property in this New Agreement or bankruptcy~~
~~court approval of this New Agreement, whichever occurs last.~~

~~2.~~   ~~Oppidan agrees to buy that certain real property containing approximately 30.18~~
~~gross acres of land having an address of 2575 Cates Ranch Drive, located in the~~
~~City of Medina, County of Hennepin, State of Minnesota (Parcel Nos. 04-118-23-~~
~~14-0004), together with the building and all improvements thereon, and easements~~
~~and rights benefiting or appurtenant thereto (the "Property").~~

~~3.~~   ~~Purchase Price and Manner of Payment.~~  ~~The purchase price for the Property shall~~
~~be Four Million Five Hundred One Thousand Dollars and no/100 Dollars~~
~~($4,501,000.00) (the "Purchase Price"). The Purchase Price, subject to prorations~~
~~and adjustments set forth in this Agreement, shall be payable in full at Closing by~~
~~wire transfer of immediately available funds.~~

~~4.~~   ~~Earnest Money.~~  ~~Provided Buyer has not previously terminated this Agreement,~~
~~within five (5) business days after the Contingency Date, Buyer shall pay to Seller,~~
~~within five (5) days after the Contingency Date, the sum of One Million Four~~

4

Hundred Seventeen Thousand and 00/100 Dollars ($1,417,000.00) (the "Earnest Money"). The Earnest Money shall be nonrefundable to Buyer, except in the event of Seller default, and shall be applicable to the Purchase Price at Closing.

The Debtors received approval of the New Agreement by the Bankruptcy Court on May 31, 2022. There was no opposition filed by any party in interest to the approval of the New Agreement.

On July 19, 2022, the Medina City Counsel approved the amendment to their Comprehensive Plan that allowed Oppidan Holding to go forward with the sale under the terms of the New Agreement. The following dates are expected to occur leading to the final closing on the sale of CRP No. 2 to Oppidan which will provide the funding for the plan in an amount to pay off all creditors:

- July 20, 2022: $100,000 initial payment to Debtors.
- August, 2022: Site Plan to be filed with City of Medina
- September-October, 2022: Public Hearings in the City of Medina on Site with vote on site plan to follow.
- September-November 2022: Payment of Earnest Money of $1,417,000.00.
- No Later Than December 30, 2022: Closing and payment of remainder of $4,501,000 sales price.

The New Purchase and Sale Agreement modified the date of the payments under the original Oppidan Sales Agreement, reduced the amount of land purchased to CRP No. 2, paid the Cates $100,000 for the delay caused by having to extend the closing date, reduced the price of the land to $4,501,000, and extended the various dates for payment of earnest money and the closing but otherwise ratified the terms of the original Oppidan Sales Agreement. The New Purchase and Sale Agreement was approved by the judge in the Bankruptcy Case pursuant to an order entered on May 31, 2022, as ECF No. 187.

An "Amended New Agreement" was necessary as Oppidan not obtained approval of the City of Medina of its site plan for the development of CRP No. 2. Despite its completion of many of the contingencies necessary for the approval of the Buyer's site

5

plan, the date for final approval slipped from November of 2022 to April or May of 2023. Further Oppidan asked for consideration on the price for the sale of CRP No. 2, and the Debtor agreed to those terms.  The price for the 30.18 acres was changed to $3,400,000 with a contingency payment of up to $600,000 as an additional amount when the Buyer sells the land to a third party.  Debtor believes that the price to be paid even not including the additional amount is enough to pay all allowed administrative, secured and unsecured claims in full. The Amended New Agreement was approved by the Court on December 15, 2022 [ECF 249].

The Debtors' primary lender is CorTrust Bank N.A., ("CorTrust") which holds perfected liens in all of the Cates Properties through five separate mortgages in the estimated total amount of approximately $2,200,000.436,750.20 as of January 23, 2023. Other debts total approximately $524,833.10[1].  The plan in broad terms provides for payment of all of the allowed claims in their case in full from the proceeds of the sale to Oppidan Holdings.  Payment to unsecured creditors under the terms of the planPlan will be as quickly as possible after the closing of the sale of the real estate but in any event no more than ninety (90) days thereafter. To the extent that the sale to Oppidan does not close or is not enough to pay their Allowed Claims in full, the Debtors will sell as much of their non-exempt real and personal property as areis necessary to pay all Allowed Claims in full, if possible, as explained more fully in Article VIII, Section B.[2]

---

[1] Medina 55, LLC, the successor in interest to Atkinson Development, LLC has filed a claim in the amount of $1,341,486.07 based on the rejection of the previous purchase agreement between Atkinson and the Debtors.  Debtors believe that the claim is without merit and will objecthas objected to the claim. However, even if such a claim were allowed, it would not change the terms of the Plan.

[2] If the plan is not confirmed as a consensual plan the Bankruptcy Code provides that debtors must pay at

6

Debtors hereby propose the following plan of reorganization (~~hereinafter~~ "the

"Plan" or "Plan of Reorganization") pursuant to United States Bankruptcy Code, Title 11

of the United States Code including provisions for a Subchapter ~~5~~V small business

reorganization.

### ARTICLE II. DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective

meanings hereinafter set forth. Any terms contained in this Plan that are not specifically

defined shall have the meaning provided for in the Bankruptcy Code unless the context

otherwise requires. To the extent any term defined herein conflicts with the definition in

the Bankruptcy Code, the Bankruptcy Code definition will prevail.

"Allowed Amount", "Allowed Claim" or "Allowed Interest" means a claim or

interest to the extent that:

~~(b)~~(a)   A proof of such claim or interest has been

~~(ii)~~(i)    timely filed,

---

least a total to creditors equal to their Projected Disposable Income for three years.  Therefore, the
minimum total paid to creditors under the plan will be the total of their Projected Disposable Income for the
three years after the Effective Date. Projected Disposable Income is detailed on Exhibit A. This amount is
considerably less than Debtors believe will be available from the sale of their non-exempt assets.

~~(iii)~~(ii)  deemed filed pursuant to Bankruptcy Code § 1111(a), or

~~(iv)~~(iii)  late filed with leave of the court after notice and opportunity

for hearing given to counsel for the Debtors and counsel for

the committee of unsecured creditors, if any; and

~~(d)~~(b)  (i)    that is not a contested claim, or

(ii)    that is allowed (and only to the extent allowed) by a final
order.

~~(f)~~(c)    A claim asserted by any professional seeking compensation in

connection with this case is an allowed claim only to the extent that the

claim is allowed by order of the court after notice and hearing as provided

in the Bankruptcy Code.

"Avoidance Actions" means claims made under 11 U.S.C. §§ 510, 542, 544, 545,

547, 548, 549, ~~500~~550 and 553.

"Bankruptcy Court" or "Court" means this court, a unit of the United States

Bankruptcy Court for the District of Minnesota, or any other court having competent

jurisdiction to enter an order confirming the Plan.

"Debtors" means Jeffery Cates and Christine Cici-Cates.

8

"Confirmation Date" means the date of entry of an order confirming the Debtors' Plan.

"Effective Date" means the first business day following the 14th day following the filing date of the final order confirming this Plan.

"Interest" means the equity interest of any shareholder in the Debtors.

"Net Proceeds" means the total proceeds received from recoveries under any legal proceeding, including but not limited to any Avoidance Actions, less reasonable costs, expenses and attorneys' fees.

"Plan" means this Chapter 11 plan of reorganization and any amendments, or modifications thereto.

"Projected Disposable Income" has the meaning set out in 11 USC § 1191, that is, the Debtors' projection of the income that is received by the Debtors and that is not reasonably necessary to be expended for the maintenance or support of the Debtors or a dependent of the Debtors or a domestic support obligation that first becomes payable after the date of the filing of the petition; or for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtors.

"Pro Rata Share" means, as to a claimant, the amount determined by multiplying the total amount of Debtors' payment to a particular class by a fraction, the numerator of

9

which is the amount of the claimant's allowed claim and the denominator of which is the
total amount of all allowed claims in that class.

## ARTICLE III. ESTIMATED CLAIMS, VALUES, AMOUNTS AND OBJECTIONS

~~The~~Except as otherwise provided herein, the Debtors, or any party in interest,
have the right to object to Claims or Interests filed within the bankruptcy proceeding
within 30 days of the Confirmation Date, or such other time as the Court may direct.
Unless otherwise stated below, the valuations, claim amounts or projected payouts given
in this Plan of Reorganization are approximations. The Debtors will examine all Claims
and work to come to agreements with creditors relating to values, claim amounts and the
like. If agreements cannot be reached, Debtors or any party in interest may file any
objections relating to such Claims as are appropriate. Any such Claims for which an
objection has been filed or with respect to which a determination of the amount or value
must be made, shall be paid when, and to the extent allowed or determined by the Court,
or as otherwise agreed to by the Debtors and such claimant, and approved by the Court.

## ARTICLE IV-: UNCLASSIFIED CLAIMS

Unclassified claims include:

~~2.~~1.    Post-petition claims, incurred in the ordinary course of the Debtors'
business. [other than those listed in paragraph (3) below].

**Formatted:** Left, Indent: Left:  0.5", Hanging:  0.5",
Right:  0.45", Space After:  12 pt, Line spacing:  single,
Tab stops: Not at  1.9" +  1.9"

10

4.2.   Allowed administrative expense claims, except as otherwise classified herein, including:

4.

c.a.   Allowed fees and expenses of professionals for the Debtors pursuant to 11 U.S.C. § 503(b)(1)(A);

and

c.b.   Allowed administrative claims under 11 U.S.C. §503(b)(9).

6.3.   Administrative claims of taxing authorities for post-petition taxes. Debtors is current on all post-petition taxes.

Treatment:

The Allowed Amounts of the foregoing claims will be satisfied by payment in full on the effective date, unless otherwise agreed to by the particular claimant to the extent not otherwise paid in the ordinary course of business as the same become due or as agreed upon by a particular claimant. The largest of these claims is likely to be attorney's fees for Debtors' counsel, estimated at $200,000 who agrees to take payments over time as available from the cash flow of Debtors or until the sale of assets is closed. Debtors will continue to pay all court fees and all other trustee fees, including subchapter V Trustee fees, if any, that come due until the Chapter 11 case is closed, converted or dismissed, as required by 28 U.S.C. § 1930, and subject to any amendments to the Bankruptcy Code made retroactively applicable to this Case.  Unpaid Subchapter V trustee fees are

11

estimated at $25,000 or less.  As of the Effective Date, the duty to file Monthly Operating

Reports ceases.

Formatted: List Paragraph, Left, Indent: Left:  0.5",
Hanging:  0.5", Right:  0.45", Space After:  12 pt

8.4.    Pre-Petition Tax Claims under 11 U.S.C. § 507(a)(8)

The IRS has filed a proof of claim for taxes as follows:

Priority       $  4,704.00

Formatted: Font: 11 pt

The priority claim of $4,704.00 is included in the unclassified claims.

Hennepin County is owed $11,056.52 for unpaid property taxes. Those taxes will

be considered to be a claim under § 507(a)(8) and treated as set forth below.

Treatment of Any Tax Claims:

Formatted: Underline

The Allowed Amount arising under § 507(a)(8) will, unless otherwise agreed, be

paid, with interest, at the rate set forth in applicable state or federal provisions regarding

interest on unpaid taxes under a plan of reorganization. Such taxes will be payable in

amounts as they become available from either the sale of the Cates Parcels or in equal

monthly payments from the earnings of the Debtors not to exceed 60 months from the

date of the filing of the petition. contemplated under this planPetition Date.

9.5.    Priority claims for pre-petition wages used §11 U.S.C. § 507 (a)(4).

Formatted: Left, Indent: Left:  0.5", Hanging:  0.5"

These claims, to the extent they exist, and are allowed, are for all wages, salary or

commissions earned under § 507 (a)(4) of the bankruptcy code. Debtors as individuals do

not have any employees and therefore believe that there are no such claims.

12

Treatment:

Such claims will be paid, in full, on the Effective Date, or according to the term of any agreement with any such claimholder. Again, Debtors believe that there are no such claims.

## ARTICLE V. CLASSIFIED CLAIMS

### B.A.   Class I: Claim of CorTrust Bank (Impaired)

CorTrust Bank has four loans with the Cates as individuals totaling approximately and two loans with Cates Construction which Jeffrey Cates personally guaranteed.  As of January 23, 2023, the loans owed to CorTrust, including unpaid post-petition interest fees and costs, total $2,200,000.00436,750.20.  All loans are secured by first-priority mortgages against the Cates' real property as described below.  The Cates have been unable to make payments on the mortgages during the course of the Chapter 11 due to the cash flow issues identified above.  However, the Cates have made adequate protection payments to CorTrust, including $75,000 for the period through July 1, 2023. [*See* ECF No. 249, ¶ 12.] The loans are secured by four mortgages on the following parcels owned by the Cates:

| | |
|---|---|
| 2400 Cates Ranch Rd | LOT 1, BLOCK 1, CATES RANCH, HENNEPIN COUNTY, MINNESOTA |

| 2575 Cates Ranch Rd a/k/a CRP No. 2 | LOT 1, BLOCK 1, CATES RANCH SECOND ADDITION, HENNEPIN COUNTY, MINNESOTA. |
| 2590 Cates Ranch Rd a/k/a CRP No. 3 | Lot 3, Block 1, CATES RANCH, Hennepin County, Minnesota. |
| CRP No. 1 -XXX Willow Drive | LOT 1, BLOCK 2, CATES RANCH SECOND ADDITION, HENNEPIN COUNTY, MINNESOTA |

Treatment:

CorTrust will have an allowed secured claim against the Debtors in the amount of $2,436,750.20, plus any additional post-petition interest, fees and costs that accrue after January 23, 2023 under CorTrust's loans.  The loans with CorTrust will be re-written with all previous terms remaining the same except that the ~~loans~~loans' due date will be extended by the number of months between the Petition Date and the Effective ~~date~~Date and the amounts due to CorTrust that have been unpaid during the course of the Chapter 11 will be added to the principal of the loans.  CorTrust will retain all liens to secure its claim.  The loans will continue to be encumbered by the existing mortgages until they are paid in full.  ~~Payments on the mortgages encumbering the property~~No payments will be ~~paid interest only~~made to CorTrust until the sale of the real estate contemplated by this plan is/are completed.  Except as otherwise expressly provided by this Plan, all terms and conditions of CorTrust's ~~claim is satisfied.  The estimated monthly payment is $8,500.00, see Exhibit A.~~loan documents will remain in full force and effect.

Upon the closing of the sale to Oppidan Holdings or any other buyer, ~~the loans to CorTrust~~CorTrust's allowed secured claim will be paid in full within ten (10) business

14

days.

Also upon the closing of the sale to Oppidan Holdings or any other buyer, after paying any sales commissions and expenses of the sale, the Debtors shall hold as much of the net proceeds of the sale as necessary to pay Cor Trust's claims in a segregated bank account until further order of the Court, or, if the sale is closed after the Effective Date, the Allowed Claim of CorTrust shall be paid in full from the net proceeds of the sale. As adequate protection under 11 U.S.C. § 363(e), all liens against the ~~Sales~~Cates Properties (including the liens held by CorTrust Bank, N.A.) shall automatically transfer and attach to the net proceeds of the sale in the same order, priority, and validity as they had with respect to the ~~Sales~~Cates Properties immediately before the sale. No further action shall be required to perfect the lienholders' interest in the net sale proceeds.

If the sale to Oppidan Holdings ~~or any other buyer~~ does not close by August 1, 2023 or ~~one year after the Effective Date, whichever~~ is ~~later~~otherwise terminated, CorTrust will be paid in full after a public auction or auctions of some or all of the Debtors' real estate as described in Article VIII, below.  The auctions will take place within ninety (90) days after the earlier of: (i) the date the Debtors' purchase agreement with Oppidan is terminated, or (ii) August 1, 2023 (by October 30, 2023).


In the event that CorTrust's allowed secured claim is not paid in full for any reason, CorTrust will have an allowed Class III general unsecured claim in the amount of the unpaid portion of its claim, provided that CorTrust's Class III general unsecured claim shall not include any post-petition interest, fees or costs.  In the event that CorTrust's allowed secured claim is not paid in full for any reason, CorTrust will retain

15

all claims it possesses against Cates Construction and all liens against Cates Construction's assets, to secure its unpaid claim.

C.B.    Class II: Vehicle Loan: Claims of Ally Bank (Unimpaired).

Ally Bank has a secured loan on a 2015 Lincoln MKC Sports Utility Vehicle (VIN 5LMTJ2QH5FUJ3473) in the amount of $12,157.94.

Treatment:

To the extent that any payments on the vehicle loan have been missed during the pendency of the Chapter 11, those payments will be made up on the Effective Date (the last payment made pre-petition covered the loan payments through December of 2021). The terms of the loan with Ally Bank will continue as written. The Debtors will continue to pay on the vehicle loan to Ally Bank until it is paid in full.

E.C.    Class III: General Unsecured Claims (Impaired).

This class shall consist of allowed unsecured claims not entitled to priority and not treated in any other class in the Plan. The claims in Class III are scheduled by the Debtors in the amount of $524,833.10[3], not including the $1,341,486.07 claim filed by Medina 55 Holdings, LLC. If the claim of Medina 55 Holdings is allowed, that creditor would be a Class III creditor entitled to a pro rata share of any payments to members of that class.

---

[3] This assumes that the claim of Granite RE will be reduced to $487,647344,371.22 as explained below.

Treatment:

**Formatted:** Left

The holder of a Class III Allowed Claim shall be paid the Pro Rata Share of any remaining proceeds of any sale of non-exempt assets after the unclassified claims, secured claims in Class I and II and all administrative claims have been paid in full. If the sale of CRP No.~~ ~~ 2 to Oppidan Holdings does not close by ~~the Effective Date~~August 1, 2023, interest will be paid on the Class III claims, assuming the proceeds of any sale of all non-exempt assets described in the plan exceed the total owed to the unclassified claims, the secured claims, the administrative claims and 100% of the allowed Class III claims.  The amount of any interest owed to Class III claims will be paid at the federal judgment rate in place as of the Petition Date (.05% per annum). If the net proceeds of any sale of non-exempt property are insufficient to pay all of the Allowed Class III Claims with interest, then the interest will be paid pro rata to the extent of available funds.

Upon the sale of CRP No. 2 contemplated by the Plan, the pro rata portion of any proceeds that would be paid to Medina 55 Holdings if its claim were allowed will be escrowed by the Debtors until the allowance of their claim is settled or is subject to a final non-appealable order allowing the claim in whole or in part.  Assuming the sale of CRP No. 2 is closed no later than August 1, 2023 ~~or one year after~~and that sale results in the ~~Effective Date, whichever comes later~~full payment of CorTrust's Allowed Claim, all Allowed Administrative Claims, and all unclassified claims that are then due, no further sale, liquidation or auction of the Debtor's property will take place until the objection to Medina 55's claim is settled or is subject to a final, non-appealable order allowing the claim in whole or in part. ~~Any escrowed funds not payable to Medina 55 after a~~

17

determination of the amount of their claim, if any.After that determination, any funds from the sale of CRP No. 2 that are escrowed for the purpose of paying any Allowed Claim of Medina 55 that are in excess of Medina 55's Allowed Claim will be redistributed to the Allowed Claims of the other Class III creditors pro rata up to an amount necessary to pay their Allowed Claims in full under the terms of this Plan.

Debtors believesbelieve that they will be able to pay all Allowed unsecured claims in full from the sale of CRP No. 2 to Oppidan Holdings, which the Debtors believe will close in the Fall or Winter of 2022.no later than August 1, 2023. Payment to Class III Allowed Claims shall be as fast as possible after the closing, or after the allowance of any claim, whichever comes later but no later than 90 days thereafter. If the Oppidan sale fails to close, the Debtors will re-list all or part of the Cates Parcels and their non-exempt personal property for sale as set forth in Article VIII below.  The Debtors will pay the unsecured creditors from the net proceeds of any sale of non-exempt real or personal property after all unclassified claims, secured claims and administrative claims are paid in full. Per the Bankruptcy Code, 11 USC §.U.S.C. § 1191(b), in case of a confirmation by cram down, the plan payments to unsecured creditors must be equal to or greater than the Projected Disposable Income for the three years (or up to five years if the court so rules) after the Effective Date. In the case of the Debtors, that amount is $43,936.63 for three years (see Exhibit A).

ARTICLE VI. IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN

Classes I and III are impaired under the Plan.  Class II is unimpaired.

18

ARTICLE VII. GENERAL PROVISIONS

A.      Payments under this Plan will be made by check, mailed postage prepaid, to the Claimant at the address listed on its proof of claim or, if no proof of claim has been filed, to the address listed on the schedule.

C.B.    Except as to the Claims of Taxing Authorities, Debtors reserves the right to designate the application of any payment on a Claim under this Plan.

E.C.    In the event a payment is returned to Debtors unclaimed, with no indication of claimant's forwarding address, Debtors will hold such payment for a period of 60 days from the date of return. If not claimed by claimant by the end of that period, the payment shall become the property of the Debtors.

G.D.    Proofs of Claims or Interests not timely filed and not otherwise scheduled will not participate in distributions under this Plan and will be discharged under Bankruptcy Code §_1141(d) or § 1192 unless otherwise ordered by the Court.

I.E.    In the event this Plan is not confirmed under the Bankruptcy Code §_1129(a) and 1191(a), the Debtors requests this Plan be confirmed under Bankruptcy Code §_1191(b).

19

F.     G    Any creditor holding a deposit, including but not limited to utilities, shall return the full amount of the deposit, without the right to set off, as soon as practicable following consummation of this Plan.

I.G.    As of the Confirmation Date, the Debtors will continue to run their own affairs and distribute the payments due creditors unless the plan is confirmed under 11 USC § 1191(b) in which case payments shall be made by the Subchapter V Trustee, Mary Sieling, or her successor or as otherwise provided by the Confirmation Order.

K.H.    Contingent, unliquidated, or contested Claims will be paid to the extent and manner agreed upon by the Debtors and the affected parties as approved by the Court, or as liquidated by the Court after hearing, as a general unsecured Claim under Class III. If any contested claim is unresolved by the time of the real estate being sold under the terms of the Plan has been sold, the Debtors will set up a reserve account in the amount of that/those contested claim(s) or a pro rata portion of that/those claims if the net proceeds of the sale of real estate contemplated by the plan fails to provide for payment in full of all Class III creditors until such time as that contested claim is resolved.

M.I.    Any funds or benefits received by the Debtors by virtue of any adversary proceedings, lawsuit or any proceeding, claim, or any other legal right assertable by the Debtors under the Bankruptcy Code, or other law, shall remain the property of the Debtors, and may be used by the Debtors to fund the Plan. Debtors knows of no such claims.

20

O.J.    If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan shall occur on the next succeeding Business Day.

## ARTICLE VIII. MEANS OF EXECUTION OF PLAN AND FEASIBILITY

B.A.    Sale of Real Estate and Non-Exempt Personal Property

The Debtors have determined in their business judgment, that it is in the best interest of the creditors to sell as much of their real estate and non-exempt personal property as necessary to pay the Allowed Claims in full, if possible.

Under the provisions of the Bankruptcy Code, a creditor having a lien or security interest in the assets of the Debtors will have a secured claim only up to the value of the collateral securing the claim.

An appraisal of the Debtors' 36.92 acre parcel of real estate (CRP No. 3) subject to the original September 1, 2021 Oppidan Purchase Sale Agreement was done in 2017, valuing the parcel at $1,070,000 assuming that the parcel could not be developed and noting that the value would be significantly increased if the property could be developed.[4] An appraisal of the Debtors' 30.18 acre parcel of estate (CRP No. 2) subject to the Oppidan New Agreement was done in 2020 valuing the parcel at $1,100,000 assuming that the parcel could not be developed and also noting that the value would be

---

[4] The voluminous 2017 appraisal, previously served upon all creditors with the First Modified Plan is not attached but is available through Debtor's counsel.

significantly increased if the property could be developed.[5] No more current appraisals are available but the Debtors believe that a fair market value of all of the Cates Parcels in a non-developed state is $4,600,000 as set forth in the schedules filed with the bankruptcy petition.

Based on the superior claims of the secured creditors, the unclassified claims, unpaid administrative claims and the Debtors' agricultural exemption allowance, Debtors estimate that they would have to receive net proceeds of $ 4,097,751.56 to pay non-disputed unsecured creditors in full (~~without~~with interest), and $ 5,439,237.63 if the Disputed Claim of Medina 55 is allowed in full (~~without~~with interest). See the Liquidation Analysis, Exhibit C, attached.

As set out in Article V, above, the holder of a Class III Allowed Claim shall be paid the Pro Rata Share of any remaining proceeds of any sale of any assets after the unclassified claims and secured claims in Class I and II and all administrative claims have been paid in full. If the net proceeds of any sale of non-exempt property are insufficient to pay all of the Allowed Class III Claims with interest, then the interest will be paid pro rata to the extent of available funds.  If the closing of CRP No. 2 takes place before August 1, 2023 ~~or one year after the Effective Date, whichever is later~~, proceeds of the sale will be distributed as set forth under the terms of the Plan set forth above.

~~C.~~B.    Payments to Creditors If Sale of the Real Estate is Delayed

If the ~~closing of the~~ sale ~~of CRP No. 2 is delayed past~~to Oppidan Holdings does not close by, August 1, 2023 or ~~one year after the Effective Date, whichever is later~~is

---

[5] The voluminous 2020 appraisal, previously served upon all creditors with the First Modified Plan is not attached but is available through Debtor's counsel.

otherwise terminated, Debtors will within 90 days sell enough of their real estate and non-exempt personal property at a public auction in an amount necessary to pay the Class II allowed secured claim, administrative claims, unclassified claims, Class I and Class II Allowed Claims and make such payments to Class III Allowed Claims up to 100% of allowed claims without interest as are available after all unclassified claims, Class I and Class II claims, administrative claims are paid and the Debtors' $1,125,000 exemption allowance on their 19 acre homestead is accounted for.[6] Such an auction is estimated to cost between 6 and 10% of the gross proceeds. The auction will take place within ninety (90) days after the earlier of: (i) the date the Debtors' purchase agreement with Oppidan is terminated, or (ii) August 1, 2023 (by October 30, 2023). If the Plan is confirmed as consensual then the Debtors will be in charge of the auction and the distribution of proceeds. If the Plan is confirmed as a non-consensual plan then the Subchapter V Trustee shall be in charge of the auction, except that the real estate of the Debtors will be sold in three four groups in the following order:

Group One:

36.92 acres of land having an address 2590 Cates Ranch Drive, Parcel No. 04-118-23-11-0002, and legally described as Lot 3, Block 1, CATES RANCH, Hennepin County, Minnesota located in the City of Medina, County of Hennepin, State of Minnesota ("CRP No. 3") - minimum bid will be the amount of the allowed secured claim of the Class II creditor, currently at $2,436,750.20 as of January 23,

---

[6] There is a dispute over whether the Debtors are entitled to a $450,000 homestead exemption or the $1,125,000 agricultural homestead exemption. The Debtors believe that all the creditors will be paid their Allowed Claims in full as set forth under the terms of the plan. Therefore, this issue may never need to be decided, Therefore, rather than determining the issue at the time of confirmation, if the amount of the Debtors' homestead exemption ends up being determinative of the amount that the creditors will receive, the Bankruptcy Court will retain jurisdiction over determination of the appropriate amount of homestead exemption the Debtors are entitled to.

2023 unless the minimum is waived by CorTrust Bank.

Group Two:

6.09 Acres - Address Unassigned, Medina MN 00000 (PID 0411823140005) CRP 1 - minimum bid will be the amount of the allowed secured claim of the Class II creditor, currently at $2,436,750.20 as of January 23, 2023 unless the minimum is waived by CorTrust Bank.

Group Three:

30.18 Acres - 2575 Cates Ranch Dr, Medina MN 55340 (PID 0411823140004) (A/K/A "CRP2"CRP No. 2 (currently under contract to sell to Oppidan Holdings)) - minimum bid will be the amount of the allowed secured claim of the Class II creditor, currently at $2,436,750.20 as of January 23, 2023 unless the minimum is waived by CorTrust Bank.

> *Formatted: List Paragraph, Space Before: 0 pt, After: 12 pt*

36.92 Acres - 2590 Cates Ranch Dr, Medina MN 55340 (PID 0411823110002)

A/K/A "CRP 3"

Group TwoFour:

> *Formatted: Indent: Hanging: 0.5", Space Before: 0 pt, After: 12 pt, Line spacing: single*

6.09 Acres - Address Unassigned, Medina MN 00000 (PID 0411823140005)

(largely wetland)

Group Three

19.41 Acres - 2400 Cates Ranch Dr, Medina MN 55340 (PID 0311823220002) (Cates Homestead) - minimum bid will be the amount of the Cates claimed agricultural homestead exemption, $1,125,000.00 unless waived by the Debtors.

> *Formatted: List Paragraph, Space Before: 0 pt, After: 12 pt*

3.67 Acres - Address Unassigned, Medina MN 00000 (PID 0311823220004) (separateSeparate plat for Cates Ranch Drive)

All non-exempt personal property

> *Formatted: Space Before: 0 pt, After: 12 pt*

If, at any time, the Debtor and the Subchapter V Trustee agree that the net

24

proceeds of the sale of one or more group of properties is sufficient to pay all Allowed Claims in full with interest as described above, at the discretion of the Debtors, all further auctions of the Debtors property will be halted and the plan payments will be made from the proceeds of the properties already sold.

The Subchapter V Trustee will also be in charge of the hiring of the auctioneer (which cannot be the Debtors themselves) and distribution of the proceeds.  Based on the equity in the properties owned by the Debtors, Debtors believe but cannot guarantee that all Allowed Claims of all creditors will be paid in full through the eventual liquidation of all or part of the Cates Parcels and other non-exempt assets.[7]

At any auction of the Debtors' property, the minimum bid for the property shall be the unpaid amount of CorTrust's allowed secured claim, unless CorTrust agrees otherwise in writing.  At any auction of the Debtors' property, CorTrust shall be entitled to participate in the auction and credit bid the unpaid amount of its allowed secured claim to purchase the property.  In the event the auction does not take place within 90 days, any party in interest (including CorTrust and the Subchapter V bankruptcy trustee) shall be entitled to bring a motion on an expedited basis to enforce the Plan, including seeking relief from the automatic stay or conversion or dismissal of the Debtors' bankruptcy case.

D.C.    Claims of Granite Re, Inc.

With regard to the claim of Granite Re, Inc., the Debtors are personally guaranteed on this Class III claim that is owed by J.S. Cates Construction, Inc. (Bky

Formatted: Line spacing: single

---

[7] The Debtors believe that this liquidation of all non-exempt assets provides the basis for the Court to conclude that the Debtors have met the threshold of 11 USC § 1191(c)(3)(ii)(B) if the plan is confirmed as non-consensual.

Bankr. No. 21-40881).  Granite Re, Inc. has settled an Adversary Action in the case of

J.S. Cates Construction, Inc. (Granite Re, Inc. v. J.S. Cates Construction, Inc., et. al.,

ADV. Adv. No. 22-4004). The complaint alleged that Granite Re had a superior interest

in the receivables being collected post-petition by the corporate debtor. The settlement

recognized this priority as pleaded in the complaint. Granite Re's estimated Allowed

Claim in this Chapter 11 case is $832,019.09.  Debtors estimate the amount of accounts

receivable that will be available for payment to Granite Re from the settlement of ADV.

22-4004 will be $487,647.87.  Therefore, assuming the entire claim of Granite Re is

allowed in the converted Corporate Chapter 11 case and in this Chapter 11, Grantie Re's

claim in this Chapter 11 would be reduced to After payment of all accounts receivable

collected under the settlement in Adv. No. 22-4004, Granite Re's claim in this Chapter 11

is approximately $344,371.22 and that is the estimated amount of claim used for the

purposes of estimating payments under this Plan to unsecured creditors.

Further, Granite Re, Inc. has commenced an adversary action against the Debtors

claiming that their debt is non-dischargeable under 11 USC 523(a)(4).  Adv. No. 22-

4005. The stipulation between Debtors and Granite Re have agreed to settle settled the

adversary as follows:

1.1.    When Assuming Granite Re's claim in the funds from the converted JS
        Cates Adversary Construction, Inc. Chapter 7 are received by Granite RE,
        Granite RE Re prior to the distributions to Granite Re under the plan,
        Granit Re will amend their claim against the Cates individually in their
        individual Chapter 11 to take into account that payment, dollar for dollar.

3.2.    Assuming Granite Re's claim in the converted JS Cates Construction, Inc.
        Chapter 7 is received by Granite Re and the Debtors will enter into a
        stipulation, which, if approved by after the Court, distributions to Granite
        Re under the plan, assuming Granite Re is paid its Allowed Claim under

26

the plan in full, Granite Re will assign Granite Re's remaining claim in the J.S. Cates Construction, Inc. estate if funds from that estate are not paid to Granite Re as an unsecured creditor of that estate prior, if any, to the distribution of creditors under the Plan or if the proceeds of the Cates. Counsel for J.S. Cates Construction, Inc. estate are paid out prior shall prepare and submit to the distribution to unsecured creditors under the Plan but those proceeds are not enough to pay Granite Re's allowed claim in full. Even if the stipulation is not approved, the Plan will still pay any allowed claim of Granite Re that remains unpaid at the time distribution to unsecured creditors are made under the Plan Granite Re's counsel such assignment documents as necessary.

5 3.    Granite Re agrees to support the current Third Modified plan of reorganization in the Personal Chapter 11 or any modification of that plan that doesn't negatively impact payment to unsecured creditors., and Granite Re shall withdraw any objections previously filed.

> Formatted: Left, Right:  0", Space After:  12 pt, Line spacing:  single, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  1"

7 4.    The Debtors agree to have the remaining its debt to Granite RE Re be declared to be non-dischargeable.

> Formatted: Left, Right:  0", Space After:  12 pt, Line spacing:  single, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  1"

9 5.    Mutual releases will be exchanged effective upon payment in full of Granite Re's claim. Allowed Claim.

> Formatted: Left, Right:  0", Space After:  12 pt, Line spacing:  single, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  1"

The stipulation was approved by the Court on August 30, 2022 [ECF 200].

E. D.    Avoidance Actions

> Formatted: Line spacing:  single

Debtors have investigated potential causes of action and believe that there are no significant avoidance recovery available that would exceed the cost of litigation. They reserve the right to bring any Avoidance Action for the benefit of unsecured creditors under the terms of this plan if further facts become known. Because no estimate of recovery of any potential claims is available, no amount has been included in the exhibits attached that show available proceeds to unsecured creditors. In addition to Exhibit C,

27

which is the liquidation analysis, Debtors have attached Exhibit D which is a "waterfall"
analysis of payments listed under the terms of the plan.

F.E.    Plan Implementation.

If the plan is confirmed as a consensual plan under 11 USC §§ 1129(a)
and 1191(a), Debtors shall implement the plan and pay creditors directly. Pursuant to 11
USC § 1190(2), if the plan is confirmed as a cramdown under 11 USC § 1191(b), all of
the future earnings and proceeds from the sale of assets of the Debtors will be submitted
to the supervision and control of the Subchapter V trustee under the terms and time limits
set out in Article VIII as necessary for the execution of the plan unless the Trustee waives
such right. In that case, unless the Confirmation Order provides otherwise, creditors shall
be paid through Mary Sieling, c/o Manty & Associates, 150 S 5th St. St. 3125,
Minneapolis MN 55432, or via email at Mary@mantylaw.com Mary@mantylaw.com.
Unsecured creditors will be paid in one payment after all sufficient assets of the Debtors
are liquidated including. If the liquidation of the assets of the Debtors is insufficient to
pay Class III creditors in full and if the Debtor pursues any recovery of Avoidance
Actions, the proceeds of the Avoidance actions will be paid separately to Class III
creditors after the conclusion of all Avoidance Action Proceedings. Any questions
concerning provisions of the plan shall be directed to the Debtors at jeff@catesco.com or
chris@catesco.com.jeff@catesco.com or chris@catesco.com. Payments will be made by
check, mailed postage prepaid, to the Claimant at the address listed on its proof of claim
or, if no proof of claim has been filed, to the address listed on the schedules.

The Debtors, after confirmation, will continue to manage their remaining affairs
as a liquidating agent for the purpose of liquidating the assets necessary under the terms

28

and time limits of Article VIII of the plan, subject to the supervision of the subchapter V

trustee as provided herein. If the Plan is confirmed under 11 ~~USC~~U.S.C. § 1191(a), the

Debtors will file a Notice of Substantial Consummation not later than 14 days after the

Plan is substantially consummated per 11 ~~USC~~ U.S.C. § 1183(c)(2). The Debtors will

provide or pay all of the Debtors' ~~administrative~~ expenses and business debts arising

post-confirmation in the ordinary course of business. Approval of the plan shall act as an

order allowing payment of any post-confirmation fees or costs owed to professionals as

ordinary course expenses including fees of the Subchapter V Trustee and any

professionals working for the Reorganized Debtors. Debtors estimates that it will have no

other expenses in that regard other than Subchapter V Trustee's fees and administrative

expenses for professionals to carry out any avoidance litigation and to provide service to

the Debtors to prepare documents necessary to affect a sale of the real estate of the

Debtors and assist the Debtors in the closing of the sale or sales.


## ARTICLE IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND ADMINISTRATIVE CLAIMS

**Formatted:** Line spacing: single

Attached to this Plan and marked as Exhibit B is a list of the executory contracts

and leases to which the Debtors are a party. As to each such contract or lease, the Debtors

will continue to pay on the lease until the assets are sold or abandoned. If any executory

contracts or leases are not listed on Exhibit B, said lease or contract shall be deemed

rejected, if not previously rejected, as of the Confirmation Date.

Unless otherwise ordered by the Court, any party holding an Administrative

Claim, which has received a copy of this Plan, shall have thirty (30) days following the

confirmation date or such other date established by court order to file a request for payment of administrative expenses pursuant to the applicable provisions of the Bankruptcy Code and Rules. Failure to file such a request in a timely manner shall be deemed a waiver of the claim and the Debtors shall not be obligated to pay such claim.

## ARTICLE X. MODIFICATION OF THE PLAN

The Debtors hereby reserve the right to amend or modify the Plan in the manner provided for under 11 U.S.C. § ~~1127~~1191 or § ~~1129(a) or (b),~~1193, at any time prior to confirmation, or if allowed by the Court, at or after confirmation. Debtors reserve the right to amend the Plan or remedy any defect or omission, or reconcile any inconsistencies of the Plan, or the order of confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan ~~paor insure~~or ensure confirmation.

## ARTICLE XI. CONTINUING JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction over the Debtors' property, after confirmation of the Plan, for the purpose of enforcing the provisions of the Plan, including without limitation, the determination of the amount of Allowed Claims, the hearing of objections, if any, to Claims, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings, actions to subordinate Claims under § 510, to conduct any actions which may be properly removed to the Bankruptcy Court, and for other proper purposes related to this Plan.

30

## ARTICLE XII. RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS

a) General Reservation. Debtors reserve all of their rights, at law or in equity, not otherwise specifically modified by this Plan, to object to claims, commence adversary proceedings or other legal actions, and take any other legal action allowed by the Bankruptcy Code or other applicable law, and use the Net Proceeds thereof to fund operations or this Plan.

## ARTICLE XIII. DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION

The provisions in the Bankruptcy Code for Subchapter V Chapter 11 cases shall govern the effect of confirmation of this plan. If the plan has been agreed to by all class of creditors, confirmation of this Plan shall constitute a complete waiver and release and satisfaction of all Claims of all creditors and shareholders against the Debtors, to the full extent allowed under bankruptcy law, except as otherwise as provided by the Plan. This discharge and release shall include any purported liens, encumbrances, or security interests claimed by a claimant or any other entity against property of the debtor, or property dealt with by the Plan, except such liens as are expressly stated to survive confirmation. On the Effective Date, except as otherwise provided by the Plan, Debtors shall be restored to its full ownership and dominion over all property and assets owned by it, which property shall be properly dealt with by the Plan, pursuant to 11 USC § 1141(c).

If this plan is confirmed under the cramdown provision of 11 USC § 1191(b), then the Debtors will receive a discharge only as provided under 11 USC § 1192 after

31

completion of all payments due within the term of the plan. After that discharge is entered, the order discharging the Debtors shall constitute a complete waiver and release and satisfaction of all Claims of all creditors and shareholders against the Debtors, to the full extent allowed under bankruptcy law, except as otherwise as provided by the Plan. This discharge and release shall include any purported liens, encumbrances, or security interests claimed by a claimant or any other entity against property of the debtor, or property dealt with by the Plan, except such liens as are expressly stated to survive confirmation. On the Effective Date, Debtors shall be restored to its full ownership and dominion over all property and assets owned by it, which property shall be properly dealt with by the Plan, pursuant to 11 USC § 1141(c).

If this plan is confirmed under the cramdown provision of 11 USC § 1191(b), then the debtors will receive a discharge only except as otherwise as provided under 11 USC § 1141(d)(1)(A) after completion of all payments due within the term of the plan. After that discharge is entered, the order discharging the Debtors shall constitute a complete waiver and release and satisfaction of all Claims of all creditors and shareholders against the Debtors, to the full extent allowed under bankruptcy law by the Plan. This discharge and release shall include any purported liens, encumbrances, or security interests claimed by a claimant or any other entity against property of the debtor, or property dealt with by the Plan, except such liens as are expressly stated to survive confirmation. On the Effective Date, Debtors shall be restored to its full ownership and dominion over all property and assets owned by it, which property shall be properly dealt with by the Plan, pursuant to Bankruptcy Code § 1141(c).

**Formatted:** Line spacing: single

32

## ARTICLE XIV. MISCELLANEOUS PROVISIONS

The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

The rules of construction used in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan of Reorganization.

Except to the extent that the Bankruptcy Code or other Federal law is applicable, the rights, duties and obligations arising under this Plan of Reorganization shall be governed by, construed and enforced in accordance with the internal laws of the State of Minnesota.

The rights, duties and obligations of any person or entity named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person or entity.

The Remainder of this page is intentionally blank.  Execution page follows.

33

**JEFFERY CATES**

Dated: _____ _____

**CHRISTINE CICI-CATES**

Dated: _____ _____

Formatted: Font: 11 pt

Formatted: Font: 11 pt

34

<u>EXHIBIT A</u>

**POST CONFIRMATION PROJECTION OF DISPOSABLE INCOME FOR**

**THREE YEARS**

**(see attached)**

Formatted: Left: 1"

Formatted: Font: 11 pt

Formatted: Font: 11 pt

1

EXHIBIT B

**LIST OF EXECUTORY CONTRACTS**

> **Formatted:** Font: 11 pt

| **PARTY** | **TYPE** | **ASSUME / REJECT** |
|---|---|---|
| SJS FARMS | FARM LEASE (2021-22) | Assume |
| North Metro Company | Farm House Lease | Assume |

2

<u>EXHIBIT C</u>

**<u>LIQUIDATION ANALYSIS</u>**

**Personal Property**:

The Debtors have listed non-exempt personal property at $509,614.00 in their schedules. Of that amount the Cates have exempted approximately $30,000 under Minnesota exemption statutes for their personal belongings. Of the remaining $479,614.00, $325,000 is value attributed to JS Cates Construction, Inc. and JS Cates Companies, Inc. (which have now merged and converted to Chapter 7).  The Cates believe that the net liquidation value of their interest in the corporation is $0.00.  Of the remaining $154,614.00 in value, the Debtors own an interest in two apartment complexes valued at a total of $100,000 which the Cates believe they could receive if they had to sell those interests.  The other miscellaneous assets in the amount of $54,614.00 would likely have to be sold at a significant discount but for the sake of this liquidation analysis those items will be valued at the amounts listed in the Debtors' schedules.  That means that the total liquidation value of the personal assets of the Debtors is $154,614.00.

**Real Property**:

In addition, the Debtors have the five Cates Parcels, one of which (CRP No. 2, approximately 30.19 acres) is under contract to be sold to Oppidan Holdings, LLC for $~~4,501~~3,400,000. Debtors believe that with a closed sale to a developer

3

that the Real estate value for all parcels is in excess of the total Allowed Claims. Without a sale to a developer, in other words, if the Oppidan deal falls through and there are no other buyers of the Cates Real Estate for development that ~~he~~the Real Estate is worth approximately $4,600,000 per their schedules filed with the bankruptcy Court if given time to sell the property. The plan provides that, if the Oppidan sale or the sale of CRP No. 2 to another developer does not close ~~within a year after the~~by August 1, 2023 ~~or the Effective Date, whichever is later~~, the Debtors will sell as much of their real estate and non-exempt personal property as they need to pay their creditors in full. In the case of this type of liquidation sale, the unsecured creditors would be ~~behind unless~~ subordinate in priority to the approximate $2,~~200~~400,000 claim of ~~Cor Trust~~CorTrust Bank, which is secured by the Cates Parcels~~, a vehicle loan to Ally Financial in the amount of $12,157.94;~~; the priority claims in an amount of approximately $15,760.52~~;~~; unpaid administrative claims in the estimated amount of $~~200~~225,000, and the ~~Cates~~Debtors' entitlement to their $1,125,000.00 exemption under Minnesota Statutes § 510.01, et. ~~Sec.~~sec., for the 19~~-~~acre parcel that is homesteaded and not currently under contract to be sold. Therefore, the Plan itself provides for liquidation of assets at a higher price than could be obtained in a forced sale.

A forced sale of real estate is the alternative that creditors should weigh against the plan's proposal to sell enough property to pay the creditors in full or as much as possible by selling their real estate and non-exempt personal property in an

4

orderly sale.  The only reason that the Debtors foresee for not being able to sell their

property at a high enough value to pay their creditors in full would be if their

property, currently zoned as agricultural farmland, was not allowed to be rezoned

for other purposes. As of July 19, 2022, the initial vote of the Medina City Council

to allow commercial development of CRP No. 2 makes that rezoning likely but not

guaranteed. In addition, the rezoning of CRP No. 2 makes all the Cates property

more likely to be approved for development in the future and thus, at a properly

advertised auction, more valuable. Again, Debtors will sell as much of their

property under the terms of the Plan to pay off all creditors in full. If the price that

they receive for their non-exempt assets (the vast majority of which is tied up in

their real estate) is less than the total of all unclassified and classified Allowed

Claims the unsecured creditors will receive whatever net proceeds are available

after higher priority claims are paid.

The purpose of the liquidation analysis is to provide information as to what

the assets of the debtorDebtors could be sold as an alternative to accepting the plan.

Since the real estate that the Debtors own, as of the time of the filing of the

bankruptcy was zoned as agricultural farmland, for purposes of this liquidation

analysis, the Debtors assume that the property would be liquidated via foreclosure at

no more than tax value. The two most recent appraisals of the Debtors' land support

these valuations.

The tax value for the five parcels is as follows:

5

1.    2400 Cates Ranch Dr, Medina MN 55340 (PID 0311823220002) (Cates Homestead)

Acreage: 19.41

2021 Market Value: $1,079,300

2.    2590 Cates Ranch Dr, Medina MN 55340 (PID 0411823110002) (A/K/A "CRP 3" (under contract to sell to Oppidan Holdings))

Acreage: 36.92

2021 Market Value: $242,900

3.    2575 Cates Ranch Dr, Medina MN 55340 (PID 0411823140004) (A/K/A "CRP2" (under contract to sell to Oppidan Holdings))

Acreage: 30.18

2021 Market Value: $453,900

4.    80 Address Unassigned, Medina MN 00000 (PID 0411823140005) (largely wetland)

Acreage: 6.09

2021 Market Value: $10,600

5.    80 Address Unassigned, Medina MN 00000 (PID 0311823220004) (separate plat for Cates Ranch Drive)

Acreage: 3.67

2021 Market Value: $1,400

Total for all five parcels at liquidation: $1,788,100.00.

6

Personal Property Liquidated Value: $154,614.00.

**Total of Liquidation Value: $1,942,714.00**

Secured Debt:

Cor Trust: $2,~~200,000~~436.750.00

~~Ally Financial: $12,157.94~~

Priority Claims: $15,760.52

Unpaid Administrative Claims: $~~200~~225,000 (estimate)

Exemption allowance of Debtors for Real Estate: $1,125,000.00

**Net Available to Unsecured Creditors at forced liquidation:  $0.00.**

Total Scheduled unsecured debt: $524,833.10 (not including disputed

$1,341,486.07 claim of Medina 55 Holdings, LLC).

**Net Proceeds of sale of assets needed to pay non-disputed unsecured creditors**

**in full without interest:**

**$ 4,~~047,751.56~~327,343.82**

Disputed Claim of Medina 55:        $1,341,486.07

**Net Proceeds needed to pay unsecured creditors in full if Medina 55 claim is**

**allowed in full without interest:**

7

**$ 5,**389,237.63 668,829.89

Formatted: Font: 11 pt

<u>EXHIBIT D</u>

**<u>WATERFALL ANALYSIS</u>**

4874-4531-5405, v. 14891-7701-6594, v. 3

9

## UNSWORN CERTIFICATE OF SERVICE

Under penalty of perjury, I declare that on January 26, 2023, in connection with the matter below, the following document(s) were served on the party(s) listed below in the manners indicated:

Re:     In re Cates, Bankr. No. 21-40882

1. Notice of Motion and Motion to Deem Acceptance of Modified Plan;
2. Memorandum of Law in Support of Motion to Deem Acceptance of Modified Plan;
3. Verification of Jeffrey Cates;
4. Exhibit A to the Motion;
5. This Unsworn Certificate of Service; and
6. The proposed Order granting the requested relief.
7. The Fourth Modified Plan of Reorganization [ECF 259].

Through ECF Service on those Registered Filers who are entitled to electronic service and upon all other parties in interest through the use of certificateofservice.com who shall file their own certificate of service.

*/s/ Alexander J. Beeby*
Alexander J. Beeby

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re Jeffrey Cates and Christine Cici-Cates                Case No. 21-40882 WJF

Debtor(s).                                          Chapter 11, Sub. V

## ORDER

This matter came before the Court on the Motion to Deem Acceptance of Modified Plan of Debtors.

Based on the Motion and the record in this matter, the Court finds that Debtors' Fourth Modified Plan of Reorganization dated January 26, 2023 [ECF 259], does not adversely change the treatment of the claim of any creditor or the interest of any equity holder who has not accepted the modification in writing and that grounds exist to warrant relief. Accordingly,

IT IS ORDERED:

> The Fourth Modified Plan of Reorganization is deemed accepted by all creditors and equity security holders who have accepted the July 21, 2022, Third Modified Plan of Reorganization.

Dated:

_____
William J. Fisher
United States Bankruptcy Judge