# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Jeffrey Cates and Christine Cici-Cates,

      Debtors.

Bankruptcy Case No. 21-40882
Chapter 11

## NOTICE OF MOTION AND MOTION FOR EXPEDITED HEARING TO EXCLUDE WITNESSES AND EVIDENCE

TO:    The parties in interest as defined in Local Rule 9013-3(a)(1).

1.    Media 55, LLC ("Media 55"), through its undersigned attorneys, moves the Court for the relief requested below and gives notice of hearing.

2.    The Court will hold a hearing on this motion at **1:30 p.m. on Wednesday, March 15, 2023**. The hearing will be conducted telephonically. Please dial 1-888-684-8852 to call in for the hearing. When prompted, enter access code: 5988550. When prompted, enter security code: 0428. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

3.    Because expedited relief is requested, any response to this motion must be filed and served not later than two hours before the scheduled time for the hearing, unless otherwise authorized by the Court.  Local Rule 9006-1(e).  **Unless a response opposing the motion is timely filed, the Court may grant the Motion without a hearing.**

4.    This Court has jurisdiction over this motion under 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing this case was filed on May 17, 2021 (the "Petition Date").  The case is now pending before this Court.

{00599784 }

5.      This motion arises under 11 U.S.C. § 105.  This motion is filed under Fed. R. Bankr.

P. 9014 and Local Rules 9013-1 through 9013-3, and 9006-1(e).

## **FACTUAL BACKGROUND**

6.      Medina 55 filed Claim No. 20 and the Debtors have objected to such Claim [Dkt.

No. 196].

7.      This matter is now set for an evidentiary hearing on March 22, 2023, at 9:00 a.m.

8.      Pursuant to the Court's December 6, 2022, Second Amended Order Setting

Evidentiary Hearing and Extending Deadlines [Dkt. No. 239], the parties to this dispute were to,

among other things, "complete discovery" by January 16, 2023, exchange and file "final witness

lists" by February 20, 2023, and be ready to present their cases at the then scheduled hearing on

February 23, 2023. The parties complied with that Order: completing discovery, exchanging final

witness lists, and were ready to present their case at the then scheduled hearing.

9.      With respect to discovery, there were no initial disclosures required or ordered (*See*

Fed. R. Bankr. P. 9014(c)), so the parties included requests for the disclosure and identification of

potential witnesses through interrogatories. (*See* **Exhibit A** (Medina 55's Oct. 19, 2022, Answers

to Debtors' Interrogatories) at Interrog. Nos. 2 and 13; and **Exhibit B** (Debtors' November 7, 2022,

Answers to Medina 55's Interrogatories) at Interrog. Nos. 2 and 5).

10.     In Medina 55's Answers to Debtors' initial Interrogatories, Medina 55 listed 15

individuals having personal knowledge of the facts in this matter and whom it may call as a

witness.  (*See* **Exhibit A**, at Interrog. Nos. 2 and 13).  None of the individuals identified included

anyone associated with Oppidan Holdings, LLC ("Oppidan"). (*Id.*).

11.     Similarly, in Debtors' Answers to Medina 55's Interrogatories, Debtors listed 4 potential witnesses with knowledge of the facts in this matter whom it may call as witnesses, none of which included anyone from Oppidan. (*See* **Exhibit B** at Interrog. No. 5).

12.     Pursuant to Fed. R. Civ. P. 26(e), as incorporated through Fed. R. Bankr. P. 7026 and 9014, the parties have a continuing duty to supplement their discovery responses. Accordingly, as discovery progressed Medina 55 supplemented its discovery responses and productions several times, including two supplemented Answers with respect to its identified witnesses and the scope of their anticipated testimony. (*See* **Exhibit C**, Medina 55's Supplemented Answers to Interrogatories dated December 7, 2022, and January 16, 2023).   None of these Supplemented Answers included Oppidan witnesses, and, notably, the December 7, 2022, Supplemented Answer provided notice to Debtors that one of Medina 55's witnesses, Jon Yanta, would be providing expert testimony as to the valuation of the properties. (*Id.*).

13.     Medina 55 also provided a separate expert disclosure notice to Debtors on December 9, 2022, with a copy of a Broker Opinion of Value.  (*See* **Exhibit D**).  Debtors had the opportunity to depose Mr. Yanta well before the January 16, 2023, discovery deadline, but elected not to do so.

14.     Debtors also never supplemented their Answers to Medina's 55 Interrogatories or gave any indication that they planned to call witnesses from Oppidan.  Nor was there any indication that they would be providing any expert testimony at the evidentiary hearing.

15.     Prior to Medina 55's expert disclosure notice for Mr. Yanta, Medina 55 planned to use Oppidan's valuation documents to support a fair market value of the property for September 1, 2022, the date of the Purchase Agreement between Oppidan and Debtors (the "Oppidan Contract") – which Medina 55 contends is the date its Purchase Agreement with Debtors was

breached.  Accordingly, on September 28, 2022,  Medina 55 served a subpoena duces tecum on Oppidan, requesting, *inter alia*,  "all documents and communications" in Oppidan's possession or control relating to or supporting its "valuation of the property on or before September 1, 2022," as well as for "any time after September 1, 2022." (*See* **Exhibit E**) (Subpoena on Oppidan).

16.     Oppidan failed to timely respond to the subpoena and, when it eventually did under threat of a motion to compel, it produced just two documents: a copy of the Oppidan Contract and an 11-page internal pro forma for a potential development of the properties.  The 11-page pro forma, which is marked confidential, did not include any property valuations and was effectively non-responsive to Medina 55's subpoena.  Medina 55 elected not to bring a motion to compel against Oppidan, as there was nothing to suggest in Debtors discovery responses or Oppidan's production that Oppidan would be testifying at the hearing or was capable of providing expert evidence as to the valuation of the properties.  Medina 55 instead chose to use Mr. Yanta to provide an expert opinion as to the fair market value of the property for September 2021.

17.     Medina 55 first learned that Debtors planned to call a witness from Oppidan when the parties exchanged final witness lists on February 20, 2023, just three days prior to the then scheduled evidentiary hearing on February 23, 2023.  According to Debtors' witness list, Debtors plan to call one of two Oppidan witnesses to testify regarding (1) Oppidan's due diligence in performing under the Oppidan Contract, (2) the history Oppidan's interactions with the City of Medina, (3) the changes to the Oppidan Contract, and (4) an opinion as to the value of properties (which requires expert testimony). [Dkt. No. 284].  None of which was made known to Medina 55 beforehand.

18.     Prior to the scheduled evidentiary hearing, Medina 55 filed an expedited motion for relief seeking to allow its main witness and company representative, Robert Atkinson, to appear remotely via Zoom due to personal issues [Dkt. No. 278], which was heard on February 21, 2023.

19.     At that hearing, the Court determined the issue was moot because the evidentiary hearing needed to be extended due to inclement weather.

20.     Following that hearing, the parties conferred with their witnesses and the Court's clerk in scheduling a new evidentiary hearing date.  Debtors' attorney indicated to the Court that the proposed March 22-23, 2023, dates would work for Debtors.  Medina 55 indicated that the March 22, 2023, date would work best for its witnesses. (*See* **Exhibit F**, attached hereto) (email chain with court clerk and between parties).

21.     On February 27, 2023, the Court issued its Third Amended Order Setting Evidentiary Hearing, setting the hearing to begin on Wednesday, March 22, 2023, at 9:00 a.m. [Dkt. No. 288].

22.     With the additional time afforded to the parties, and in lieu of raising an objection at the evidentiary hearing and delaying those proceedings, the undersigned counsel for Medina 55 planned to file this motion in limine to exclude Debtors' proposed witnesses for Oppidan, as Medina 55 was not given any advance notice of those witnesses or that they would be called to testify as an expert, and for the reasons further discussed herein and in Medina 55' accompanying Memorandum.

23.     On February 27, 2023, Debtors' counsel informed the undersigned that its proposed Oppidan witnesses would not be available for the now scheduled March 22, 2023, evidentiary hearing, and requested a date for scheduling a trial deposition for one of the proposed Oppidan witnesses. (*See* **Exhibit F**).

24.     In response, the undersigned informed Debtors' counsel of its plan to bring a motion in limine to exclude the Oppidan witnesses for the reasons addressed herein, but would agree to forego that motion (without waiving any objections that Medina 55 may have with regard to their testimony) and accommodate the Debtors by agreeing to (subject to the Court's approval) the requested trial deposition or have Oppidan appear remotely, if Debtors extended the same curtesy for Mr. Atkinson – agree to his appearance remotely or to use his deposition at the evidentiary hearing.  (*Id*.).

25.     Debtors' counsel would not agree to this accommodation and stated that it would go ahead with its plan to schedule a trial deposition for one of its Oppidan witnesses.  (*Id*.).

26.     The undersigned responded that because the discovery deadline had passed, it would not agree to attend the proposed trial deposition. (*Id.*).

27.     Medina 55 now brings this Motion to Exclude the Oppidan Witnesses in this matter because, *inter alia*, Debtors failed to identify them as potential witnesses in their discovery responses, prejudicing Medina 55's ability to conduct additional discovery relating to the Oppidan witnesses' anticipated testimony, and its ability adequately prepare for the evidentiary hearing. Additionally, except for the witnesses' potential expert testimony regarding the property valuations, which would be highly prejudicial to Medina 55, their anticipated testimony regarding Oppidan's due diligence efforts, changes to the Oppidan Contract, and interactions with the City of Medina are not relevant to any facts in dispute, and would only serve confuse the issues at hand and result in a waste of time and judicial resources.

28.     Expedited relief is warranted for the hearing in this case because of the late notice of  undisclosed witnesses by Debtors and the timing of the evidentiary hearing.

## MOTION

29.     Pursuant to Fed. R. Civ. P. 26(e), as incorporated through Fed. R. Bankr. P. 7026

and 9014, the parties have a continuing duty to supplement their discovery responses.  Discovery

closed on January 16, 2023, and Debtors did not identify the Oppidan witnesses in their discovery

responses and never supplemented their responses to include those witnesses.  Based on the

discovery that was produced, Medina 55 had no reason to expect that the Oppidan witnesses would

be called to testify, especially with respect to any expert testimony regarding the property

valuations.

30.     Pursuant to Fed. R. Civ. P. 37(c)(1), as incorporated through Fed. R. Bankr. P. 7037

and 9014, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)

**or (e)**, the party is not allowed to use that information or witness to supply evidence on a motion,

at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. (emphasis

added); *See also* 27 C.J.S. Discovery, *Sanction for failure to disclose witnesses in answers to

interrogatories* § 119 (West 2023) (compiling cases).

31.     As explained in Medina 55's Memorandum of law, Debtors' failure is not

substantially justifiable or harmless because Medina 55 did not have the opportunity to adequately

interrogate the Oppidan witnesses as to their anticipated testimony through discovery, especially

with regard to any expert testimony on property valuations, and this prejudice cannot be cured

without causing further prejudice by way of undue delay and expense. *See, e.g., Watkins Inc. v.

McCormick & Co., Inc.*, No. 15-CV-2688 (DSD/ECW), 2023 WL 1777474 (D. Minn. Feb. 6,

2023) (applying Rule 37(c)(1) on a pre-trial motion to exclude witnesses due to the plaintiff's

failure to identify the witnesses in its discovery responses and failure to timely supplement those

responses to include the witnesses).

32.     In addition to being prejudicial, the majority of the Oppidan witnesses' anticipated testimony will be irrelevant, i.e., their testimony regarding Oppidan's due diligence efforts, contract changes, and discussions with the City.  *See* Fed. R. Evid. 401 (evidence that is not "of consequence in determining the action" is irrelevant).

33.     Additionally, under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Excluding witnesses whose anticipated testimony is irrelevant and prejudicial under Rules 401 and 403 is proper on a motion in limine, even in a bench trial, in order to narrow the issues at trial and eliminate unnecessary interruptions.  *See Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 648 (8th Cir. 2009) (upholding trial court's granting of motion in limine prior to bench trial excluding proffered witness who lacked personal knowledge of facts relevant to the claims at issue).

34.     This is a breach of contract case between Medina 55 and Debtors.  The disputed issues are whether Debtors breached their purchase agreement with Medina 55, or whether Medina 55 anticipatorily breached that purchase agreement, and the amount of damages. The Oppidan witnesses' purported testimony concerning Oppidan's due diligence efforts on its contract with Debtors, its changes to that contract, and its discussions with the City of Medina are wholly irrelevant to the issues of who breach the purchase agreement between Debtors and Medina 55, and the damages resulting therefrom.  The Oppidan witnesses' testimony, therefore, is irrelevant and would only serve to "confuse the issues," and cause "undue delay" and a "waste of time" for the Court and the parties.  Fed. R. Evid. 401 and 403.

35.     Further, because the Debtors previously testified before this Court in its September 8, 2021, verified motion to approve the sale of the properties to Oppidan, that the Oppidan Contract price of $10,230.000 was "fair market value," [Dkt. No. 46, at ¶ 21], they should be precluded from presenting any evidence that contradicts this valuation under the doctrine of judicial estoppel. *See generally, Hossaini v. W. Missouri Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation.") (collecting cases).  Based on the Debtors representation of fair market value in its verified motion, the Court made a finding of fact that the fair market value of the property was the $10,230,000 price in its November 9, 2021, Order Approving the Sale of the properties to Oppidan. [Dkt. No. 103].  Under principals of equity, the Debtors should not now be able to call the Oppidan witnesses to provide testimony contradicting its prior fair market valuation of the properties.

36.     Lastly, the parties stipulated to the admission of evidence showing that Oppidan is or was funding the Debtors' litigation in this matter and therefore they have a pecuniary interest in this litigation that calls into question any such witnesses credibility and may also explain why Debtors excluded them from their discovery responses.  (*See* **Exhibit G**) (Joint Exhibit 134, discussing Oppidan's funding of Debtors' litigation).

37.     For the foregoing reasons, the Oppidan witnesses should be excluded from being called at the evidentiary hearing.

**WHEREFORE,** Media 55 respectfully requests that the Court enter an order approving the Motion and granting such other and further relief as the Court deems appropriate.

Dated: March 6, 2023

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A PROFESSIONAL ASSOCIATION

By: /e/ Will R. Tansey
      Will R. Tansey (#323056)
      Ted C. Wagor (#0396347)

150 South Fifth Street, Suite 3450
Minneapolis, MN  55402
(612) 332-8511 - Telephone
(612) 332-8302 – Facsimile

ATTORNEYS FOR MEDINA 55, LLC

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Jeffrey Cates and Christine Cici-Cates,

Debtors.

Case No. 21-40882

Chapter 11

---

### CLAIMANT'S ANSWERS TO DEBTORS' INTERROGATORIES (SET 1)

---

TO:   Debtors Jeffrey Cates and Christine Cici-Cates, c/o its attorneys, Kenneth C. Edstrom and Sapientia Law Group, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402.

Claimant Medina 55, LLC, a Minnesota limited liability company ("Claimant"), provides the following Answers to Debtors Jeffrey Cates' and Christine Cici-Cates' ("Debtors'") Interrogatories to Claimant dated September 19, 2022 (the "Discovery Requests"):

### <u>GENERAL OBJECTIONS AND RESERVATIONS</u>

These general objections are incorporated into every answer to the below Discovery Requests as though fully set forth therein (the "General Objections").

1.      Discovery is ongoing and Claimant's answers to the Discovery Requests are based upon its best present knowledge as to the existence, location, and contents of the files that it maintains.   While Claimant has used its best efforts to identify and locate information responsive to the Discovery Requests, and bases its answers thereon, Claimant reserves the right to supplement its answers if and when additional information is located by it.

2.      Claimant objects to the Discovery Requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine, joint defense or common enterprise privilege, or other applicable privileges, defenses or immunities.

3.      Claimant objects to the Discovery Requests to the extent they purport to require it to provide information already in Debtors' possession, custody, or control, or which is readily available to Debtor from another more convenient or less expensive source.

4.      Debtor objects to the Discovery Requests to the extent they seek discovery that is not proportional to the needs of the case, considering the burden or expense of the proposed discovery weighed against its likely benefit, the amounts in controversy, the parties' resources, the importance of the issues in the case, and the importance of the proposed discovery in resolving those issues.

5.      Claimant objects to the Discovery Requests to the extent they are overly broad, unduly burdensome, or seek information that is neither relevant or likely to lead to the production of admissible evidence.

6.      Claimant objects to the Instructions and Definitions in the Requested Discovery to the extent that they seek to impose duties and obligations upon Claimant that exceed those imposed by the Federal Rules of Civil Procedure or the Federal Bankruptcy Rules of Civil Procedure.

Subject to the above General Objections, including any specific objections asserted herein (the "Objections"), and without waiving the same, Claimant provides the following answers to Debtors' Discovery Requests as follows:

## ANSWERS TO INTERROGATORIES

INTERROGATORY NO. 1:   Identify all persons that provided any information that was received, reviewed, and/or relied upon in responding to these Interrogatories as well as responding to Debtors' Request for Production of Documents and detail the specific information provided by each person.

**ANSWER**:   Subject to the Objections, and without waiving same: Robert Atkinson, with the assistance of counsel for Claimant, for all Discovery Requests.

<u>INTERROGATORY NO. 2</u>:  Identify all persons with personal knowledge of any and all facts underlying any and all claims or defenses in this action, including without limitation any agents or representatives that You engaged to perform Your due diligence.

**ANSWER**:  Subject to the Objections, and without waiving same:

| Name | Contact | Personal Knowledge |
|------|---------|--------------------|
| Robert Atkinson | May only be contacted through undersigned counsel. | President of Claimant with knowledge of, *inter alia*, all matters related to the purchase agreement and negotiations of same; Claimants due diligence efforts; and amounts in dispute. |
| Rose Lorsung | rose@recreateluxuryhomes.com 952-457-7641 | Owner of ReCreate Real Estate and Pulse Land Group with knowledge of, *inter alia*, Claimant's due diligence efforts, including those related to entitlements, development plans for the property, negotiations for extensions of purchase agreement, and part of the amount in dispute. |
| Roger Christensen | Christe5257@gmail.com | Briefly worked as consultant with Claimant during initial negotiations for purchase of Property and may have knowledge regarding those negotiations. |
| Jeffrey Cates | Debtor | Personal knowledge known to Debtors. |
| Jonathan Yanta | Jon.Yanta@cushwake.com 952-820-8734 | Broker with Cushman & Wakefield with knowledge of development plans, marketing of property, potential investors/end-users for property, and amounts in dispute. |
| Ted Bigos | May only be contacted through undersigned counsel | Chief Manager of Bigos-Bren Road, LLC, a Member of Claimant, with knowledge of Claimant's ability to perform under the purchase agreement. |
| Dave Nash | Alliant Engineering dnash@alliant-inc.com 612-767-9327 | Project Mgr. with Alliant Engineering, may have knowledge regarding Claimant's initial plans to obtain city approvals for comprehensive plan amendment and rezoning of property. |
| Mike Brandt | Kimley-Horn mike.brandt@kimley-horn.com 651-643-0428 | Engineer with Kimley-Horn, with knowledge of Claimant's due diligence efforts related to obtaining city approvals and development plans |

| | | for the property. |
|---|---|---|
| Dusty Finke | City of Medina
dusty.finke@medinamn.gov | Planning Director for city with knowledge of Claimant's development plans for property, documents submitted to city, and history of property. |
| Patrick Luithly | Gibraltar Title
Patrick@GibraltarTitle.com
952-392-7156 | Title Examiner at Gibraltar Title, escrow agent, with knowledge of purchase agreement and Claimant's and Debtors' request for return of Earnest Money. |
| David Bade | Westwood, PS
david.bade@westwoodps.com
652-697-5724 | Director and PE for Westwood, PS, with knowledge of Claimant's wetland delineation efforts for development of the property. |
| RJ Burgess | Rjburgess01@live.com
612-910-4702 | Neighbor of Debtors with knowledge of Claimant's efforts to acquire additional land to include as part of larger development with Debtors' property. |
| Brad Seymour | Brad.Seymour@seacole.com | Associated with one of Debtors' neighbors with knowledge of Claimant's efforts to acquire additional land to include as part of larger development. |
| Craig Greenberg | Huffman, Usem, Crawford, Greenberg & Smith, P.A.,
Craig.greenberg@huscglaw.com
763-545-2720 | Attorney for Claimant that may have non-privileged information regarding, *inter alia*, negotiations for additional property to acquire for larger development. |
| Michelle Culligan | Culligan Legal & Business Counsel, PLLC
michelle@culligancounsel.com
612-308-0874 | Attorney for Claimant that may have non-privileged information regarding, *inter alia*, negotiations for additional property to acquire for larger development and negotiations of Amended and Restated Purchase Agreement. |

To extent there are other individuals with personal knowledge, additional contact information, or other information not listed above, Claimant will produce non-privileged email records from which the answer to this Discovery Request may be derived.  Discovery is ongoing.

INTERROGATORY NO. 3:  Identify and describe your communications with anyone, including without limitation Jeffrey Cates, Catherine Cici-Cates, or any of Debtors' employees, attorneys, agents, relatives, or friends, relating in any way to your Claim. Your description should include the approximate date of the communication; whether the communication was in person, by email or correspondence, by phone conversation, or by any other means; the individuals involved in the communication; the substance of the communication, including the identification of any documentation exchanged between you and the other person as part of the communication; and whether you took contemporaneous notes of the communication.

**ANSWER**:  Claimant objects to the extent this Discovery Request seeks privileged information or work product.  Subject to the Objections, and without waiving same, Claimant will produce non-privileged email records from which the answer to this Discovery Request may be derived. Discovery is ongoing.

INTERROGATORY NO. 4:  Identify and describe all inquiries, research, investigative efforts, and due diligence You performed regarding the Property that is the subject of Your Claim in the above-captioned bankruptcy proceeding, including without limitation any of the obligations identified in paragraph 16 of Your Response to Debtors' Objection.

**ANSWER**:  Claimant objects to this Discovery Request to the extent it seeks privileged information or work product, or seeks information about or from documents that are within Debtors' possession or control. Subject to the Objections, and without waiving same, Claimant will produce non-privileged documents, including email communications and referenced attachments that speak for themselves and from which the answer to this interrogatory may be derived.  Discovery is ongoing.

INTERROGATORY NO. 5:  Explain in detail the basis for the decision to ask Debtors to amend the January 31, 2019 purchase agreement between You and Debtors, resulting in the March 25, 2019 Amended Purchase Agreement, including without limitation the facts supporting the factual allegations in paragraph 11 of Your Response to Debtors' Objection that "it became clear to the parties that additional time would be needed to complete Buyer's due diligence obligations and put together the desired packaged deal to obtain the required City Approvals."

**ANSWER**:  Claimant objects to this Discovery Request to the extent it seeks information about or from documents that are within Debtors' possession or control.  Claimant further objects that the referenced amendment to the purchase agreement speaks for itself as to the intent and

understanding of the parties. Subject to the Objections, and without waiving same, Claimant will

produce non-privileged email communications from which the answer to this Discovery Request

may be derived.  Specifically, in email communications with Debtor Jeffrey Cates from February

2019, Mr. Cates agreed with Claimant's plan and strategy for presenting a formal application to

the city for an amendment to the city's comprehensive plan and zoning classification and the

expected process for same, which would require additional time and changes to the purchase

agreement.  Discovery is ongoing.

INTERROGATORY NO. 6:  Explain in detail the basis for the decision to amend the March 25,
2019 Amended Purchase Agreement between You and Debtors, resulting in the October 28,
2019 "First Addendum [A/K/A First Amendment]," including without limitation any facts
supporting the allegations in paragraph 12 of Your Response to Debtors' Objection that the
amendment was necessary for the same reasons as the March 25, 2019 amendment.

**ANSWER**:  Claimant objects to this Discovery Request to the extent it seeks information about

or from documents that are within Debtors' possession or control.  Claimant further objects that

the referenced amendment to the purchase agreement speaks for itself as to the intent and

understanding of the parties. Subject to the Objections, and without waiving same, Claimant will

produce non-privileged email communications from which the answer to this Discovery Request

may be derived. Claimant further answers that at the time in question, Debtors knew that

Claimant had submitted an application to the city on or about May13, 2019, for a comprehensive

plan amendment and zoning changes for the property, which was later returned by the city as

incomplete.  Debtors knew that additional information and work would be needed to resubmit

the application with the city, and Debtors agreed to give Claimant more time to do so. Discovery

is ongoing.

INTERROGATORY NO. 7:  Explain in detail the basis for the decision to amend the October
28, 2019 "First Addendum [A/K/A First Amendment" between You and Debtors, resulting in the
May 8, 2020 "Second Addendum [A/K/A Second Amendment]," including without limitation
any facts supporting the allegation in paragraph 13 of Your Response to Debtors' Objection that

"the parties acknowledged that additional time would be needed for Buyer to meet its contingency obligations under the Purchase Agreement."

**ANSWER**:  Claimant objects to this Discovery Request to the extent it seeks information about or from documents that are within Debtors' possession or control.  Claimant further objects that the referenced amendment to the purchase agreement speaks for itself as to the intent and understanding of the parties. Subject to the Objections, and without waiving same, Claimant will produce non-privileged email communications from which the answer to this Discovery Request may be derived.  Claimant further answers that at the time in question, Debtors knew that additional due diligence work, including preliminary engineering work and designs, were needed to support another application to the city for a comprehensive plan amendment and zoning change for the property, which had yet to be completed. Additionally, in emails to Debtor in April 2020, Debtors were informed that due to the covid-19 pandemic, everything was on hold. Understanding these issues, Debtors agreed to give Claimant more time to complete its due diligence and contingency obligations under the purchase agreement. Discovery is ongoing.

INTERROGATORY NO. 8:  Explain in detail the basis for the decision to amend the May 8, 2020 "Second Addendum [A/K/A Second Amendment]," between You and Debtors, resulting in the August 3, 2020 "Third Addendum [A/K/A Third Amendment]," including without limitation any facts supporting the allegations in paragraph 14 of Your Response to Debtors' Objection.

**ANSWER**:  Claimant objects to this Discovery Request to the extent it seeks information about or from documents that are within Debtors' possession or control.  Claimant further objects that the referenced amendment to the purchase agreement speaks for itself as to the intent and understanding of the parties. Subject to the Objections, and without waiving same, Claimant will produce non-privileged email communications from which the answer to this Discovery Request may be derived. Claimant further answers and specifically points to email communications with Debtor Jeffrey Cates from July and August 2020, where Claimant and Rose Lorsung advise Mr.

Cates of a recent negative traffic study and the need to re-strategize their approach with the city

to avoid large concessions as part of obtaining the city's approval for the development. Debtors

agreed to this approach and the referenced amendment to align the purchase agreement with the

additional time Claimant needed to get the needed city approvals. Discovery is ongoing.

INTERROGATORY NO. 9:  Describe in detail any and all discussions, negotiations, or other communications regarding or relating in any way to changing, renegotiating, altering, or at all concerning the August 3, 2020 "Third Addendum [A/K/A Third Amendment"] as referenced in paragraph 18 of Your Response to Debtors' Objection, including without limitation the dates, times, and contents of any communications and the participants in any discussions or communications.

**ANSWER**:  Claimant objects to this Discovery Request to the extent it seeks information about

or from documents that are within Debtors' possession or control.  Claimant further objects that

the referenced amendment to the purchase agreement speaks for itself as to the intent and

understanding of the parties. Subject to the Objections, and without waiving same, Claimant will

produce non-privileged email communications from which the answer to this Discovery Request

may be derived. Claimant further answers that based on user interest in the development, and as

evidence in the produced documents, in late 2019 and throughout much of 2020, Claimant

sought to acquire additional properties to increase the size and scope of the development. In

January 2021, Claimant and Rose Lorsung reached out to Mr. Cates to inquire whether he would

be agreeable to selling his homestead parcel and another triangular parcel to be included in the

larger development and requested another extension of the due diligence and contingency

deadlines to accommodate the larger scope of the development. Additionally, Mr. Cates

subsequently requested Claimant to find ways to restructure the deal so that he could obtain an

immediate cash payment, even offering Claimant a reduced price if the same could be obtained,

which served as further bases for amending the Purchase Agreement. Discovery is ongoing.

<u>INTERROGATORY NO. 10</u>:  Identify in detail any developer, investor, or other individual You contacted, approached, negotiated with, or otherwise communicated with regarding the Property as referenced throughout Your Response to Debtors' Objection.

**ANSWER**:  Subject to the Objections, and without waiving same, Claimant will produce non-privileged email communications from which the answer to this Discovery Request may be derived.  Claimant further answers that it believes it reached out to or otherwise contracted the following potential investors, brokers, or lenders regarding the Property: John Davis, Mike Breese, Samuel Shin (a group of investors); RJ Burgess (investor and neighbor to Debtors); Mark Saliterman (investor/lender); Nick Carmichael (investor); Dave Pokorney (investor); Brad Seymour (neighbor/investor); Brandon Karow (investor); John Quinlivan (investor); Buffalo Lake Partners (investor); Dan Salzer (investor); Ted Bigos (investor); Ra'eesa Motala (broker); Brian Netz (broker); Phill Harry (broker); Mike Leuer (investor), Jeff Minea (broker), and various Cushman & Wakefield brokers. Discovery is ongoing.

<u>INTERROGATORY NO. 11</u>:  Identify in detail any authorities, officials, or other individuals associated with the City of Medina, Minnesota that You contacted, corresponded with, or otherwise communicated with regarding the Property, including without limitation communications or other documents related to Your due diligence obligations under the Purchase Agreement.

**ANSWER**:  Subject to the Objections, and without waiving same: Dusty Finke (information provided above).  Discovery is ongoing.

<u>INTERROGATORY NO. 12</u>:  Identify in detail any authorities, officials, or other individuals associated with Hennepin County, Minnesota that You contacted, corresponded with, or otherwise communicated with regarding the Property, including without limitation communications or other documents related to Your due diligence obligations under the Purchase Agreement.

**ANSWER**:  Subject to the Objections, and without waiving same: None.  Discovery is ongoing.

<u>INTERROGATORY NO. 13</u>:  Identify in detail any individual that You might call as a witness at any hearing in the above-captioned matter, including that individual's name, address, contact information, and what knowledge that person might be called to testify regarding.

**ANSWER**:  Subject to the Objections, and without waiving same, Claimant may call anyone identified and listed above in its answer to Debtors' Interrogatory No. 2.

INTERROGATORY NO. 14:  Identify the basis for the factual assertion contained in paragraph 15 of Your Response to Debtors' Objection that "[i]t was abundantly clear and made known to Debtors that this process required a significant time investment and Mr. Atkinsons's efforts were frustrated by the lingering effects of the Covid-19 pandemic."

**ANSWER**:  Subject to the Objections, and without waiving same, Claimant will produce non-privileged documents, including email communications and referenced attachments that speak for themselves and from which the answer to this interrogatory may be derived.

INTERROGATORY NO. 15:  Identify the basis for the factual assertion contained in paragraph 16 of Your Response to Debtors' Objection that You "acted prudently and in good faith to satisfy the Buyer's obligations under the Purchase Agreement[.]"

**ANSWER**:  Subject to the Objections, and without waiving same, Claimant will produce non-privileged documents, including email communications and referenced attachments that speak for themselves and from which the answer to this interrogatory may be derived.

INTERROGATORY NO. 16:  Identify the basis for the factual assertions contained in paragraph 17 of Your Response to Debtors' Objection.

**ANSWER**:  Subject to the Objections, and without waiving same, Claimant will produce non-privileged documents, including email communications and referenced attachments that speak for themselves and from which the answer to this interrogatory may be derived.

INTERROGATORY NO. 17:  Explain in detail any and all communications You had with the title company and/or any of its representatives, agents or employees regarding, concerning, or otherwise related to Your $100,000 earnest money under the Purchase Agreement.

**ANSWER**:  Subject to the Objections, and without waiving same, Claimant will produce non-privileged documents, including email communications and referenced attachments that speak for themselves and from which the answer to this interrogatory may be derived.

INTERROGATORY NO. 18:  Identify the relationship between You and Bigos Management, Inc.

**ANSWER**:   None.   Bigos Management, Inc. is the property management company owned by

Ted Bigos, and has no relationship to Claimant.

**AS TO OBJECTIONS:**

Dated: October 19, 2022

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A Professional Association

By:_____/s/ *Ted C. Wagor*_____
   Will R. Tansey (#323056)
   Ted C. Wagor (#0396347)
150 South Fifth Street, Suite 3450
Minneapolis, Minnesota 55402
Telephone: (612) 332-8511
wrtansey@ravichmeyer.com
tcwagor@ravichmeyer.com

*ATTORNEYS FOR CLAIMANT*

**AS TO ANSWERS**:

I, Robert Atkinson, as Manager of Medina 55, LLC, declare as follows: I have read the foregoing interrogatory answers and I am familiar with their contents.  Based on my review of all of my files, emails, books and records maintained on behalf of Medina 55, LLC, and its predecessors-in-interest of which I am also associated with, I affirm that these interrogatory answers are true and correct to my knowledge. I declare under penalty of perjury under the laws of the United States of America that everything I have stated in this document is true and correct.

Executed: October 19, 2022.

Hennepin County, Minnesota

_____
Robert Atkinson

**EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re: Jeffrey Cates and Christine Cici-Cates                    Bky File No. 21-40882
                                                                                              Chapter 11
Debtors.

## DEBTORS' RESPONSES TO CLAIMANT MEDINA 55'S INTERROGATORIES

TO:    Claimant Medina 55 and its attorneys Will R. Tansey & Ted C. Wagor, Ravich Meyer
       Kirkman McGrath Nauman & Tansey, 150 South Fifth Street, Suite 3450, Minneapolis,
       MN 55402:

       Debtors, for their Responses to Claimant Medina 55's Request for Interrogatories, states

and alleges as follows:

### GENERAL OBJECTIONS

Each of these General Objections is incorporated into the specific answers below to each

numbered Interrogatory as if fully set forth therein:

1.    Defendants object generally to these Interrogatories as being vague, ambiguous,

overbroad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to

the discovery of admissible evidence.

2.    Defendants object generally to the Interrogatories to the extent they seek

information, or purport to impose duties or obligations, beyond the requirements of The Federal

Rules of Bankruptcy Procedure, including any applicable Federal Rules of Civil Procedure and

any applicable Local Bankruptcy Rule. Defendants object generally to these Interrogatories to

the extent they seek information outside the knowledge of Defendants, and which are more

appropriately directed to third-parties.

3.    Defendants object generally to the Interrogatories to the extent they seek

1

information protected from disclosure under the attorney-client privilege or work-product

doctrine.

Defendants further state that they are continuing their own discovery and investigation of

the subject matter of this litigation, and they reserve the right to rely on, and/or present at trial or

other hearing on this matter, any facts or documents that may be subsequently learned or

obtained as a result of such ongoing discovery and investigation, or which may be adduced at

trial.  In accordance with The Federal Rules of Bankruptcy Procedure, including any applicable

Federal Rules of Civil Procedure and any applicable Local Bankruptcy Rule, Defendants will

supplement these Answers if additional responsive information is discovered in the course of this

matter.

Defendants further state that they reserve the right to object to the admissibility at trial or

use at any other hearing or proceeding of any of these Answers or of any documents identified

by these Answers.

## <u>ANSWERS TO INTERROGATORIES</u>

**INTERROGATORY NO. 1:** Identify all persons that provided any information that was
received, reviewed, and/or relied upon in responding to these Interrogatories as well as
responding to Claimant's contemporaneously served Request for Production of Documents and
Request for Admissions, and detail the specific information provided by each person.

**ANSWER:**

Debtors.

**INTERROGATORY NO. 2:** Identify all persons with personal knowledge of any and all facts
underlying any and all allegations, claims or defenses in this action, including, but not limited to,
Your allegations in the Debtors' Objection that Claimant committed fraud, acted in bad faith,
failed to comply with Minn. Stat. § 500.24, beached and/or repudiated the Purchase Agreement,
was unable to perform under the Purchase Agreement, and/or stated the deal was off if Debtors
did not agree to enter into the Restated Purchase Agreement.

**ANSWER:**

**In general, see all emails provided in response to Document Requests which identify those individuals involved with these topics.**

**INTERROGATORY NO. 3:** Identify and describe any and all efforts made by or known to You relating to satisfaction of the contingencies and due diligence obligations contained in the Purchase Agreement, Oppidan Contract and New Oppidan Contract, including, but not limited to, obtaining any approvals from the City Council of the City of Medina, Minnesota, or any other governmental bodies or authorities, for the future development of any of the Property.

**ANSWER:**

We had continual discussions with Oppidan concerning their due diligence which began immediately after the execution of the September 1, 2021 Oppidan contract.  In general see all emails produced between us and Oppidan.

**INTERROGATORY NO. 4:** Identify all persons that expressed an interest in purchasing any of the Property from January 2018 to present, including but not limited to Oppidan, and describe the date and time such interest or offer was expressed and nature of their interest, if any offers were made, the amount of the offer, and the documents and communications related to each interest and offer.

**ANSWER:**

See Documents produced:

August 2, 2021 Jeff received an email from Don Edam, Realtor with Engel & Volkers stating he had a investor/developer out of Chicago who was interested.

August 15, 2021  Email received from Jay Moore, Oppidan.  Very interested in pursuing our land.

August 18, 2021  Email received from Don Edam, Engels & Volker.  Chicago investors like the site and the investment and described what they required in the email.

 August 24, 2021 Email received from Jay Moore, Oppidan.  Purchase agreement today or tomorrow as we discussed yesterday.

August 27, 2021  Email received from Mike Breese, Pinpoint Group investor, Chicago Group.  He commented sympathetically on our purchase agreement and had choice words regarding Robert Atkinson's character.  Chicago group was interested in helping us get out of our situation with Atkinson if we signed a deal with them.

September 1, 2021  Email received from Jay Moore regarding the executed purchase agreement.

3

September 15, 2021  Email received from Oppidan regarding earnest money.

**INTERROGATORY NO. 5:** Identify all persons whom you have considered, contacted, or plan to call as a witness in any upcoming hearings in this matter.

**ANSWER:**

No decision has been made but likely Debtors, Robert Atkinson and Rose Lursong.

**INTERROGATORY NO. 6:** Identify any and all statements, allegations, claims or defenses in Claimant's Response which You dispute and describe in detail the communications, documents, and factual basis supporting Your contention that such matters are disputed.

**ANSWER:**

Our business relationship began in 2018 with Robert Atkinson when we received a letter of intent on September 5, 2018 for the properties called CRP #2 and CRP #3. This letter of intent indicated that CRP#3 had a stipulation that "Buyer will be granted a right of first refusal, for a period of 3 years from the date of closing" to purchase.  The plan discussed was to close on the first parcel once the necessary governmental approvals and other due diligence items were taken care of and then the second parcel within 3 years.

We entered this agreement in good faith and trusted Robert Atkinson.  He had a vision that we agreed with for our property.  Never did we think it would drag out 3 years with nothing to show but a lot of emails, phone calls, empty promises and our missed opportunity to cash in on our property value and forced into bankruptcy.

In early February 2019 it was discussed that we go to the city council meeting to make a formal objection about the final approval of the Comprehensive Plan.  Rose Lorsung coached Jeff on what to say to the council.  After that meeting we felt positive about the team in place and that there was a plan in place to move forward on the due diligence and get the Comprehensive Plan Amendment application submitted. Rose Lorsung researched and found information regarding a legal settlement allowing the Comp Plan Amendment to be approved. Robert Atkinson said he would immediately schedule a time for all of us to meet with the Mayor.  He agreed with Jeff's email dated 02/13/2019 stating we should expedite the comp plan change.

February 26, 2019 Jeff sent an email with a reminder of the Planning Commission meeting coming up and wanted to know if anything would be presented.  Rose Lorsung answered with a long detailed explanation about their process and that our very best position is to go down the road with their development plan.

March 4, 2019  Jeff inquired if there would be an application submitted for the  March 9, 2019 meeting and Rose Lorsung replied "too short notice".

4

March 7, 2019 received emails from Robert Atkinson and Rose Lorsung regarding meeting with Dusty Finke at City Hall regarding the Comprehensive Plan Amendment Application

March 29, 2019 we received an email form Robert Atkinson with a formal letter regarding Cates City Approvals Timeline for the first application for the Comp Plan Amendment and Rezoning. The start was April 2019 with all city approvals estimated January-February 2020 for the Development Agreement. Again we were feeling positive about the team in place.

March 28, 2019 Received email from Robert Atkinson that Earnest Money was funded on March 27, 2019

April 25, 2019 communications between Rose Lorsung and Jeff with Medina letter and other information regarding taxes, settlement and personal letter from us. In that email Jeff asked when she would like us to sign the application. Rose Lorsung emailed on May 12, 2019 that she needed application signed as well as letter.

May 22, 2019 Rose Lorsung forwarded the application, memo, engineer's memo and attachments of the memo. She stated she would let us know when the City schedules us so we can attend the meeting. Just as a note, we believe in hindsight that the application fee was never paid and that is one reason why this application collected dust at the city.

June 10, 2019 Jeff emailed asking if we would be at the meeting and Robert Atkinson said "no. We are going to try for next month. I didn't have my act together to get on this months agenda. Sorry!"

July 8, 2019, Jeff emailed verifying that we are planning on attending and presenting a the meeting. Rose Lorsung answered "It will most likely be next month". Robert Atkinson answered "we're not quite ready to attend tomorrow's meeting". On July 15, 2019 Jeff emailed asking if the plan would be to be at the August 13 meeting. Robert Atkinson replied "yes'.

August 12, 2019 email from Rose Lorsung stating that "once the application is complete" and "Bobby is working towards making the application complete".

September 9,2019 Jeff again emails Robert Atkinson to verify the plan to attend the October meeting since the application has been sitting at City Hall for a few months and we need to show we are proceeding and serious. Robert Atkinson replies, "yes!"

September 21, 2019 Rose Lorsung emails Robert Atkinson and Jeff about the city initiating a feasibility study regarding a lift station to serve our area. Jeff also sent and email to Robert Atkinson about the nest meeting date for the planning commission. Robert Atkinson said he would call Jeff and Rose next Wednesday.

October 5, 2019 Jeff send another request for the October Planning commission meeting.

Robert Atkinson responded the next day saying he would call to discuss, not attending the October meeting but will be ready for the next one. Also, said we need to sign an extension to

5

the purchase agreement.  In response, Jeff asked what the deadlines are to be considered for the next meeting.  He sent another request on October 18 for the November meeting.

October 22, 2019 Rose Lorsung send email stating Dusty said December but only if more information was provided from the engineer by the end of October but they wouldn't be able to get it done. On October 28 signed extension amendment was emailed to Robert Atkinson.

Jeff and Robert Atkinson discussed on November 26, 2019 about starting some value engineering costs for the process to get thru the city for final approval. Jeff emailed the conversation topic and Rose Lorsung answered "Yes, I can do that".

January 8, 2020 Jeff emailed Robert Atkinson and Rose Lorsung, recapping the conversation he had with Robert Atkinson about the "Great News" about Robert stating that all funding will be officially approved and funds ready to access by 1/15/2020 for all city costs to final approval. And that he said for sure presenting at the March 2020 planning commission meeting.

April 12, 2020 Jeff emailed Rose Lorsung to find out about getting the plans and presentation to the city ready to submit.  Rose Lorsung answered "Not yet but I'm working on it". On April 27 Jeff asked for an update. Robert Atkinson replied, No progress yet on presentation but that Kimley Horn would be getting it in a week.

"There's no hurry as the whole world is taking their time making any decisions".

Finally received an email from Robert Atkinson on May 29, 2020 showing a single page drawing with 4 buildings 1.1 million square feet total stating we need to vacate the driveway and provide an alternate ingress/egress to residential properties.

 June 2, 2020 Emails received from Robert Atkinson about addressing the driveway

June 4, 2020 Email received from Rose Lorsung and Kimley Horn about updating the site plan and traffic memo along with the sewer memo next week and road connection to the SE property line.  Bobby was working on building renderings with an architect.

June 14, 2020 Jeff requested update

June 15, 2020 received and update from Kimley Horn regarding the traffic analysis.  Intersection is failing as is unless 4 lane improvements made.  Rose Lorsung emails Robert Atkinson and says "Ok. Bobby what are you going to do, cancel this PA?".

He responds "No! We're going to see if we can still get it rezoned!"

June 23, 2020 Kimley Horn provides Sewer and Water Demands for project

 July 5, 2020  Jeff requests and update and Rose Lorsung responds there will be a meeting next week with Bobby and the Engineer to go over strategy. Then pulling submittal together and submitting the comp plan amendment for the August agenda.

6

Any developer can draw up plans for a project of what he envisions but if there is no real determination from the city how can you keep proceeding and making the project larger and larger with no guidance from the city government entities.  How do you draw up a site plan without doing the Wetland Studies, Surveys ,Soil Borings, Environmental Review Traffic Studies, Site plan based on the completed studies?

This was a turning point when we began to loose faith in the buyer.  No real progress, just a lot of talk of why it is delayed.  The project scope was too big for the area and these indications were creating issues. He was dreaming up this financial goldmine for himself and not thinking about everyone else involved and using their resources. Atkinson was designing this 1.1 million square foot complex without any input from the city as to what the planning commission or the council felt was appropriate.

More bad news came on July 10, 2020 from Rose Lorsung.  Basically the strategy would be to resurrect the lawsuit related to the city because this was our best chance of getting the Comp Plan Amendment and rezoning.  Refer to the email dated July 20, 2020 @ 11:25 am from Rose Lorsung for the details.  Also refer to Rose Lorsung email string dated July 27, 2020 9:14 am "Email for Gerald Duffy, esq. regarding Cates first application to the City of Medina".

 August 5, 2020 In light of the need for, again, more time, we signed the 3rd Amendment to the Purchase agreement.  We said we were totally engaged and ready for the next steps.

August 28, 2020  Email from Rose Lorsung stating work on application and discussions with attorney and strategy on assembling additional parcels.  "Application will be soon."

At this point, we are frustrated but moving along thinking they actually are creating something to submit.

September 9, 2020  Email response from Rose Lorsung saying now they need to wait until after elections and planning commission and city council seats turn over in January before we can proceed on the submittal to the city because we need 4 out of 5 votes to approve comp plan amendment.

October 8 2020 Email response from Rose Lorsung saying we have to wait on elections but that they are studying development impacts and preparing behind the scenes for the "big first step and want to do it right".

November 9, 2020 Received email regarding signing of 4th Amendment to the Purchase Agreement.  At this time we are so very frustrated and the 3rd Amendment gives them until January 31, 2022.  We are not interested in giving any more time extensions.  There has literally been no progress showing this project can be completed.  All we are hearing is assembling more land for the project.

November 16, 2020 Jeff emails Robert Atkinson regarding that he needs another extension.  Jeff states that we have been patient and working with you on this and want to continue to the

end.  However, if another extension is required then we need a non-refundable extension payment of $400,000.00.

On November 23, 2020 Rose Lorsung emailed a response saying Robert Atkinson is not willing to pay an extension payment.

December 2, 2020 Email string for updates for presenting in January 2021.  No clear date given.

  At a 2020 meeting with Rose Lorsung she commented that we needed "to get tough" on Atkinson Holdings, LLC because he was busy working on another deal and letting ours slide.  She herself quit the team for a time because of her own frustrations.  We recently learned that he has not paid anyone for work they have done on this agreement so far.  We also learned he has no funds/resources of his own and cannot find anyone with enough funds/resources to close this deal.

January 5, 2021 Jeff requests update.  Rose Lorsung responds "We are on this now, I am putting a strategy together for this and we are talking to our planning attorney today about the settlement and the phasing of approvals. I will let you know where we are at".

January 6, 2021 8:39 am  Email from Rose Lorsung.  This one asks for Jeff to call her.  They are moving ahead and want to discuss the assemblage of acreage and buying our homestead.  A little bit unsettling because the project has completely changed to a much larger one and one that is not what has been discussed for the past TWO years.  They are basically bullying us to sign on the amendment or our homestead will be isolated….

January 11, 2021 Jeff responds to Rose Lorsung and Robert Atkinson regarding the revised, new, larger, proposed project that already has been delayed by stalling tactics and excuses.   Jeff explains that it has been 2 years with no meaningful movement to develop our property.  We cannot afford to keep delaying so there will be no more extensions from us. He also explains he will need to start marketing CRP#3 if we cannot come to any agreement on payment terms by 1/15/21- basically suggesting a decreased price for an immediate buyout. If no agreement to payment then agree to cancel the Purchase agreement by 1/18/21.  He listed many questions to get a better understanding of what the proposed master development plan is in regard to us.

See that email for more details.

January 15, 2021  9:35 am  Email response from Rose Lorsung.  See that email.  No real substance or plan.  Just the same comments as usual.

January 16, 2021.  Jeff emails Robert Atkinson to get a response on the payment terms and other terms discussed by 1-19-21.

January 27, 2021  Jeff send email request about submitting for approval to the city.

January 29 and 31, 2021   Jeff send email request again about getting something started with the city.

8

February 2, 2021  Email response from Rose Lorsung stating application being put together and takes time and the city has strict rules of what needs to be submitted.

However, we understood that we had already submit our application in May 2020.  This is what has been so confusing and frustrating and causing anxiety.  The constant stalling tactics and excuses and misleading statements about what is really going on behind the scenes.

We assume he never paid the application fee to the city of Medina after we signed and submitted in May 2020.

February 9, 2021  Email from Rose Lorsung stating she spoke with Robert Atkinson last week and he confirmed to we are on schedule to "submit to the city in about 30 days".

February 10 and 11, 2021  Email responses from Robert Atkinson assuring us of  the companies that are engaged and the work that is  being done.  However, in order to keep moving forward we have to sign the agreement for our homestead and CRP#1.  He says once we execute the amendment the professionals are ready to get started.  Again, pressuring and bullying tactics.

February 11, 2021 Email from Rose Lorsung with 4th Amendment to the purchase agreement that includes our homestead and CRP#1 attached.  She states this is critical to move forward.  Again, pressuring and bullying tactics.

 February 18, 2021  Email string between Robert Atkinson, Rose Lorsung and Jeff Cates regarding information requested by Jeff regarding our bank asking for more information to extend loans.  They told Jeff in those emails no outline of schedule and that you know we are continuing to move forward to the city.  Jeff also emailed them on February 19 to again get the information requested on schedule to get approvals.

February 28, 2021  Jeff sends email explaining he needs more information before he can sign his "life away".  See details of that email.

March 3, 2021  Email form Rose Lorsung replies to email on February 28.  Lists answers to questions but offers no guarantees of progress.  See details of that email.

March 16, 2021  Email form Rose Lorsung explaining that Robert Atkinson cannot risk hard money until city gives assurances to move forward.  The amendment needs to be signed or we are at a standstill.

 March 22, 2021  Email from Rose Lorsung.  She spoke with Robert Atkinson and he isn't willing to give any money until city approval and preliminary plat approval. She states Robert is done negotiating with you and the amendment stands and it needs to be signed to move forward.

April 22, 2021  Email from Rose Lorsung stating Robert Atkinson is still working on final details and also may have someone who will buy you out early.

9

May, 2021 -See emails following showing lies, smoke and mirrors and promises. Barrage of with threats and demanding to sign immediately and give away all my properties immediately to him.

May 11, 2021 Email from Rose Lorsung Term Sheet for Amended PA

May 19, 2021  Jeff sends email to get update on how new PA is going

May 31, 2021  Rose Lorsung email response to Jeff for a closing on June 18, 2021

June 11, 2021  Rose Lorsung email response to Jeff on June 18, 2021 closing

June 15, 2021 Email from Rose Lorsung regarding the buyout.  Robert Atkinson is now looking to buy the 67 acres directly and finance thru Northstar Bank.  In underwriting now.

June 17, 2021,  Jeff emails Rose Lorsung regarding the PA amendment and asks for verification of the neighbor, Burgess, verification of a signed agreement.  This is something we had asked for numerous times. We wanted proof.

June 21, 2021  Rose Lorsung send revised 4th amendment(version 5) to be signed.

June 22, 2021  Rose Lorsung email asking to sign the amendment otherwise bank cannot underwrite the loan.

June 23, 2021  Jeff emails Rose Lorsung we need a minimum of $3,000,000 up from by July 15, 2021.

July 1, 2021 Email from Michelle Culligan regarding discussion with our attorney Jan Larson regarding the terms of 4th Amendment.  A great deal of review back and forth between attorneys with no clear agreement being made.

July 20, 2021 Email from Rose Lorsung pressuring us into signing a deal we are not agreeable to.

July 27, 2021 Email from Rose Lorsung reminding us that the CRP#1 listing agreement needed to be extended.  As this listing expired, we received a few calls regarding the land for sale.  We decided to follow up with the list of contacts Jeff had plus the new ones that had called with interest.

July 28, 2021  Email from Michelle Culligan with draft of amended and restated purchase agreement for review.  Again, we were still not comfortable signing away all of our property to someone who had not performed in two years but kept asking for more of our property with no clear end date.

August 9, 2021  Email received from Matt Oelschlager, CBRE.  Letter of Intent presented to us.

10

August 10, 2021  Met with Don Edam at Engel & Volkers to find out more about his investor.  It turned out that the representative from the Pinpoint Group from the original Term Sheet that we received from Robert Atkinson and Rose Lorsung was at the meeting.  The consensus was that no one was interested in working with Atkinson because he was not trusted and was greedy.  They contacted us because they were still interested in the property.

August 1, 2021  Chris Cates emailed to inquire if the original earnest money from Robert Atkinson was still in the account.  We were suspicious.  A response from Gibraltar Title explained to us that they were contacted July 31, 2019 and told the purchase agreement was being cancelled and requested a refund of the money.  They were told that a cancellation agreement signed by both parties would be required to return the funds.

Title company made repeated attempts to get the cancellation agreement thru January 24, 2020.  We consider this fraudulent.  Atkinson went behind our back to steal the money back.

August 14, 2021  Email from Rose Lorsung inquiring why we are holding up the deal.

August 15, 2021 Email from Rose Lorsung pressuring us to sign the deal.

August 23, 2021  Email from Rose Lorsung again pressuring us to sign the deal.

 August, 2021 We felt that we were left with no other choice but to cancel his contract due to lack of performance, breach of contract, NO Due diligence, violated all the terms in the contract about proceeding in good faith and due diligence.  So it's clear, clear, clear that BA didn't meet the contract requirements.

September 10, 2021  Email from Rose Lorsung stating that the wetland delineation would  be in the next week and would notify the exact date later.  We were baffled that after all this time of having a 3 growing season to get this done they finally scheduled it. A little too late to perform…  We are not sure why they waited so long.  This wetland study would have given them a better idea of how much square footage they could actually build and where on the property. You can see on the initial site drawing that they just placed the buildings where they wanted no where they would fit on the site to minimize wetland impacts.

 September 15, 2021 Chris Cates emailed Gibraltar Title to find out if there had been any additional contact from the buyer.  They replied a representative had contacted them. See email for more details.

September 16, 2021

Posted sign on property for anyone hired by Robert Atkinson that they could not lien the property for non-payment of services.

 Robert Atkinson would tell Jeff he had interested or committed clients for the development on a regular basis.  It seems to us, if he had so many user commitments that he would be proceeding with getting his due diligence complete to get the project approved. Not keep looking for ways to

11

add more acreage to satisfy his greedy vision.  How do you get companies to sign a lease if you have no plan in place to get the actual city/governmental approvals?

Any developer can draw up purchase agreements and  plans for a project of what he envisions, but if there is no real determination from the city for approvals or guidance  how can a person keep proceeding and making the project larger and larger with no guidance from the city government entities?  Apparently, at the end point, the cities of  Medina and Corcoran would govern the approvals if he was actually acquiring extra parcels and where would that money for approvals going to come from?

Robert Atkinson was working to make it an even larger project by acquiring and additional 60 + acres from neighbors.  We fell to the wayside while he was out doing other deals.  He also bragged all about his Chaska and Chanhassen projects he was working on.  Our understanding is these deals failed as well.  We came to the conclusion he was spending far more time on his Chanhassen project than ours.  Robert Atkinson was dragging out our purchase agreement with extensions so he could hang onto our land for his grand ideas and no funds to complete any due diligence to submit an application to the city.  It had been 2 years with little to no progress.  We were losing confidence and getting anxious with our own financial situation.

We chose to cancel the purchase agreement with Atkinson Holdings, LLC because we lost confidence in his ability to get government approvals or funds within the terms of the purchase agreement. Atkinson Holdings, LLC defaulted on the purchase agreement by abandonment, fraud, failure to act diligently and in good faith to obtain the requisite governmental approvals and failure to pay the outstanding purchase price of $4,126,961.00. The lack of progress by the buyer in execution of this purchase agreement represents lack of good faith and which mislead and entrapped us into an agreement that has caused delay after delay. We needed Atkinson Holdings LLC to perform to be able to sell these assets but since he failed in performance we had no choice but to file in bankruptcy to protect our assets and find a way to sell the assets to pay our debt.


All documents referenced above attached as part of responses to document requests.

**INTERROGATORY NO. 7:** Describe in detail the basis for Your decision to agree to the March 25, 2019 amendment/addendum to the Purchase Agreement, and identify, all documents and communications related to said amendment, including without limitation any demands You made to Claimant.

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 8:** Describe in detail the basis for Your decision to agree to the October 8, 2019 amendment/addendum to the Purchase Agreement, and identify all documents and communications related to said amendment/addendum, including without

limitation any demands You made to Claimant.

**ANSWER:**

See Answer to Interrogatory Number 6.


**INTERROGATORY NO. 9:** Describe in detail the basis for Your decision to agree to the May 8, 2020 amendment/addendum to the Purchase Agreement, and identify all documents and all communications related to said amendment/addendum, including without limitation any demands You made to Claimant.

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 10:** Describe in detail the basis for Your decision to agree to the August 3, 2020 amendment/addendum to the Purchase Agreement, and identify all documents and communications related to said amendment/addendum, including without limitation any demands You made to Claimant.

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 11:** Describe in detail the basis for Your decision to agree to negotiate the Restated Purchase Agreement and to cause your attorney to prepare a draft motion to approve the same, and identify all documents and communications related to the Restatement Purchase Agreement, including without limitation, the facts, communications and documents supporting Your allegation in Debtors' Objection that "After the Third Addendum was signed, in May of 2021, around the time the two Chapter 11's were filed, Atkinson attempted to change the terms of the deal" and "told the Debtors that the January 31, 2019 deal was off the table, and that the only deal available to Debtors from Atkinson was the new deal to sell all five parcels for $8,600,000."

**ANSWER:**

Objection as to those issues that are covered by Attorney Client Privilege. See Answer to Interrogatory Number 6.


**INTERROGATORY NO. 12:** Describe in detail the basis for Your decision to serve Claimants with the Notice of Cancellation of Purchase Agreement, and identify all facts, documents and communications related to the Notice of Cancellation of Purchase Agreement, including without limitation any demands You made to Claimant before serving the Notice of Cancellation of Purchase Agreement.

13

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 13:** Identify the basis for the factual assertion in Debtors'
Objection that Claimant breached the Purchase Agreement, including all documents and
communications that support Your statements in Debtors' Objection that "Debtors hearing many
promises from [Claimant] of 'being close' and 'it will be done by next month'" and "Atkinson
took advantage of Debtors by not acting in good faith when it repeatedly asked for Debtors' to
trust and just a little more time, all without performing the necessary steps that would have
allowed them to close the original deal months (or even years) earlier."

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 14:** Identify all persons, documents and communications
related to Your allegation that Claimant fraudulently requested the earnest money for the
Purchase Agreement in paragraph 36 of Debtors' Notice of Motion and Motion to Approve
Rejection of an Executory Contract filed September 28, 2021, as Docket No. 68 in the
Bankruptcy Case.

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 15:** Describe in detail the basis for Your entering into the
Oppidan Contract and identify all documents and communication related to same, including
without limitation all negotiations between You and Oppidan.

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 16:** Describe in detail the basis for Your decision to agree to
the First Amendment to the Oppidan Contract referenced in Paragraph 5 of Debtors' Notice of
Hearing and Motion for an Order Approving the Sale of Certain Real Estate of the Debtors' Free
and Clear Liens, Claims, Encumbrances and Interests at a Private Sale, filed May 5, 2022, as
Docket No. 175 in the Bankruptcy Case (hereafter "Debtors' Motion to Approve Sale"), and
identify all documents and communications related to said First Amendment, including without
limitation any demands You made to Oppidan.

**ANSWER:**

See Answer to Interrogatory Number 6 and motion paperwork supporting the First Amendment.

**INTERROGATORY NO. 17:** Describe in detail the basis for Your decision to agree to the Second Amendment to the Oppidan Contract referenced in Paragraph 6 of Debtors' Motion to Approve Sale, and identify all documents and communications related to said Second Amendment, including without limitation any demands You made to Oppidan.

**ANSWER:**

See Answer to Interrogatory Number 6 and motion paperwork supporting the Second Amendment.

**INTERROGATORY NO. 18**: Describe in detail the reasons for, and identify all documents and communications related to, Oppidan's termination of the Oppidan Contract referenced in paragraph 7 of Debtors' Motion to Approve Sale, including without limitation the basis for the "City Council" not approving "the request of the Buyer to amend the Medina Comprehensive Plan to include the 67.l Acres included in the Original Agreement."

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO. 19:** Describe in detail the basis for Your decision to agree to the New Oppidan Contract attached to Debtors' Motion to Approve Sale, and identify all documents and communications related to the New Oppidan Contract, including without limitation any demands You made to Oppidan.

**ANSWER:**

See Answer to Interrogatory Number 6 and motion paperwork supporting the New Agreement.

**INTERROGATORY NO. 20:** Identify and describe the date of You believe Claimant breached the Purchase Agreement.

**ANSWER:**

See Answer to Interrogatory Number 6.

**INTERROGATORY NO.21:** Identify and describe what You believe was the fair market value of the Property on the date of breach as identified by You in the preceding Interrogatory, including without limitation identifying all documents and communications supporting Your valuation.

15

**ANSWER:**

Objection, calls for a legal conclusion, Debtors have no independent knowledge of fair market value under various conditions as of the time of the multiple breaches of the Atkinson Agreements.

**INTERROGATORY NO. 22:** Identify and describe what You believe was the fair market value of the Property on September 1, 2021, including without limitation identifying all documents and communications supporting Your valuation.

**ANSWER:**

See Answer to Interrogatory Number 21.

**INTERROGATORY NO. 23:** Identify all facts and documents that support your denial of any request for Admission contained in Claimant Medina 55's Requests for Admissions served herewith.

**ANSWER:**

See Answer to Interrogatory Number 6.


**INTERROGATORY NO. 24:** Identify all documents and communications related to the Purchase Agreement.

**ANSWER:**
**See Documents produced in response to the Request for Production of Documents.**

**<u>Signature Page Follows</u>**

16

Dated: 11-7-22

Jeffrey Cates

Dated: 11-7-22

Christine Cici-Cates

**As to Objections:**

Dated: November 4, 2022

/e/ Kenneth Corey-Edstrom

Kenneth Corey-Edstrom (148696)
Sapientia Law Group
120 South Sixth Street, Suite 100
Minneapolis, MN  55402
kene@sapientialaw.com

Attorneys for Debtors

4856-4290-1558, v. 1

18

**EXHIBIT C**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

                                             Case No. 21-40882

Jeffrey Cates and Christine Cici-Cates,         Chapter 11

     Debtors.

## CLAIMANT'S SUPPLEMENTED ANSWERS TO DEBTORS' INTERROGATORIES
### (SETS 1 and 2)

TO:    Debtors Jeffrey Cates and Christine Cici-Cates, c/o its attorneys, Kenneth C. Edstrom and Sapientia Law Group, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402.

       Claimant Medina 55, LLC, a Minnesota limited liability company ("Claimant"), provides the following Supplements Answers to Debtors Jeffrey Cates' and Christine Cici-Cates' ("Debtors'") Interrogatories to Claimant dated September 19 and October 11, 2022 (the "Discovery Requests"):

## <u>GENERAL OBJECTIONS AND RESERVATIONS</u>

       These general objections are incorporated into every answer to the below Discovery Requests as though fully set forth therein (the "General Objections"):

       1.    Discovery is ongoing and Claimant's answers to the Discovery Requests are based upon its best present knowledge as to the existence, location, and contents of the files that it maintains.  While Claimant has used its best efforts to identify and locate information responsive to the Discovery Requests, and bases its answers thereon, Claimant reserves the right to supplement its answers if and when additional information is located by it.

2.      Claimant objects to the Discovery Requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine, joint defense or common enterprise privilege, or other applicable privileges, defenses or immunities.

3.      Claimant objects to the Discovery Requests to the extent they purport to require it to provide information already in Debtors' possession, custody, or control, or which is readily available to Debtor from another more convenient or less expensive source.

4.      Debtor objects to the Discovery Requests to the extent they seek discovery that is not proportional to the needs of the case, considering the burden or expense of the proposed discovery weighed against its likely benefit, the amounts in controversy, the parties' resources, the importance of the issues in the case, and the importance of the proposed discovery in resolving those issues.

5.      Claimant objects to the Discovery Requests to the extent they are overly broad, unduly burdensome, or seek information that is neither relevant or likely to lead to the production of admissible evidence.

6.      Claimant objects to the Instructions and Definitions in the Requested Discovery to the extent that they seek to impose duties and obligations upon Claimant that exceed those imposed by the Federal Rules of Civil Procedure or the Federal Bankruptcy Rules of Civil Procedure.

Subject to the above General Objections, including any specific objections asserted herein (the "Objections"), and without waiving the same, Claimant provides the following supplemented answers to Debtors' Discovery Requests, reflected in bold and underlined text, as follows:

2

## SUPPLEMENTED ANSWERS TO INTERROGATORIES

INTERROGATORY NO. 2:  Identify all persons with personal knowledge of any and all facts underlying any and all claims or defenses in this action, including without limitation any agents or representatives that You engaged to perform Your due diligence.

**SUPPLEMENTED ANSWER**:  Subject to the Objections, and without waiving same, the

below is supplemented information regarding Jon Yanta:

| Name | Contact | Personal Knowledge |
|---|---|---|
| Jonathan Yanta | Jon.Yanta@cushwake.com<br>952-820-8734 | Broker with Cushman & Wakefield with knowledge of development plans, marketing of property, potential investors/end-users for property, amounts in dispute, **and expert knowledge regarding the value of property in 2021** |

INTERROGATORY NO. 21:  Explain in detail any and all "costs already incurred" as referenced in Paragraph 9 of Your Addendum to Proof of Claim, including without limitation amounts due under the Purchase Agreement, consulting fees, and attorneys' fees, specifically identifying the amount of each individual expenditure, the date it occurred, and the purpose of the expenditure.

**SUPPLEMENTED ANSWER**:  Claimants object to the extent attorney-client information and

work product is sought related to any attorney invoices. Subject to the Objections, and without

waiving same:

**6.**  Approximately, **$1,500.00**, for title commitment from Guaranty Title.  Commitment has

been produced **and supporting invoice dated March 10, 2021, to be produced.**

**10. Approximately, $3,000.00, for the Broker's Price Opinion of Value ("BPO") from**

**Cushman & Wakefield and related testimony. BPO to be produced.**

INTERROGATORY NO. 24:  Explain in detail the basis for Your statement at footnote 4 on page 3 of Your Addendum to Proof of Claim that the Property "is worth more than" the amount set forth in the Oppidan agreement.

**SUPPLEMENTED ANSWER**:  Subject to the Objections, and without waiving same: Claimant believes the land **had** a higher fair market value based on its highest and best use **in and around September 1, 2021 (the date of breach), which was the peak time for sellers of land for commercial/light industrial use, and the BPO provided by Cushman & Wakefield supports a likely offer and fair market value range of $10,950,000.00 to 12,005,000.00 for both parcels (with a range of $4,925,000.00 to $5,580,000.00 for 2575 Cates Ranch Dr., and a range of $6,025,000.00 to $6,425,000.00 for 2590 Cates Ranch Dr.). Claimants** continue to investigate the same.  Claimant will supplement its response herein and produce non-privileged supporting documents, if any, as required under the applicable rules following such investigation. Discovery is ongoing.


**AS TO OBJECTIONS**:

Dated: December 7, 2022

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A Professional Association

By:＿＿/s/ *Ted C. Wagor*＿＿＿＿＿＿＿＿
＿＿＿＿Will R. Tansey (#323056)
＿＿＿＿Ted C. Wagor (#0396347)
150 South Fifth Street, Suite 3450
Minneapolis, Minnesota 55402
Telephone: (612) 332-8511
wrtansey@ravichmeyer.com
tcwagor@ravichmeyer.com

***ATTORNEYS FOR CLAIMANT***

**AS TO ANSWERS**:

I, Robert Atkinson, as Manager of Medina 55, LLC, declare as follows: I have read the foregoing supplemented interrogatory answers and I am familiar with their contents.  Based on my review of all of my files, emails, books and records maintained on behalf of Medina 55, LLC, and its predecessors-in-interest of which I am also associated with, I affirm that these interrogatory answers are true and correct to my knowledge. I declare under penalty of perjury under the laws of the United States of America that everything I have stated in this document is true and correct.

Executed: December 7, 2022.

Hennepin County, Minnesota

_____
                        Robert Atkinson

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Jeffrey Cates and Christine Cici-Cates,

Debtors.

Case No. 21-40882

Chapter 11

**CLAIMANT'S SECOND SUPPLEMENTED ANSWERS TO DEBTORS'
INTERROGATORIES (SETS 1 and 2)**

TO:    Debtors Jeffrey Cates and Christine Cici-Cates, c/o its attorneys, Kenneth C. Edstrom and
Sapientia Law Group, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402.

Claimant Medina 55, LLC, a Minnesota limited liability company ("Claimant"), provides

the following Second Supplementation of its Answers to Debtors Jeffrey Cates' and Christine

Cici-Cates' ("Debtors'") Interrogatories to Claimant dated September 19 and October 11, 2022

(the "Discovery Requests"):

## GENERAL OBJECTIONS AND RESERVATIONS

These general objections are incorporated into every answer to the below Discovery

Requests as though fully set forth therein (the "General Objections").

1.      Claimant's answers to the Discovery Requests are based upon its best present

knowledge as to the existence, location, and contents of the files that it maintains.   While

Claimant has used its best efforts to identify and locate information responsive to the Discovery

Requests, and bases its answers thereon, Claimant reserves the right to supplement its answers if

and when additional information is located by it.

{00596377 }

2.    Claimant objects to the Discovery Requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine, joint defense or common enterprise privilege, or other applicable privileges, defenses or immunities.

3.    Claimant objects to the Discovery Requests to the extent they purport to require it to provide information already in Debtors' possession, custody, or control, or which is readily available to Debtor from another more convenient or less expensive source.

4.    Debtor objects to the Discovery Requests to the extent they seek discovery that is not proportional to the needs of the case, considering the burden or expense of the proposed discovery weighed against its likely benefit, the amounts in controversy, the parties' resources, the importance of the issues in the case, and the importance of the proposed discovery in resolving those issues.

5.    Claimant objects to the Discovery Requests to the extent they are overly broad, unduly burdensome, or seek information that is neither relevant or likely to lead to the production of admissible evidence.

6.    Claimant objects to the Instructions and Definitions in the Requested Discovery to the extent that they seek to impose duties and obligations upon Claimant that exceed those imposed by the Federal Rules of Civil Procedure or the Federal Bankruptcy Rules of Civil Procedure.

Subject to the above General Objections, including any specific objections asserted herein (the "Objections"), and without waiving the same, Claimant provides the following supplemented answers to Debtors' Discovery Requests, reflected in bold and underlined text, as follows:

## SUPPLEMENTED ANSWERS TO INTERROGATORIES

INTERROGATORY NO. 18:  Identify the relationship between You and Bigos Management, Inc.

**SUPPLEMENTED ANSWER**:  None.  Bigos Management, Inc. is the property management company owned by Ted Bigos, and has no relationship to Claimant **other than by way of its association with Ted Bigos. As stated in Claimant's Answer to Interrogatory No. 2, Ted Bigos is the Chief Manager of Bigos-Bren Road, LLC, a Member of Claimant. Claimant, however, has no direct relationship with Bigos Management, Inc.**

INTERROGATORY NO. 21:  Explain in detail any and all "costs already incurred" as referenced in Paragraph 9 of Your Addendum to Proof of Claim, including without limitation amounts due under the Purchase Agreement, consulting fees, and attorneys' fees, specifically identifying the amount of each individual expenditure, the date it occurred, and the purpose of the expenditure.

**SUPPLEMENTED ANSWER**:  Claimants object to the extent attorney-client information and work product is sought related to any attorney invoices. Subject to the Objections, and without waiving same:

2. **Approximately, $165,078.44 for contractually owed broker commissions to ReCreate Real Estate, LLC, and/or Rose Lorsung, its principal, for the sale of the 30.18 acre parcel (4% commissions at initial contract price), and another $201,944.86 in commissions on the sale of the 36.92 acre parcel, for a total of approximately $367,023.30 in broker commissions. In the Alternative, approximately** $243,250.00, for Consulting fees owed to Rose Lorsung/Pulse Land Group, Inc., incurred for services rendered from February 26, 2019, through October 20, 2021.  Invoice **and contracts have** been produced.

3

**<u>AS TO OBJECTIONS</u>:**

Dated: January 16, 2023

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A Professional Association

By:___/s/ *Ted C. Wagor*_____
      Will R. Tansey (#323056)
      Ted C. Wagor (#0396347)
150 South Fifth Street, Suite 3450
Minneapolis, Minnesota 55402
Telephone: (612) 332-8511
wrtansey@ravichmeyer.com
tcwagor@ravichmeyer.com

***ATTORNEYS FOR CLAIMANT***

**EXHIBIT D**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Jeffrey Cates and Christine Cici-Cates,

     Debtors.

Case No. 21-40882

Chapter 11

### DISCLOSURE OF EXPERT WITNESS

TO:   Debtors Jeffrey Cates and Christine Cici-Cates, c/o its attorneys, Kenneth C. Edstrom and Sapientia Law Group, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402.

Claimant Medina 55, LLC, a Minnesota limited liability company ("Claimant"), hereby discloses that it may call Jon Yanta, SIOR, CCIM, a commercial real estate broker with Cushman & Wakefield, at the evidentiary hearing in this matter to provide expert testimony in addition to lay testimony related to his personal knowledge of relevant matters. Mr. Yanta has already been identified as a potential witness in this matter. The subject matter of Mr. Yanta's expected expert testimony is the fair market value of the Debtors' property in and around September 1, 2021, which will based on the facts and opinions summarized in his Broker Opinion of Value, to be provided to Debtors' contemporaneously herewith. Claimants reserve the right to disclose amendments or supplements to the Broker Opinion of Value and disclose additional experts in this matter.

Dated: December 9, 2022

                     RAVICH MEYER KIRKMAN McGRATH
                     NAUMAN & TANSEY,
                     A Professional Association

                     By:    /s/ *Ted C. Wagor*
                           Will R. Tansey (#323056)
                           Ted C. Wagor (#0396347)
                     150 South Fifth Street, Suite 3450
                     Minneapolis, Minnesota 55402
                     Telephone: (612) 332-8511
                     wrtansey@ravichmeyer.com
                     tcwagor@ravichmeyer.com
                     ***ATTORNEYS FOR CLAIMANT***

**EXHIBIT E**

Case 21-40882   Doc 292   Filed 03/06/23 Entered 03/06/23 16:10:00   Desc Main
Document   Page 50 of 77

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### DISTRICT OF MINNESOTA

In re <u>Jeffrey Scott Cates and Christine Cici-Cates</u>
          Debtor

Case No. <u>21-40882</u>

Chapter <u>11</u> (Subchapter V)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: <u>Oppidan Holdings, LLC, a Minnesota limited liability company, 400 Water Street Suite 200, Excelsior, MN 55331</u>
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   **SEE ATTACHED EXHIBIT A**

| PLACE: Ravich Meyer Kirkman McGrath Nauman & Tansey, P.A. 150 South Fifth Street, Suite 3450, Minneapolis, MN 55402 | DATE AND TIME **October 17, 2022, 1:00 p.m.** |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 28, 2022

        CLERK OF COURT

                                    OR

              _____                        _____
             *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
**Medina 55, LLC (Claimant)**     , who issues or requests this subpoena, are:
**Will R. Tansey, 150 S. 5th St., Minneapolis, MN 55402, 612-317-4760, wrtansey@ravichmeyer.com**

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction –– which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises –– or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT A**
**TO SUBPOENA DUCES TECUM**
**(Oppidan Holdings, LLC)**


**Definitions**

For purposes of this Subpoena Duces Tecum, the following definitions shall apply:

1.      "Documents" means any written, printed, typed, or other graphic matter of any kind or nature, including drafts and copies bearing any marks (such as initials, comments, notations, notes, or stamped indices) not found on the original, and includes, without limitation, all emails, text messages, memoranda, reports, notes, transcripts, letters, envelopes, bids, contracts, invoices, messages, interoffice memoranda, work papers, photographs, pictures, diaries, desk calendars, appointment books, drafts, minutes or transcriptions of meetings, and other communications of every type.  All attachments or enclosures to a document are deemed to be part of such document.

2.      "Communication" or "Communications", including any verb form of either word (communicated, communicates, etc.), means all methods and means of conveying or transferring information, whether received or transmitted by You, or otherwise came into Your possession, including without any telephone conversations, letters, text messages, electronic mail, other computer linkups, written memoranda, and face-to-face conversations.

3.      "related to" or "relating to" means regarding, referring to, mentioning, discussing, reflecting, containing, stating, describing, embodying, evidencing, constituting, dealing with, or making reference to or relating to in any way.

4.      "affiliate(s)" means any persons (as defined below) that directly or indirectly through one or more intermediaries, control, are controlled by, or under common control or ownership with You, where control is either management authority, contract, or equity interest.

5.      "person(s)" means individuals and entities including, without limitation, sole proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts, estates and any other legal, business or governmental entity.

6.      "You" or "Your" shall mean Oppidan Holdings, LLC, a Minnesota limited liability company, or any officer, employee, agent, representative, person or entity acting on its behalf, including without limitation David Scott, General Counsel and Executive Vice President of Oppidan Holdings, and any subsidiaries and/or affiliates having possession or control over any Documents or Communications responsive to this subpoena.

7.      "Bankruptcy Case" means the Chapter 11 proceedings of the Jeffrey Cates and Christine Cici-Cates commenced on May 17, 2021, in the United States Bankruptcy Court for the District of Minnesota.

{00588841 }

8.      "Debtors" means Jeffrey Cates and Christine Cici-Cates, including any agent, representative, or other person(s) acting or purporting to act on their behalf.

9.      "Claimant" means Medina 55, LLC, a Minnesota limited liability company (also referred to herein as "Medina 55"), including any owner, agent, employee, representative, or other person(s) acting or purporting to act on its behalf, and its predecessor-in-interest to the Purchase Agreement (defined herein) Atkinson Holdings, LLC a Minnesota limited liability company, and Robert C. Atkinson.

10.      "Claim" means Claimant's Proof of Claim 20, filed October 25, 2021, in the Bankruptcy Case, a true and correct copy of which is attached as Exhibit G to Debtor's Objection and Motion to Approve Rejection of Medina 55's Claim, filed August 15, 2022, as Docket No. 196 in the Bankruptcy Case.

11.      "Claimant's Purchase Agreement" means that certain Purchase Agreement dated January 31, 2019, by and between Debtors and Claimant, together with all subsequent addendums, amendments, and restatements thereto, proposed or executed.

12.      "Oppidan Contract" means that certain Purchase Agreement dated September 1, 2021, by and between Oppidan and Debtors, a copy of which is attached as Exhibit B to Docket No. 82, filed October 15, 2021, in the Bankruptcy Case, including all subsequent addendums and amendments thereto.

13.      "David Scott Declaration" means that certain Declaration of David Scott, General Counsel and Executive Vice President of Oppidan Holdings, LLC, filed with Debtors' Reply Memorandum in Opposition to Objection to Motion to Sell Property Free and Clear on October 7, 2021, as Docket No. 73 in the Bankruptcy Case.

14.      "Property" means, the Property identified in the Oppidan Contract, known as 2575 Cates Ranch Road (PID: 04-118-23-14-0004) and 2590 Cates Ranch Road (PID: 04-118-23-11-0002), in the City of Medina, County of Hennepin, Minnesota.

15.      All other terms, capitalized or not, shall be interpreted in accordance with the meaning that such term is given in the Claim, or if such terms are not found therein, in accordance with the common, dictionary definition of such term(s) as they relate to this matter.

## Documents to be Produced

1.      All Documents and Communications in Your possession or under Your control relating to Claimant's Purchase Agreement.

2.      All Documents and Communications in Your possession or under Your control relating to Claimant's Claim.

3.      All Documents and Communications in Your possession or under Your control relating to Your negotiations with Debtors regarding the Property on or before September 1, 2021 (the stated date of the Oppidan Contract).

4.      All Documents and Communications in Your possession or under Your control relating to Your valuation of the Property on or before September 1, 2022, including without limitation any appraisals, broker price opinions, or internal calculations (e.g., sale or project comparisons, rent models, pricing models, return on investment models, etc.).

5.      All Documents and Communications in Your possession or under Your control relating to Your valuation of the Property at any time after September 1, 2022, including without limitation any appraisals, broker price opinions, or internal calculations (e.g., sale or project comparisons, rent models, pricing models, return on investment models, etc.).

6.      All Documents and Communications in Your possession or under Your control relating to Your "capital partner's" interest in and commitment to purchase the Property as referenced in the David Scott Declaration.

Dated: September 28, 2022

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A Professional Association

By:____/e/ Will R. Tansey_____
        Will R. Tansey (#323056)
        Ted C. Wagor (#0396347)
150 South Fifth Street, Suite 3450
Minneapolis, Minnesota 55402
Telephone: (612) 332-8511
wrtansey@ravichmeyer.com
tcwagor@ravichmeyer.com

**ATTORNEYS FOR CLAIMANT**

**Ted Wagor**

| | |
|---|---|
| **From:** | Ted Wagor |
| **Sent:** | Friday, February 24, 2023 3:38 PM |
| **To:** | Ken Edstrom; Kristin Neff; Will R. Tansey; Alex Beeby |
| **Subject:** | RE: 21-40882 Cates |

Hello All,

The "March 22, 2023 – March 23, 2023" dates work best for Claimant and its witnesses.

Thanks,
TED C. WAGOR, ESQ.
O: 612.317.4742
M: 612.875.3657

# RAVICH MEYER

RAVICH MEYER KIRKMAN McGRATH NAUMAN & TANSEY, P.A.
150 SOUTH FIFTH STREET, SUITE 3450
MINNEAPOLIS, MN 55402
WWW.RAVICHMEYER.COM

**From:** Ken Edstrom <kene@sapientialaw.com>
**Sent:** Wednesday, February 22, 2023 11:29 AM
**To:** Kristin Neff <kristin_neff@mnb.uscourts.gov>; Will R. Tansey <wrtansey@ravichmeyer.com>; Alex Beeby <alexb@sapientialaw.com>; Ted Wagor <tcwagor@ravichmeyer.com>
**Subject:** RE: 21-40882 Cates

I know that one of our witnesses is not available during the last week of March but either of the earlier dates would work during the week of March 20.

**Kenneth C. Edstrom***
Attorney

*Admitted in Minnesota and Arizona
 Board Certified in Business Bankruptcy by the ABC since 2000

 

Kenneth C. Edstrom
120 South Sixth Street, Suite 100 | Minneapolis, MN 55402
**Office:** 612.756.7108
**Cell:** 612.759.3631
f: 612.756.7101
**kene@sapientialaw.com**
 My pronouns are he, him and his
www.sapientialaw.com



NAMWOLF
LAW FIRM MEMBER

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**From:** Kristin Neff <kristin_neff@mnb.uscourts.gov>
**Sent:** Wednesday, February 22, 2023 10:58 AM
**To:** Ken Edstrom <kene@sapientialaw.com>; wrtansey@ravichmeyer.com; Alex Beeby <alexb@sapientialaw.com>; Ted Wagor <tcwagor@ravichmeyer.com>
**Subject:** 21-40882 Cates

Good morning-

The following are dates that the Judge is available for the evidentiary hearing being rescheduled in the above referenced matter.

March 22, 2023 – March 23, 2023
March 23, 2023 – March 24, 2023
March 27, 2023 continuing until March 29, 2023  if necessary.

Please let me know as soon as possible which dates work best for you all.

Kristin Neff
Calendar Clerk to Judge William J. Fisher
U.S. Bankruptcy Court
Hours: 7:30 – 4:00

BEGINNING JANUARY 1, 2023, JUDGE FISHER'S CALENDAR PROCEDURES  AND HEARING NOTICE ARE CHANGING. Click here for more information.

*Please see Judge Fisher's page on the court's website regarding motions, guidelines and procedures at https://www.mnb.uscourts.gov/content/judge-william-j-fisher.*

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Ted Wagor**

| | |
|---|---|
| **From:** | Ted Wagor |
| **Sent:** | Friday, March 3, 2023 10:37 AM |
| **To:** | Ted Wagor |
| **Subject:** | RE: Witnesses unavailable |

**From:** Will R. Tansey <wrtansey@ravichmeyer.com>
**Sent:** Wednesday, March 1, 2023 9:54 AM
**To:** Ted Wagor <tcwagor@ravichmeyer.com>
**Subject:** RE: Witnesses unavailable

Ken, to be clear, we are unavailable because discovery is closed and you are not entitled to further discovery. If you get authority to do further discovery and are entitled to rely on a trial deposition under the rules, we will work with you on a date.

Will Tansey
(612) 317-4760

**From:** Will R. Tansey <wrtansey@ravichmeyer.com>
**Sent:** Tuesday, February 28, 2023, 3:44 PM
**To:** Ken Edstrom <kene@sapientialaw.com>; Ted Wagor <tcwagor@ravichmeyer.com>
**Cc:** Alex Beeby <alexb@sapientialaw.com>
**Subject:** RE: Witnesses unavailable

We don't agree to attend any trial deposition or that they will be available for evidence. We are not available those days. You told us and the court those March days worked and you never disclosed Oppidan witnesses as potential during discovery. You refused to accommodate our request and now make a later and more problematic request. You knew Bigos wasn't here from the beginning.

Will Tansey
(612) 317-4760

**From:** Ken Edstrom <kene@sapientialaw.com>
**Sent:** Tuesday, February 28, 2023 3:35 PM
**To:** Ted Wagor <tcwagor@ravichmeyer.com>
**Cc:** Alex Beeby <alexb@sapientialaw.com>; Will R. Tansey <wrtansey@ravichmeyer.com>
**Subject:** RE: Witnesses unavailable

Ted and Will

I appreciate the heads up, but no, we won't agree to any of your conditions. In our opinion your motion sounds desperate, will be viewed by the court that way and won't be granted but that of course is up to you. We'll respond to the motion of course but in the meantime, I'm going to schedule the trial deposition of one of the Oppidan witnesses for the week of March 6. Let me know if there are dates/times that you are not available.

**Kenneth C. Edstrom\***
Attorney

\*Admitted in Minnesota and Arizona
 Board Certified in Business Bankruptcy by the ABC since 2000

 SAPIENTIA

Kenneth C. Edstrom
120 South Sixth Street, Suite 100 | Minneapolis, MN 55402
**Office:** 612.756.7108
**Cell:** 612.759.3631
f: 612.756.7101
**kene@sapientialaw.com**
 My pronouns are he, him and his
www.sapientialaw.com


NAMWOLF
LAW FIRM MEMBER

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**From:** Ted Wagor <tcwagor@ravichmeyer.com>
**Sent:** Tuesday, February 28, 2023 2:58 PM
**To:** Ken Edstrom <kene@sapientialaw.com>
**Cc:** Alex Beeby <alexb@sapientialaw.com>; Will R. Tansey <wrtansey@ravichmeyer.com>
**Subject:** RE: Witnesses unavailable

Hello Ken,

Medina 55 was planning on filing an expedited motion in limine later this week to exclude the Oppidan witnesses for a number of reasons. Mainly, their testimony is not relevant to any facts in dispute. Their only potentially relevant testimony as to a fact in dispute is the valuation of the Property, but (1) their 9.1.21 Purchase Agreement speaks for itself in that regard, (2) the Court already made a finding and determination as a matter of law that the fair market value of the Property, as of 11.9.21, was the 9.1.21 Oppidan Purchase Agreement amount (Dkt. No. 103); (3) in their verified motion dated 9.8.2, Debtors testified that the FMV of the Property was the same as the 9.1.21 Oppidan Purchase Agreement Amount, and are therefore subject to judicial estoppel; and (4) Debtors never gave us notice that they intended to call anyone from Oppidan, as their interrogatory answers were never supplemented in that regard and Oppidan failed to provide a good faith response to our subpoena. Their testimony is irrelevant, subject to judicial estoppel, prejudicial, a waste of judicial resources and would only serve to confuse the issues in dispute.

That said, however, we'd be willing to work with the Debtors, and forego our motion in limine (but not the objections), either by agreeing to trial depositions or allowing the Oppidan witness to appear by Zoom, IF Debtors agree to allow Mr. Atkinson's deposition to be used for trial or allow him to appear by zoom. We think this is fair given the circumstances.

Please let us know if you guys are willing to agree to these mutual accommodations as soon as possible, as we'll both have to file motions in short order if not.

Thanks,
TED C. WAGOR, ESQ.
O: 612.317.4742
M: 612.875.3657

# RAVICH MEYER

RAVICH MEYER KIRKMAN McGRATH NAUMAN & TANSEY, P.A.
150 SOUTH FIFTH STREET, SUITE 3450
MINNEAPOLIS, MN 55402
WWW.RAVICHMEYER.COM

**From:** Ken Edstrom <kene@sapientialaw.com>
**Sent:** Monday, February 27, 2023 1:48 PM
**To:** Ted Wagor <tcwagor@ravichmeyer.com>; Will R. Tansey <wrtansey@ravichmeyer.com>
**Cc:** Alex Beeby <alexb@sapientialaw.com>
**Subject:** Witnesses unavailable

Both of our Oppidan witnesses are unavailable on the 22nd and the 23rd. I propose that we set a trial deposition sometime in the next couple of weeks for Dave Scott, let me know if you agree with this procedure, thanks.

KCE

**Kenneth C. Edstrom***
Attorney

*Admitted in Minnesota and Arizona
 Board Certified in Business Bankruptcy by the ABC since 2000



Kenneth C. Edstrom
120 South Sixth Street, Suite 100 | Minneapolis, MN 55402
**Office: 612.756.7108**
**Cell: 612.759.3631**
f: 612.756.7101
**kene@sapientialaw.com**
 My pronouns are he, him and his
www.sapientialaw.com



NAMWOLF
LAW FIRM MEMBER

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in

Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

**EXHIBIT G**

Jeff

**Jeff S. Cates**
**President/CEO**
**J.S. Cates Construction Inc.**
**2400 Cates Ranch Drive #100**
**Hamel, MN 55340**
**Office: 763.478.8961**
**Fax: 763.478.8794**
**Cell: 612.701.9980**

**From:** Ryan Dreyer [mailto:RDreyer@morrisonsund.com]
**Sent:** Tuesday, August 24, 2021 3:15 PM
**To:** jeff@jscatesco.com
**Cc:** Jeffrey Underhill
**Subject:** RE: Contact Information

Jeff, I finished my mediation early today and I spoke with Oppidan. They are willing to fund litigation against Atkinson Holdings, LLC. Are you ready to move forward with the Notice to Cancel Purchase Agreement that we have to serve on Atkinson? We're ready to go when you are.

Best regards,

**RYAN R. DREYER**
TEL: (952) 277-0116
rdreyer@morrisonsund.com

**From:** Ryan Dreyer
**Sent:** Monday, August 23, 2021 5:09 PM
**To:** 'jeff@jscatesco.com' <jeff@jscatesco.com>
**Cc:** Jeffrey Underhill <junderhill@morrisonsund.com>
**Subject:** RE: Contact Information

Jeff, thank you for your time today. As we discussed, the first step in this process to cancel the purchase agreement with Atkinson Holdings, LLC is to serve a Notice of Cancellation of Purchase Agreement on Bobby. I have prepared a draft of the Notice of Cancellation and can have that served on Bobby as soon as you are ready to move forward. Service of the Notice initiates a 30-day cancellation period wherein Atkinson Holdings, LLC must either (1) cure any defaults in the PA and close the transaction; or (2) obtain a temporary restraining order ("TRO") from the Hennepin County District Court "staying" (freezing) the 30-day cancellation. If Atkinson Holdings is unable to do 1 or 2 (or both) within the 30-day period, the purchase agreement is cancelled and you keep the earnest money of $100,000.00. Our recommendation is to serve the Notice of Cancelation on Atkinson Holdings, LLC ASAP to initiate the 30-day period and then wait to see what Atkinson does. If we enter a negotiating process, we'll be in a better position with a 30-day clock ticking away.

I would like to review recent communications from Bobby where he sends the proposed amendments to the PA and extensions. Please send to this email address.

I am waiting to connect with Oppidan again to figure out the financial arrangements.

CATES 000512

As we discussed, I will be out of the office at a mediation tomorrow (8/24/21) so we'll catch up on Wednesday.

Best regards,

RYAN R. DREYER
TEL: (952) 277-0116
rdreyer@morrisonsund.com

From: Ryan Dreyer
Sent: Monday, August 23, 2021 1:02 PM
To: 'jeff@jscatesco.com' <jeff@jscatesco.com>
Cc: Jeffrey Underhill <junderhill@morrisonsund.com>
Subject: Contact Information

RYAN R. DREYER
PRINCIPAL

MORRISON SUND PLLC
———— ATTORNEYS AT LAW ————
5125 COUNTY ROAD 101, SUITE 200
MINNETONKA, MN 55345
TEL: (952) 277-0116
FAX: (952) 975-0058

rdreyer@morrisonsund.com

This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.
This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.
This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

CATES 000513



## NOTICE OF CANCELLATION OF PURCHASE AGREEMENT

YOU ARE NOTIFIED:

1. Either a default has occurred or an unfulfilled condition exists in the Purchase Agreement dated **January 31, 2019** in which **Jeffrey Cates** and **Christine Cates**, ("Seller"), agreed to sell to **Atkinson Holdings, LLC**, ("Purchaser"), the real property in **Hennepin** County, Minnesota, legally described as follows:

**Lot 1, Block 1, Cates Ranch Second Addition, Hennepin County**
**PID: 04-118-23-14-0004**

Check here if all or part of the described real property is Registered (Torrens) ☐

Identified in the Purchase Agreement as: **Lot 1, Block 1, Cates Ranch Second Addition, Hennepin County PID: 04-118-23-14-0004**

2. ☒ Seller ☐ Purchaser is serving this Notice of Cancellation ("**Notice**") on the other party, and on **Gibraltar Title Agency, LLC** who is holding the earnest money paid pursuant to the Purchase Agreement.

3. The default or unfulfilled condition which cancelled the Purchase Agreement is Seller's abandonment, fraud, failure to act diligently and in good faith to obtain the requisite government approvals, failure to pay the outstanding purchase price of $4,126,961.00 and failure to comply with Minn. Stat. § 500.24.

THIS NOTICE IS TO INFORM YOU THAT BY THIS NOTICE THE SELLER HAS BEGUN PROCEEDINGS UNDER MINNESOTA STATUTES, SECTION 559.21, TO TERMINATE YOUR CONTRACT FOR THE PURCHASE OF YOUR PROPERTY FOR THE REASONS SPECIFIED IN THIS NOTICE. THE CONTRACT WILL TERMINATE 30 DAYS AFTER SERVICE OF THIS NOTICE UPON YOU UNLESS BEFORE THEN:

(a) THE PERSON AUTHORIZED IN THIS NOTICE TO RECEIVE PAYMENTS RECEIVES FROM YOU:

(1) THE AMOUNT THIS NOTICE SAYS YOU OWE; PLUS

(2) THE COSTS OF SERVICE (TO BE SENT TO YOU); PLUS

(3) $500.00 TO APPLY TO ATTORNEYS' FEES ACTUALLY EXPENDED OR INCURRED; PLUS

(4) FOR CONTRACTS EXECUTED ON OR AFTER MAY 1, 1980, ANY ADDITIONAL PAYMENTS BECOMING DUE UNDER THE CONTRACT TO THE SELLER AFTER THIS NOTICE WAS SERVED ON YOU; PLUS

(5) FOR CONTRACTS, OTHER THAN EARNEST MONEY CONTRACTS, PURCHASE AGREEMENTS, AND EXERCISED OPTIONS, EXECUTED ON OR AFTER AUGUST 1, 1985, $.... (WHICH IS TWO PERCENT OF THE AMOUNT IN DEFAULT AT THE TIME OF SERVICE OTHER THAN THE FINAL BALLOON PAYMENT, ANY TAXES, ASSESSMENTS, MORTGAGES, OR PRIOR CONTRACTS THAT ARE ASSUMED BY YOU);

OR

(b) YOU SECURE FROM A COUNTY OR DISTRICT COURT AN ORDER THAT THE TERMINATION OF THE CONTRACT BE SUSPENDED UNTIL YOUR CLAIMS OR DEFENSES ARE FINALLY DISPOSED OF BY TRIAL, HEARING OR SETTLEMENT. YOUR ACTION MUST SPECIFICALLY STATE THOSE FACTS AND GROUNDS THAT DEMONSTRATE YOUR CLAIMS OR DEFENSES.

**NOTICE OF CANCELLATION OF PURCHASE AGREEMENT**

Page 2 of 3

IF YOU DO NOT DO ONE OR THE OTHER OF THE ABOVE THINGS WITHIN THE TIME PERIOD SPECIFIED IN THIS NOTICE, YOUR CONTRACT WILL TERMINATE AT THE END OF THE PERIOD AND YOU WILL LOSE ALL THE MONEY YOU HAVE PAID ON THE CONTRACT; YOU WILL LOSE YOUR RIGHT TO POSSESSION OF THE PROPERTY; YOU MAY LOSE YOUR RIGHT TO ASSERT ANY CLAIMS OR DEFENSES THAT YOU MIGHT HAVE; AND YOU WILL BE EVICTED. IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE, CONTACT AN ATTORNEY IMMEDIATELY.

4  The name, address and telephone number of the party serving this Notice or of an attorney authorized by that party to serve this Notice is:

Name:  **Ryan R. Dreyer, Esq.**
☐ Party serving   ☒ Attorney for party serving

Address:
**Morrison Sund PLLC**
**5125 County Road 101, Suite 200,**
**Minnetonka, MN 55345**
**rdreyer@morrisonsund.com**

Telephone Number:  **952-975-0050**

THIS INSTRUMENT WAS DRAFTED BY:
**MORRISON SUND PLLC**
**5125 County Road 101, Suite 200,**
**Minnetonka, MN 55345**
**RRD**

Note:  Affidavit of Service and Cancellation to follow on subsequent page(s).

CATES 000515

Page 3 of 3

## AFFIDAVIT OF SERVICE AND CANCELLATION

State of Minnesota, County of **Hennepin**

**Ryan R. Dreyer, Esq.**, being duly sworn on oath says that:

I am the person named above as the party serving the Notice, or the attorney authorized by the party who is serving the Notice; that I caused the Notice to be personally served on the other party; that the other party neither complied with the actions required in the Notice, if applicable, nor obtained a court order suspending the cancellation within the statutory time, and that the property is residential real property. I make this affidavit for the purpose of providing proof of the service of the Notice, canceling the described Purchase Agreement, and demanding that the person holding the earnest money release the earnest money to the party initiating the cancellation.

_____

**Ryan R. Dreyer, Esq.**

Signed and sworn to before me on **August ___, 2021** by **Ryan R. Dreyer, Esq., attorney for Sellers**.

(Stamp)

_____
(signature of notarial officer)

Title (and Rank): _____

My commission expires: _____
                                              (month/day/year)

CATES 000516

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Jeffrey Cates and Christine Cici-Cates,

     Debtors.

Bankruptcy Case No. 21-40882
Chapter 11

## MEMORANDUM OF LAW

Media 55, LLC ("Media 55"), hereby submits its Memorandum of Law in support of its Motion for an Expedited Hearing to Exclude Witnesses and Evidence, filed herewith (the "Motion").

## FACTUAL BACKGROUND

The factual basis is as set forth in the Motion and incorporated herein. Capitalized terms not otherwise defined herein are used in accordance with the meaning ascribed to them in the Motion, and references to Exhibits herein are those attached to the Motion.

## LEGAL ARGUMENT

### I.     Standard of Review.

"Motions in limine operate to narrow the evidentiary issues for trial, eliminate unnecessary trial interruptions, and minimize error that might prejudice the substantial rights of a litigant." Federal Trial Handbook: Civil, *The motion in limine* § 7:4 (West, 2022-2023 Ed.) (collecting cases). A court's decision on a motion to limine will only be overturned for abuse of discretion. *See Camp v. Carmike Cinemas*, 126 F. App'x 334, 335 (8th Cir. 2005) (citations omitted).

The basis for such motions is founded upon the Federal Rules of Evidence and the

{00599899 }

discovery rules in the Federal Rules of Civil Procedure. *See e.g., Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 648 (8th Cir. 2009) (exclude witnesses on relevancy grounds); *Camp*, 126 App'z at 335 (upholding exclusion of witness on relevancy grounds and failure to disclose witnesses in discovery); *accord Watkins Inc. v. McCormick & Co., Inc*., No. 15-CV-2688 (DSD/ECW), 2023 WL 1777474 (D. Minn. Feb. 6, 2023) (applying Rule 37(c)(1) to exclude witnesses for failure to disclose them in discovery); *In re RFC & ResCap Liquidating Tr. Action*, No. 13-CV-3451 (SRN/HB), 2018 WL 4863597, at *9-10 (D. Minn. Oct. 8, 2018) (excluding evidence under Fed. R. Evid. 401 and 403). These rules and the ability to exclude evidence through motions in limine apply to bankruptcy proceedings as incorporated through Fed. R. Bankr. P. 9014 and 9017.

In this case, the exclusion of the Oppidan witnesses listed on Debtors Witness List, [Dkt. No. 284], is warranted because Debtors failed to disclose those witnesses in its discovery responses, prejudicing Medina 55's discovery rights and ability to prepare for the evidentiary hearing.  This is especially true for any purported expert testimony to be provided by the Oppidan witnesses regarding the valuations of the Debtors' properties, which should also be excluded on grounds of judicial estoppel.  Lastly, the witnesses should be excluded because the majority of their anticipated testimony, other than their potential expert testimony, is irrelevant to the facts in dispute.

## II.   The Oppidan Witnesses should be Excluded Pursuant to Fed. R. Civ. P. 37(c)(1), Because Debtors Failed to Disclose Those Witnesses in Discovery, Prejudicing Medina 55.

Under Fed. R. Civ. P. 26(e), the parties have a continuing duty to supplement their discovery responses. If a party fails to supplement its discovery responses to identify potential witnesses in violation of this Rule, Fed. R. Civ. P. 37(c)(1) states that the violating party "is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless," and may be subject to additional sanctions. *Id*.

"Because Rule 37(c) sanctions are mandatory, the rule contains exceptions for 'substantially justified' or 'harmless' violations to avoid unduly harsh penalties that may result from an inflexible application of the Rule." *Watkins*, WL 1777474, at *2 (D. Minn. Feb. 6, 2023) (quotation omitted).  For this reason, courts consider four factors to determine whether a Rule 26 violation was "substantially justified" or "harmless": "(1) the importance of the excluded material or witness; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used; and (4) the availability of a continuance to cure such prejudice." *Id*. (cleaned up).  All of these factors weigh in favor of excluding the Oppidan Witnesses.

As to factors (1) and (3) above, the Oppidan witnesses' anticipated expert testimony regarding the valuation of the properties goes to the heart of Medina 55's damages claim, and would be highly prejudicial to Medina 55 if allowed.  Indeed, Debtors never identified the Oppidan witnesses in their discovery responses, and although Medina 55 subpoenaed Oppidan for documents supporting its valuation of the properties, Oppidan's production did not include any valuation documents, e.g., no appraisals, no sales comparison data, no price per square foot, etc.  Because Oppidan did not provide any documents that could be used to support a fair market valuation of the properties, and because Debtors gave no indication that it would call Oppidan as a witness, Medina 55 elected not to pursue further discovery from Oppidan and obtained its own valuation for the properties. (*See* **Exhibit D**) (expert disclosure notice and Broker Opinion of Value).  Discovery is now closed, however, prejudicing Medina 55's ability to investigate

and examine the veracity of the Oppidan witnesses' knowledge and anticipated testimony.

The inability to adequately conduct discovery of the Oppidan witnesses seriously prejudices Medina 55. The fact that Medina 55 knew of and subpoenaed Oppidan is not of consequence for Rule 37 purposes. *See Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir.2002) (affirming trial court's exclusion of defendant's witnesses because they were not disclosed as potential witnesses, even though the names of witnesses were referenced somewhere during discovery process). Had Medina 55 been aware that the Oppidan witnesses would be used to provide expert testimony as to the valuation of the properties, Medina 55 would have brought a motion to compel to obtain the supporting documents from Oppidan and likely deposed their witnesses. Presently, Medina 55 has no idea what these witnesses will testify to in regard to valuations, especially when they agreed to a contract price of $10,230,00, which Debtors previously testified, and the Court found as a matter of law, was the fair market value for the properties. [Dkt. Nos. 46 and 103]. Medina 55 should not be left in a position of surprise. For all these reasons, factor (1) and (3) heavily weigh in support of excluding the Oppidan witnesses.

With respect to factors (2) and (4), Oppidan has provided no explanation for failing to disclose the Oppidan witnesses in discovery, and a continuance would not remove the harm to Medina 55 as discovery is closed. This case is ready for the evidentiary hearing, and continuing the matter further to allow Medina 55 to conduct additional discovery would cause additional costs and delay, further prejudicing Medina 55. *See, e.g., Watkins Inc. v. McCormick & Co., Inc.*, No. 15-CV-2688 (DSD/ECW), 2023 WL 1777474, at *7 (D. Minn. Feb. 6, 2023) ("The Court cannot justify reopening discovery at this point to address Plaintiff's unjustified failure to disclose Karau when doing so would require Defendant to incur additional costs and likely

require a continuance of the trial.").

Additionally, due to the recent unavailability of the Oppidan witnesses, [*See* Dkt. No. 209], they will be separately testifying after the evidentiary hearing at a date not yet determined, which, if allowed, will further prejudice Medina 55.  Beyond the added costs and delay, the time in between the evidentiary hearing and when the Oppidan witnesses will be called to testify, gives Debtors the significant advantage of being able to thoroughly digest and analyze the testimony and evidence presented at the hearing, and use that to prepare the Oppidan witnesses prior to their testimony.  This affords Debtors the ability to come up with additional rebuttal arguments to attempt to poke holes in any prior testimony, which they otherwise would not have had the ability to do.  Debtors should not be afforded this advantage, especially when they failed to comply with the discovery rules.

For the forgoing reasons, the Oppidan Witnesses should be excluded from testifying at the evidentiary hearing pursuant to Fed. R. Civ. P. 37(c)(1), as Debtors' failed to identify them in their discovery responses in violation of Fed. R. Civ. P. 26(e), and that failure was not "substantially justified" or "harmless."  Excluding the witnesses also removes any prejudice to Medina 55 occasioned by giving Debtors significant, additional time to analyze prior testimony and prepare those witnesses.

### III.    The Oppidan Witnesses Should Also be Excluded Pursuant to Fed. R. Evid. 401 and 403.

Under Fed. R. Evid. 401, evidence that is not "of consequence in determining the action" is irrelevant and should be excluded.  Similarly, under Fed. R. Evid. 403, evidence that lacks probative value and would lead to "unfair prejudice, confusing the issues, undue delay, and wasting of time" should be excluded.  *Id*. (cleaned up).  In this case, given the stipulated evidence

and limited facts at issue, the Oppidan witnesses' purported testimony – except as to the valuation of the properties, which should be excluded above – is entirely irrelevant and would only confuse the issues and cause undue delay and a waste of time.

This is a breach of contract case between Medina 55 and Debtors; the contract being the purchase agreement dated January 1, 2019, as amended (the "Medina 55 Contract").  (*See* Joint Exhibits 61-A through 61-E).  The facts in dispute are whether Debtors breached the Medina 55 Contract, or whether Medina 55 anticipatorily breached the same, and the amount of damages. In that regard, the parties have already stipulated to the admission of all the exhibits needed to prove their claims. Yet, the Debtors seek to call the Oppidan Witnesses to testify regarding (1) Oppidan's due diligence in performing under the Oppidan Contract, (2) the history Oppidan's interactions with the City of Medina, and (3) the changes to the Oppidan Contract.  None of this is "of consequence in determining the action" and is therefore irrelevant under Fed. R. Evid. 401, and allowing such testimony would only "confuse the issues" and be a "waste of time" under Fed. R. Evid. 403.

Indeed, Oppidan's due diligence efforts, interactions with the City, and reasons for changing its contract with Debtors, have no bearing on whether Medina 55 or Debtors breached the Medina 55 Contract. And even if Medina 55 is wrong in that regard, and the above anticipated testimony would be relevant to the issues in this case, it would then be highly prejudicial to Medina 55 as discussed above, because Medina 55 did not have the opportunity to adequately conduct discovery into those matters, and should be excluded under Fed. R. Civ. P. 37(c)(1), or on unfair prejudice grounds under Fed. R. Evid. 403.  Any way you look at it, the testimony of the Oppidan witnesses is either relevant but unduly prejudicial to Medina 55, or irrelevant and would result in a confusion of the issues and a waste of time.  In either case, the

circumstances are such that the Oppidan witnesses should be excluded from being able to testify in this matter.

### IV.    The Debtors Should be Judicially Estopped from Presenting Contradictory Evidence of the Fair Market Valuations of Their Properties.

"[J]udicial estoppel is limited to those instances in which a party takes a position that is clearly inconsistent with its earlier position." *Hossaini v. W. Missouri Med. Ctr.*, 140 F.3d 1140, 1143 (8th Cir. 1998) (citation omitted).  "The underlying purpose of the doctrine is to protect the integrity of the judicial process." *Id*. (quotation omitted). This is especially true "where the allegedly inconsistent prior assertion was accepted or adopted by the court in the earlier [proceeding]." *Id*. (citation omitted).  Federal courts in Minnesota have applied judicial estoppel to exclude the presentation of testimony or evidence when the following elements are met:

> First, the party presenting the allegedly inconsistent theories must have prevailed in its original position (a litigant is not forever bound to a losing position). Second, there must be a clear inconsistency between the original and subsequent position of the party. Finally, there must not be any distinct or different issues of fact in the proceedings.

*N. Cent. Companies, Inc. v. Minerva Dairy, Inc.*, No. 16-CV-3816 (PJS/HB), 2018 WL 4181605, at *5 (D. Minn. Aug. 31, 2018) (applying Minnesota state law in a "text book" case of judicial estoppel).  This, too, is a "text book" case of judicial estoppel, satisfying all the above elements and barring the Debtors from calling the Oppidan witnesses – or any witness – to testify to a different fair market valuation of the properties that what it testified to in the fall of 2021: $10,230,000.

As the first element, the Debtors previously testified before this Court in its September 8, 2021, verified motion to approve the sale of the properties to Oppidan, that the Oppidan Contract price of $10,230.000 was the "fair market value" for the properties. [Dkt. No. 46, at ¶

21].  Relying on this testimony, the Court made a finding of fact that this was the fair market value for the properties in its November 9, 2021, Order Approving the Sale to Oppidan. [Dkt. No. 103].  This element is undisputedly satisfied.

As to the second and third elements, the fair market value of the properties at the time the Medina 55 Contract was breached, is part of the damages calculation in this case. *See Costello v. Johnson*, 265 Minn. 204, 209, 121 N.W.2d 70, 74 (1963) (explaining that the measure of damages in these cases is "the difference between the contract price and the actual or market value of the property at the time of the breach . . .").  Therefore, the fair market value of the properties in the fall of 2021, which is when Medina 55 contends Debtors breached its contract, is in no way distinct from the Debtors' testimony in September 2021, [Dkt. No. 46], and the Court's finding of fact on November 9, 2021, [Dkt. No. 103], regarding the fair market value of the properties at those times.  The properties' fair market value in the fall of 2021 is not something that can be changed.

Consequently, Debtors should be judicially estopped from being able to present any testimony or evidence at the evidentiary hearing, including by way of the Oppidan witnesses, that contradicts or is inconsistent with its fair market valuation testimony made in September 2021.  To do so would "undermine the integrity of the judicial process" and could lead to inconstant findings of fact by the Court.

## CONCLUSION

Based on the foregoing, Medina 55 hereby requests that the Court grant the relief sought by the Motion, and exclude the Oppidan witnesses from testifying in this matter and barring Debtors from presenting any contradictory evidence of the fair market value of the properties in the fall of 2021.

8

Dated: March 6, 2023

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A PROFESSIONAL ASSOCIATION

By: /e/  *Will R. Tansey*
     Will R. Tansey (#323056)
     Ted C. Wagor (#0396347)

150 South Fifth Street, Suite 3450
Minneapolis, MN  55402
(612) 332-8511 - Telephone
(612) 332-8302 – Facsimile

ATTORNEYS FOR MEDINA 55, LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

|  |  |
|---|---|
| Jeffrey Cates and Christine Cici-Cates, | Bankruptcy Case No. 21-40882 |
|  | Chapter 11 |
| Debtors. |  |

## UNSWORN CERTIFICATE OF SERVICE

I, Will R. Tansey, declare under penalty of perjury that on March 6, 2023, caused the following document(s) to be served:

1.    Notice of Motion and Motion for Expedited Hearing to Exclude Witnesses;
2.    Memorandum of Law; and
3.    Proposed Order,

by sending true and correct copies via ECF to the following parties:

- **Alexander J. Beeby**    alexb@sapientialaw.com
- **Kenneth C. Edstrom**    kene@sapientialaw.com, kathyl@sapientialaw.com;alexb@sapientialaw.com
- **Daniel R. Gregerson**    dangregerson@grjn.com
- **Richard G Jensen**    rjensen@fwhtlaw.com, hhawkinson@fwhtlaw.com
- **Mary Jo A. Jensen-Carter**    maryjo@buckleyjensen.com, cassiewarner@buckleyjensen.com;trustee@buckleyjensen.comcastbiz.net;MN01@ecfcbis.com
- **Steven B Nosek**    snosek@noseklawfirm.com, loriadamson@noseklawfirm.com
- **Gregory S. Otsuka**    gotsuka@larkinhoffman.com, aschaal@larkinhoffman.com,mroeglin@larkinhoffman.com,bankruptcy@larkinhoffman.com
- **David E. Runck**    david.runck@fmjlaw.com, sherri.debettignies@fmjlaw.com
- **Nicholas J. Sideras**    nsideras@grjn.com
- **Mary Sieling**    mary@mantylaw.com, erica@mantylaw.com;MN27@ecfcbis.com
- **US Trustee**    ustpregion12.mn.ecf@usdoj.gov
- **Sarah J Wencil**    Sarah.J.Wencil@usdoj.gov

Dated: March 6, 2023              By: /e/  Will R. Tansey _____

{00599923 }

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Jeffrey Cates and Christine Cici-Cates,

    Debtors.

Bankruptcy Case No. 21-40882
Chapter 11

## ORDER

This matter came before the Court on Medina 55, LLC's ("Medina 55's") motion to exclude witnesses and evidence filed March 6, 2023 (the "Motion"). After appropriate notice and hearing and based on the evidence and record in this matter:

IT IS HEREBY ORDERED:

1.      Expedited relief is granted.

2.      Medina 55's Motion is granted. The Debtors shall not be permitted to call any witnesses from Oppidan Holdings, LLC at the scheduled evidentiary hearing.

3.      The Debtors shall also not be permitted to present any evidence or testimony at the scheduled evidentiary hearing that contradicts Debtors' fair market value testimony in its verified motion filed September 8, 2021, [Dkt. No. 46], and as found by the Court in its November 9, 2021, Order. [Dkt. No. 103].

Dated: 

_____
William J. Fisher
United States Bankruptcy Judge

{00599938 }