UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Jeffrey Scott Cates and | Case No. 21-40882 WJF |
| Christine Therese Cici-Cates | |
| Debtor(s). | Chapter 11, Sub. V |

RESPONSE TO MEDINA 55'S
EXPEDITED MOTION TO EXCLUDE WITNESSES AND EVIDENCE

Debtors Jeffrey Scott Cates and Christine Therese Cici-Cates ("Debtors" or the "Cates") provide this response in opposition to the Expedited Motion to Exclude Witnesses and Evidence [ECF 292], filed by Medina 55, LLC ("Medina 55").

Debtors respectfully ask the Court to deny Medina 55's motion and, instead, to permit the Court to hear, weigh, and consider all of the evidence, testimony, and issues determinative of Debtors' motion objecting to Medina 55's claim.

Debtors' claim objection essentially raises two key questions for the Court to decide at trial:

(1) Were Debtors excused from their purchase agreement with Atkinson/Medina 55 prior to August of 2021 by the buyer's prior breach of the agreement or due to impossibility of performance of the agreement; and

(2) *If Debtors were not excused*, what amount of damages should be approved for Medina 55's claim, which Medina 55 asserts depends on determining the fair market value of the subject properties as of September 1, 2021.

Medina 55's motion seeks to prevent the Court from hearing evidence directly relevant to both of these issues. Further, despite having ample opportunity to present these issues to the Court on full and proper notice, Medina 55 deliberately seeks last-minute, expedited consideration. These efforts should be denied, and the Court should be able to weigh all of the evidence through trial and consider relevant issues on full and proper post-trial briefing.

## BACKGROUND

### A. Medina 55's Claim

On October 25, 2021, Medina 55 filed a claim in this bankruptcy in the amount of $1,341,486.07. [Claim No. 20 (the "Claim").] The Claim asserts that Medina 55 is entitled to damages for breach of a purchase agreement for two properties owned by Debtors. [Claim No. 20-1.] The Claim alleges that Debtors breached the purchase agreement when the Court approved Debtors' rejection of the purchase agreement on October 13, 2021. [*Id.*] The Claim alleges that, as damages, Medina 55 is entitled to an amount equal to the difference between the purchase agreement price (~$9.175 million) and the fair market value of the subject properties at the time of the breach. [*Id.* at 2–3.] As evidence of this fair market value, Medina 55 points to a contingent value Oppidan Holdings, LLC ("Oppidan") agreed to pay if certain conditions, including government approvals, could be met by a specified date. [*Id.* at 8.] *In addition*, Medina 55 claims that it is *also* entitled to "out of pocket costs" incurred as a result of the purchase agreement. [*Id.* at 3.]

B.   **Debtor's Objection to Medina 55's Claim**

Debtors filed a motion objecting to the Claim on August 12, 2022. [ECF No. 196 (the "Objection").] Among other reasons, Debtors assert that Medina 55's claim should be denied because Debtors were excused from the purchase agreement prior to the alleged breach and that Medina 55, therefore, has no right to rejection damages. [Objection at 8; ECF No. 283 ("Hr'g Br.") at 5–9.]

For example, Medina 55, though its principal Bobby Atkinson ("Atkinson") and its predecessor-in-interest Atkinson Holdings, LLC ("Atkinson Holdings") (collectively with Medina 55, "Buyer"), rendered performance of the purchase agreement impossible by refusing to pursue government-approval contingencies in good faith, as required by the purchase agreement. [Hr'g Br. at 5–9; *see also* J. Ex. 61-B, Part 3.1.5 ("Buyer shall act diligently and in good faith to obtain the requisite government approvals."); ECF No. 281 ("Fact Stip.") ¶ 22 (citing to the same).] Despite being obligated to pursue such government approvals *for over two years*, Buyer failed to file a complete application or appear at any public hearing for to obtain government approvals. [*See* Fact Stip. ¶¶ 31, 32, 69.] In addition to affirmatively refusing to proceed with government approvals unless Debtors agreed to yet another extension and to the sale of their homestead [Fact Stip. ¶¶ 49, 54, 59, 60, 61, 62, 63], Debtors explain that Oppidan's progress in obtaining government approvals further demonstrates Buyer's failure to pursue the same in good faith. [Hr'g Br. at 6–9.]

Debtors also argue that, even if Medina 55 was entitled to rejection damages, it is not entitled to anywhere near the $1.3 million it seeks. [Objection at 16–19;

3

Hr'g Br. at 9–15.] Among other reasons, Debtors explain that the amount Oppidan had agreed to pay *if and when multiple major contingencies were met* does not represent the fair market value of the subject properties in October of 2021. [Hr'g Br. at 11–12.] Debtors also explain that Medina 55 could have mitigated its damages by either outbidding Oppidan or by purchasing CRP No. 3 after Oppidan cancelled its purchase agreement as to that property. [Hr'g Br. at 14–15.]

    C.   **Oppidan Witness**

David Scott ("Scott") is Vice President and general counsel for Oppidan. [Declaration of David Scott in Support of Debtors' Response to Medina 55' Motion in Limine ("Scott Decl.").] Scott has extensive experience in the purchase of properties like Debtors for development and, therefore, direct knowledge of the price and conditions at which a buyer would be willing to purchase such properties. [*Id.* ¶ 3.] Scott has extensive experience with the work necessary to obtain government approvals for development of such properties. [*Id.* ¶ 5.] Scott has been directly involved with Oppidan's purchase agreements with Debtors for the subject properties, including negotiating each contingent purchase price. [*Id.* ¶ 4.] Scott has also been involved with Oppidan's good-faith efforts to obtain the governmental approvals necessary to develop Debtor's properties. [*Id.* ¶ 6.] Neither Scott nor Oppidan have any agreement to pay for Debtors' litigation of the Objection to Medina 55's Claim. [*Id.* ¶¶ 8, 10.] Neither Scott nor Oppidan have any agreement to pay Debtors any more or less based on the outcome of Debtors' Objection. [*Id.* ¶¶ 9, 10.]

4

On behalf of Oppidan, Scott signed the Oppidan purchase agreement, dated September 1, 2021 [*see* ECF No. 82 at 38], approved by the Court on November 9, 2021 [ECF No. 103], and relied upon by Medina 55 as evidencing the value of the subject properties [Mot. at 74]. The purchase price in this agreement was expressly contingent upon, among other things, obtaining government approvals deemed necessary by Oppidan. [ECF No. 82 at 38.] These contingencies were never met, and this sale was never closed. [*See* ECF No. 175 at 2.] Instead, Oppidan and Debtors entered into a subsequent purchase agreement for only one of the subject properties, for the contingent purchase price of approximately $4.5 million. [*See generally id.* at 18–28.] Scott also this purchase agreement on behalf of Oppidan. [*Id.* at 28.] The Court approved this purchase agreement on May 31, 2022. [ECF No. 184.] The Court subsequently approved, on December 15, 2022, an "Amended New Agreement" between Oppidan and Debtors further reducing the contingent purchase price of CRP No. 2. [ECF No. 249.] Scott also signed the Amended New Agreement on behalf of Oppidan. [ECF No. 233 at 30.] Debtors and Scott expect this purchase agreement to close successfully around May of 2023, after the City of Medina has approved modifications to the city's comprehensive plan and the rezoning of CRP No. 2. [Scott Decl. ¶ 7.]

D.  **Procedural Posture and Timeline of Relevant Communications**

On September 26, 2022, the Court issued an order setting an evidentiary hearing regarding Debtor's Objection to Medina 55's Claim. [ECF No. 206.] This order established an initial discovery schedule and deadline for disclosing witnesses. [*Id.*] This order was amended several times, eventually extending the

5

discovery deadline to January 16, 2023, and the witness disclosure deadline to February 20, 2023. [ECF No. 239.]

In response to an interrogatory from Medina 55 requesting the identity of Debtors' planned witnesses, Debtors answered:

> No decision has been made but likely Debtors, Robert Atkinson and Rose Lursong.

[Beeby Decl., Ex. A.] This response clearly left open the possibility of offering additional witnesses.

Matters pertaining to Oppidan were a subject of discovery from the start. For example, Medina 55's Interrogatories include multiple questions directly pertaining to Oppidan, including regarding Oppidan's efforts to obtain governmental approvals for the development of the subject properties. [*Id.*] According to the Motion, Medina 55 subpoenaed Oppidan in September of 2022, regarding, among other things, information about Oppidan's valuation of the subject properties. [Mot. at 3–4, 55.] The Joint Stipulation of Exhibits include several exhibits offered by Medina 55 pertaining to Debtors' purchase agreements with Oppidan and Oppidan's efforts to obtain government approvals for the development of the subject properties. [*See, e.g.*, ECF No. 282, J. Ex. 121–123.]

Based on the number of facts at issue on which Scott could offer testimony, both from direct, personal knowledge and as an expert, Debtors eventually decided to offer Scott's testimony. In accordance with the Court-established deadline, Debtors included Scott in their list of witnesses, filed February 20, 2023, identifying the following "Subject of Testimony":

> General Counsel of Oppidan Holdings, LLC to testify about due diligence of Oppidan in performing the September 1 2021 contract with the Debtors, the history of the interactions with the City of Medina, the changes in the contract, and opinion as to the value of CRP 2 and CRP 3.

[ECF No. 284.]

In anticipation of the evidentiary hearing then scheduled for February 23, 2023 [ECF No. 239], Medina 55 had filed a motion seeking to avoid Atkinson from having to come to Minnesota to defend the Claim. [ECF No. 278.] Debtors objected, noting that Atkinson provided no reason for refusing to appear but instead had indicated that Atkinson would not even agree to appear if the hearing was continued by agreement of Debtors. [ECF No. 280.] As it happened, nature intervened, and the Court continued the evidentiary hearing to March 22 and 23, 2023, by order dated February 27, 2023. [ECF No. 288.]

After the hearing was rescheduled, Debtors learned that neither Scott, nor an alternate witness from Oppidan would be available on those two dates. [*See* ECF No. 290.] Debtors notified counsel for Medina 55 of this situation and suggested scheduling a trial deposition sometime in the three weeks prior to the rescheduled hearing date. [Beeby Decl., Ex. B.] In response, and over a week after Debtors filed their witness list, Medina 55 raised a concern for the first time about having any witness from Oppidan testify. [*Id.*] However, Medina 55 said that they would agree to forego a motion in limine and would accommodate Debtors' request if Debtors would agree to let Atkinson out of coming to Minnesota to defend the Claim:

> That said, however, we'd be willing to work with the Debtors, . . . IF Debtors agree to allow Mr. Atkinson's

7

deposition to be used for trial or allow him to appear by zoom.

[*Id.*] Debtors rejected Medina 55's threat and again offered to schedule a deposition of an Oppidan witness prior to the trial date, which Medina 55 refused. [*Id.*]

In an attempt to resolve the scheduling of the Oppidan witness, Debtors filed a letter with the Court, informing it of the situation and suggesting a status conference. [ECF No. 290.] In response the Court set an additional continued trial date for March 27, 2023, at which Scott will appear to testify.

On March 6, 2023, Medina 55 filed the pending unverified Motion. [ECF No. 292.] The Motion seeks to preclude the Court from hearing (1) any evidence from Debtors regarding the fair market value of the subject properties or (2) any testimony from Scott or any other Oppidan witness. [*Id.*] Rather than file the Motion on regular notice to be heard at the commencement of the hearing already scheduled, Medina 55 opted, without reason, for an expedited March 15, 2023, hearing date on the motion. [*Id.*] Debtors' file this objection to the Motion, and ask that the Court be permitted to hear and weigh all the evidence and arguments relevant to Debtors Objection to Medina 55's Claim.

## DISCUSSION

Because this motion is expedited and Debtors were prevented from having the opportunity to respond more fully, this section provides an abbreviated discussion of (1) Medina 55's failure to offer any grounds for expedited relief, (2) Medina 55's improper and unsupported attempt to seek summary judgment, and

8

(3) Medina 55's disingenuous objection to a witness whose opinion it seeks to misconstrue to its own ends.

## I. There are no grounds for providing expedited relief.

Local Rule 9006-1(b) requires motions such as Medina 55's to be filed and served with at least fourteen days' notice. If expedited relief is desired, the motion must request such relief, Local Rule 9006-1(e), and show cause warranting expedited relief. Bankr. R. 9006(c)(1).

The only reason for seeking expedited relief provided in Medina 55's unverified[1] motion is "the late notice of undisclosed witnesses by Debtors and the timing of the evidentiary hearing." [Mot. at 6.] However, as to Medina 55's attempt to exclude all evidence from Debtors pertaining to value, there is no reason Medina 55 could not have prepared and brought such a motion in preparation for the prior February 23, 2023, trial date. Indeed, as explained below, the proper time to bring their summary-judgment argument would have been by the January 30, 2023, motion deadline. [ECF No. 239 ¶ 2.] Even as to Scott, Medina 55 had time to prepare their motion sufficiently to file it more than two weeks prior to the trial as currently scheduled. Hearing the motion at the beginning of the trial would not have required expedited relief and would still have been nearly a week before the witness in question is scheduled to be heard. The only result of seeking expedited relief is that the time for Debtors to prepare this response is abbreviated.[2] That

---

[1] The Motion could also be denied because it relies upon contested facts. Local Rule 9013-2(a).
[2] Indeed this motion only serves to unnecessarily increase the administrative expenses of this bankruptcy estate and, since Medina 55 seeks attorney fees as part of its claim, further bloat its claim of out-of-pocket damages.

9

said, the Motion can be denied on its merits, which further demonstrates that there is no cause for granting Medina 55 expedited relief.

## II. Summary judgment on fair market value is not proper or warranted.

Medina 55's motion as to the issue of valuation is an improper attempt at summary judgment. The very fact that Medina 55 seeks effective summary judgment on this issue by contested motion demonstrates that it is an issue in dispute. The proper time to have brought such a motion was prior to the January 30, 2023, motion deadline. [ECF No. 239.]

### A. If the Court allows Medina 55 to pursue this late-filed and unnecessarily expedited motion, Medina 55's motion should be denied on the merits. Judicial estoppel is not appropriate to the issue of fair market value.

Medina 55 argues that the issue of the fair market value for the subject properties is conclusively determined as a matter of law by principles of judicial estoppel. This argument misunderstands judicial estoppel and mischaracterizes the very documents upon which they rely.

Judicial estoppel is an equitable form of relief, which is not reducible to a generic formulation, but often includes consideration of three factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

10

*Stallings v. Hussman Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). Judicial estoppel is invoked only to prevent a miscarriage of justice, not to bind someone to a fact that is clearly incorrect—even if previously stated in inadvertent error. *New Hampshire*, 532 U.S. at 1049.

Here, Medina 55's attempt to invoke judicial estoppel fails for several reasons. For example, Medina 55 points to representations made by Debtors in a verified motion [Mot. at 9 (referring to ECF No. 46)] that was subsequently withdrawn. [ECF No. 78.] In addition, the Court's purported "adoption" of Debtors' alleged statement regarding value cited by Medina 55 [Mot. at 9 (referring to ECF No. 103)] has already been amended several times under circumstances that demonstrate that the Court has not been mislead but rather fully understands the nature of the "value" adopted in those orders. [*See, e.g.*, ECF Nos. 184, 249.] In addition, Medina 55's mischaracterization of the statements of "value" themselves demonstrate that it would be a miscarriage of justice to bind Debtors' estate to Medina 55's manifestly incorrect interpretation.

### B. The statements do not assert "fair market value."

According to the definition for use in Federally regulated appraisals, "Fair Market Value" of real estate is an amount that a willing and reasonable buyer would pay a willing and reasonable seller in cash equivalent in exchange for transfer of title as of a specific effective date, as is and *without* any unusual financing or other conditions. 12 C.F.R. § 34.42(h). [*See also* J. Ex. 66 at CATES 921 (appraisal citing to this definition); J. Ex. 67 at CATES 1028 (appraisal citing to

11

substantially the same definition from Dictionary of Real Estate, Fifth Edition, 2010).][3] Medina 55 misquotes Debtors' motion and the Court's order as saying that the amount stated is the "fair market value" of the subject properties. [Mot. at 9.] In fact, the order cited by Medina 55 does not make any finding of "Fair Market Value," instead it states:

> The Purchase Price of $10,230,000.00 constitutes fair value for the Sales Properties.

[ECF No. 103.]

This is an important distinction, because the sale being approved was contingent on multiple factors before such a price could be paid. Accordingly, it could not be a finding of "Fair Market Value." Instead, it is a finding that $10.23 million would be a fair value for the estate to receive in exchange for the properties when and if the sale could be closed according to the terms of the purchase agreement. These terms assume the properties *are not* sold as-is but are, instead, subject to three separate items of governmental approval:

1   Inclusion of the land in the City of Medina's comprehensive development plan;

2   Rezoning of the land from agricultural to industrial; and

3   Approval of a specific site plan for the use of the property.

[ECF No. 82 at 38.] Of course, this never happened, and the purchase agreement and order, including this finding, have had to be amended multiple times. [*See, e.g.*,

---

[3] These two Joint Exhibits can also be found at ECF No. 122.

ECF Nos. 184, 249.] Indeed, subsequent facts have shown that the City of Medina will not allow one of those properties to be developed.

Debtors never stated that the amounts in the various motions to approve its purchase agreements with Oppidan represented a "Fair Market Value" of the properties as-is. This is particularly true when fair market value appraisals of these same properties that Debtors included in support of their plan of reorganization (also subsequently approved in modified form) appraised the two properties with a total fair market value of under $3 million. [*See* ECF No. 122 at 31–32 (appraising CRP No. 3 with a fair market value of $1,070,000, effective Feb. 21, 2017), 91–93 (appraising CRP No. 2 with a fair market value of $1,100,000, effective Jan. 22, 2020).]

It would be manifestly unjust to conclude that the amount at which Oppidan was willing to pay for properties only when and if they were included in the comprehensive plan and rezoned with a specific site plan specifically approved was the Fair Market Value of those properties on September 1, 2021, when the properties were zoned as rural residential and not included in the City of Medina's comprehensive plan for development. While it is true that the Court need not reach the issue of valuation if it concludes that Debtors were excused from performance under the purchase agreement by Buyer's prior breach, the Court may consider such arguments after weighing the evidence presented at trial and receiving post-trial briefing.

13

### III. The Court should not be prevented from hearing Scott's testimony.

Debtors complied with the Court's witness disclosure deadline, and Medina 55 received reasonable notice of Scott as a potential witness.

Exclusion of a key witness is not appropriate where a party disclosed the witness in accordance with the Court's deadline or the opposing party was not harmed by the timing of the disclosure. *See* Fed. R. Civ. P. 37(c)(1), appl. by Bankr. R. 7037, 9014(c). Typical rules regarding disclosure of expert witnesses are not applicable to contested matters, such as this. Bankr. R. 9014(c). Instead, the Court established the deadline for the parties to disclose witnesses in this matter. [*See* ECF No. 206, amended by ECF No. 239.]

Here, Debtors included Scott in their timely witness list, filed Feb. 20, 2023. [ECF No. 284.] Prior to this, Debtors had explicitly left open the possibility of calling witnesses beyond those specified in their answer to Medina 55's interrogatory. [Beeby Decl., Ex. A.] In addition, Medina 55 should have known from the start that someone from Oppidan, and Scott in particular, could be called as a potential witness, because Scott, Oppidan, and facts associated directly therewith were a focus throughout discovery. Indeed, Medina 55's own allegation regarding the value of the subject properties relies upon the amounts and circumstances under which Oppidan is willing to purchase the properties. It is disingenuous at best for Medina 55 to take the position that a witness upon whose very valuation it purports to rely should be prohibited from testifying about that same valuation.

Furthermore, Medina 55 should have known that Scott might testify regarding Medina 55's refusal to pursue government approvals in good faith and its

14

inability to perform under its purchase agreement because Scott already submitted a declaration on this issue. [ECF No. 73 at 7.] Indeed, presumably for these reasons and knowing full well that an Oppidan witness might be called to testify, Medina 55 even subpoenaed Oppidan regarding these issues.[4] [Mot. at 50–55.] These same facts also demonstrate that testimony by Scott is highly probative.

Not only was Debtors' formal disclosure of Scott as a witness timely, Debtors also affirmatively offered Medina 55 an opportunity to depose Scott between the formal disclosure and the trial. [Beeby Decl., Ex. B.] Medina 55 refused to take any opportunity to seek or request any follow-up discovery—despite having more than a month to do so before trial. Medina 55 waited for over a week to even suggest that it had any concerns about any witness testimony from Oppidan. [*Id.*] Indeed, Medina 55 effectively acknowledged that it received sufficient opportunity for adequate discovery of Scott by stating that it would be able to accept Scott's testimony—it just wanted to get Atkinson out of having to come to Minnesota to defend his claim in exchange for forgoing this motion. [*Id.*] Despite this, Medina 55 proceeded with this motion, and on an unnecessarily expedited basis, seeking to prevent the Court from hearing direct, authoritative testimony on key disputed facts.

Finally, Medina 55 misconstrues communications discussing hypothetical, potential litigation funding of other attorneys, who are not a part of this claim

---

[4] Any argument that Oppidan's responses did not meet Medina 55's needs is irrelevant to this motion—particularly given Medina 55's refusal to pursue any follow up even after the formal witness disclosure.

15

dispute and were never even submitted for approval by the Court, in an attempt to discredit any witness from Oppidan. [Mot. 36.][5] This is a red herring. It is worth noting that the Oppidan Purchase Agreements do not include any such funding obligation. In fact, the outcome of this claim objection does not affect Oppidan's agreement with Debtors in any way. [Scott Decl. ¶ 9.] Indeed, the very lack of any evidence of pecuniary interest by Scott or Oppidan in the outcome of this claim objection provides a notable contrast to the extreme and direct pecuniary interest held by Medina 55's proffered expert, Jonathan Tanta of Cushman & Wakefield, on whose behalf Medina 55 purportedly seeks hundreds of thousands in contingency fees. Regardless, these are matters that can and should be presented to the Court for consideration at trial.

## CONCLUSION

Accordingly, Debtors' respectfully request that Medina 55's motion be denied and that the Court be permitted to evaluate the witnesses, evidence, and arguments through trial and post-trial briefing.

---

[5] Debtors also note that Medina 55 failed to provide notice of the potentially unintentional disclosure of these potentially attorney-client privileged communications or opportunity to review and retract.

Dated: March 13, 2023

*/s/ Alexander J. Beeby*
Kenneth C. Edstrom (148696)
Alexander J. Beeby (398286)
Sapientia Law Group
120 South Sixth Street, Suite 100
Minneapolis, MN  55402
612-756-7100
kene@sapientialaw.com
alexb@sapientialaw.com

Attorneys for Debtors

## UNSWORN CERTIFICATE OF SERVICE

Under penalty of perjury, I declare that on March 13, 2023, in connection with the matter below, the following document(s) were served on the party(s) listed below in the manners indicated:

Re:   In re Cates (Bankr. No. 21-40882 WJF)

1. Response to Medina 55's Expedited Motion to Exclude Witnesses and Evidence;
2. Declaration of David Scott in Support of Debtors' Response to Medina 55's Motion in Limine;
3. Declaration of Alexander J. Beeby in Support of Debtors' Response to Medina 55's Motion in Limine (with exhibits);
4. This Certificate of Service; and
5. (Proposed) Order.

Through ECF Service on those Registered Filers who are entitled to electronic service.

*/s/ Alexander J. Beeby*
Alexander J. Beeby

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Jeffrey Scott Cates and | Case No. 21-40882 WJF |
| Debtor(s). | Chapter 11, Sub. V |

### ORDER

This matter came before the Court on the Expedited Motion to Exclude Witnesses and Evidence [ECF No. 292] filed by Medina 55, LLC, and Debtor's response objecting thereto. Based on the Motion, the response, and the record in this matter,

IT IS ORDERED:

1. The motion is DENIED.


Dated:

William J. Fisher
United States Bankruptcy Judge


4893-8565-0005, v. 1